**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

NEW ENGLAND CENTRAL
RAILROAD, INC.,

        Plaintiff,

-v.-                                Civil Action No. 04-30235-MAP

SPRINGFIELD TERMINAL
RAILWAY COMPANY, et al.,

        Defendants.

**MEMORANDUM OF REASONS**
**IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and Rule 7.1 of the Rules of this Court, the defendants have moved to dismiss this action because this Court lacks jurisdiction over the subject matter and because the complaint fails to state a claim on which relief can be granted.[1] The applicable jurisdictional statute, 28 U.S.C. § 1332, requires diversity of citizenship between all plaintiffs and all defendants. The complaint reflects that such diversity is not present and accordingly the action must be dismissed. Moreover, even were subject matter jurisdiction present, the state law claims that constitute the entirety of the complaint are preempted by the Interstate Commerce Act ("ICA"),[2] whose remedies are exclusive of all other federal and state law remedies.

---

[1] The defendants' time to move or answer originally expired December 27, 2004 but the parties agreed to extend this deadline to and including January 25, 2005.

[2] The ICA is Subtitle IV of Title 49 of the U.S. Code. The rail provisions of the ICA—Part A of Subtitle IV—are codified at 49 U.S.C. §§ 10101-11908.

1

## Facts[3]

This is a dispute between two railroads about liability for damages occurring when a train operated by the defendant Springfield Terminal Railway Company ("STRC") and/or the defendant Boston and Maine Corporation ("B&M") derailed while traveling over track owned by the plaintiff, New England Central Railroad, Inc. ("NECR"). Complaint [Docket #1] ¶ 19. The defendants' right to operate on NECR's track is governed by a trackage rights order (the "TRO") that was imposed upon the parties' predecessors in interest by a 1990 order of the Interstate Commerce Commission ("ICC"). *Id.* ¶¶ 14-16. As is apparent from the complaint, *see id.* ¶¶ 14-18, 41, 52, the meaning of the TRO is central to the determination of which railroad is liable for what damages. In particular, NECR believes that Section 7.1 of the TRO makes the defendants liable for all the damages caused by the derailment even if the cause of the derailment was the poor condition of NECR's track. *See id.* ¶¶ 17-18, 40, 52; *id.* Exh. A, § 7.1.

The defendants, on the other hand, believe that Section 7.1 was not intended to—and as a matter of public policy under the ICA, could not—insulate NECR from its own misconduct in failing to keep the track in adequate repair despite having knowledge of the line's substandard condition. For this reason, the defendants filed a formal complaint and request for declaratory order with the Surface Transportation Board ("STB"), the successor to the ICC, on November 1, 2004. *See id.* ¶ 37.[4] The defendants' petition was filed pursuant to the STB's jurisdiction under the ICA, specifically 49 U.S.C. § 11704(b), which gives the STB jurisdiction over specified damage claims against railroads.

---

[3] For purposes of a "facial attack" on subject matter jurisdiction, the well-pleaded allegations of the complaint must be taken as true. 2 Moore's Federal Practice § 12.30[4], at p. 12-39 (3rd ed. 2004); *see Pejepscot Indus. Park, Inc. v. Maine Central R. Co.*, 215 F.3d 195, 197 (1st Cir. 2000). The defendants' recitation of "facts" accordingly does not constitute an admission of their accuracy.

[4] The STB proceeding is *Boston and Maine Corp. and Springfield Terminal Railway Company v. New England Central Railroad, Inc.*, STB Finance Docket No. 34612 (complaint filed Nov. 1, 2004).

A little more than a month later, NECR, desiring for some reason to avoid the STB forum, filed in this Court what in effect is a counterclaim seeking damages arising out of the same derailment. The complaint here alleges that the plaintiff, NECR, is a Delaware corporation whose principal place of business is in Vermont. Complaint ¶ 1. The complaint further alleges that one defendant, STRC, is a Vermont corporation "with a usual place of business located" in Massachusetts, and that the other defendant, B&M, is a Massachusetts corporation "with a usual place of business located" in Massachusetts. *Id.* ¶¶ 2-3.

The complaint alleges only state law claims—specifically, breach of contract, negligence, and gross negligence—against STRC and B&M. *Id.* ¶¶ 38-61. Jurisdiction, according to NECR, is based solely upon diversity of citizenship because "the plaintiff and all of the defendants reside in different states" and more than $75,000 (exclusive of interest and costs) is in controversy. *Id.* ¶ 5 (citing 28 U.S.C. § 1332). NECR's claims, however, amount to nothing more than a claim that the TRO—an order of the ICC—requires the defendants to pay for NECR's damages resulting from the derailment and that the defendants are violating the TRO by refusing to do so.

### Argument

**I.   Because complete diversity of citizenship is absent, this Court lacks jurisdiction over the subject matter of the action.**

The diversity statute confers jurisdiction only over actions that are "between . . . citizens of different States." 28 U.S.C. § 1332(a) (2000).[5] This requires "complete" diversity, which means that *all* the plaintiffs must be citizens of different states than *all* defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Gabriel v. Preble*, No. 04-1744, slip op. at 6 (1st Cir.

---

[5] NECR's reference to residence, *see* Complaint § 5(a), is thus inapposite.

Jan. 19, 2005) (noting that "[d]iversity jurisdiction exists only when . . . no plaintiff is a citizen of the same state as any defendant").

The statute further provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated *and* of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (2000) (emphasis added).[6] That is, "Section 1332(c) does not give a plaintiff the option of treating a corporation as a citizen of *either* the state of incorporation or the state where its principal place of business is located. Rather, the statute treats a corporation as a citizen of *both* states." 15 Moore's Federal Practice § 102.50, at 102-106.1 (3rd ed. 2004) (emphasis in original) (citing *Bender v. Hilton Riviera Corp.*, 367 F. Supp. 380, 382 (D.P.R. 1973)); *accord Gabriel v. Preble*, No. 04-1744, slip op. at 7 & n. 2 (1st Cir. Jan. 19, 2005).

Section 1332 must be strictly construed, *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941); *Gabriel v. Preble*, No. 04-1744, slip op. at 13 (1st Cir. Jan. 19, 2005); *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir. 1979), with any doubts being resolved against a finding of federal jurisdiction, *China Basin Properties, Ltd. v. Allendale Mut. Ins. Co.*, 818 F. Supp. 1301, 1303 (N.D. Cal. 1992); 15 Moore's Federal Practice § 102.14, at p. 102-24 (3rd ed. 2004). Moreover, the burden of establishing diversity jurisdiction is on the party—here, NECR—asserting it. *Bull HN Information Sys., Inc. v. Hutson*, 229 F.3d 321, 328 (1st Cir. 2000).

In this instance, of course, burden is not an issue because NECR's complaint effectively concedes that diversity is absent. For purposes of Section 1332, NECR, the plaintiff, is a citizen of Delaware (where it is incorporated) and of *Vermont* (the location of its principal place of

---

[6] The second prong of this provision was added nearly a half century ago. Act of July 25, 1958, Pub. L. No. 85-554, § 2, 72 Stat. 415.

business). *See* Complaint ¶ 1. STRC, a defendant, also is a citizen of *Vermont* (where it is incorporated), as well as being a citizen of Massachusetts (where, according to NECR, it has a "usual place of business"). *See id.* ¶ 2. Diversity of citizenship is absent because both the plaintiff and a defendant are citizens of Vermont. This ends the inquiry, for "[w]henever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).[7]

## II. NECR's state law claims are preempted by 49 U.S.C. § 10501(b).

If subject matter jurisdiction is lacking, this case is at an end and the issue raised by this point need not be addressed by the Court. Even if subject matter jurisdiction exists, however, NECR's state law claims are preempted by the ICA and hence must be dismissed for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

Although NECR attempts to characterize its claim as arising under various state law causes of action (breach of contract, negligence, gross negligence, etc.), NECR's claim in fact is one for damages caused by a rail carrier in violation of the TRO—an order of the ICC. That is, NECR contends that a defendant's train derailed on NECR's track and that under Section 7.1 of the TRO, that defendant is liable for all damages arising from that event. As such NECR's claim is made actionable by 49 U.S.C. § 11704(b).

The ICA gives the STB exclusive jurisdiction over all aspects of rail transportation, including "rates, classifications, *rules* (including car service, interchange, and other operating rules), *practices*, routes, services, and *facilities* of [rail] carriers." 49 U.S.C. § 10501(b) (2000) (emphasis added). Section 10501(b) also decrees that "[e]xcept as otherwise provided in this

---

[7] Even if this Court had jurisdiction, the meaning of an order of the ICC is central to the adjudication of this dispute. That means that the matter almost certainly would have to be referred to the STB under the primary jurisdiction doctrine. *See Pejepscot Indus. Park, Inc. v. Maine Central Railroad Co.*, 215 F.3d 195, 205-06 (1st Cir. 2000). The

part,[8] the *remedies provided under this part* with respect to the regulation of rail transportation are *exclusive* and *preempt* the *remedies* provided under Federal or *State law.*" *Id.* (emphasis added).[9] State common law remedies such as those sought by the complaint are preempted by Section 10501(b).[10] *Alliance Shippers, Inc. v. Southern Pac. Transp. Co.*, 858 F.2d 567, 568-69 (9th Cir. 1988) (interpreting predecessor provision); *Engelhard Corp. v. Springfield Terminal Ry. Co.*, 193 F. Supp. 2d 385 (D. Mass. 2002).

As demonstrated below, the ICA provides remedies with respect to the claims at issue here. Hence the state-law claims—which constitute all the claims in the complaint—are preempted by Section 10501(b). NECR is limited to the remedy prescribed by the federal statute, 49 U.S.C. § 11704(b).[11]

Federal law "shall be the supreme Law of the Land; . . . any Thing in the Constitution or the Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. There are three types of preemption pursuant to the Supremacy Clause—(1) express preemption, where the

---

controversy already had been pending before that agency, by virtue of the STRC/B&M petition against NECR, for more than a month when this action was commenced. *See* Complaint ¶ 37.

[8] "[T]his part" is Part A (Rail) of Subtitle IV (Interstate Transportation) of Title 49 of the U.S. Code. *See* 109 Stat. 804-05. Part A comprises Sections 10101 through 11908 of title 49.

[9] The full text of Section 10501(b) reads:

"(b)    The jurisdiction of the Board over—

"(1)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

"(2)    the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."

[10] Between 1980 and 1995, a similar provision was codified as 49 U.S.C. § 10501(d). Similar provisions have been contained in the ICA since 1920. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 329 n. 16 (1981).

[11] Preemption is appropriately raised by motion to dismiss. *Sturm, Ruger Co., Inc. v. Connecticut Gen. Life Ins. Co.*, 1994 WL 258313 (D.N.H. 1994); *Lawal v. British Airways, PLC*, 812 F. Supp. 713, 721 (S.D. Tex. 1992).

6

intent of Congress is explicitly stated in the language of a statute or implicitly contained in its structure and purpose; (2) conflict preemption, where the state law in question conflicts with the federal law; and (3) field preemption, where federal law so thoroughly occupies the field as to leave no room for the states to supplement it. *Cippollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Any given situation may involve more than one type of preemption, *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n. 6 (2000), and the case at bar involves both express and field preemption. And where, as here, the express preemptive language of the federal statute is broad and makes no distinction between positive state enactments and common law, state common law remedies also are preempted. *Levesque v. Miles, Inc.*, 816 F. Supp. 61, 67 (D.N.H. 1993) (citing *Cippollone*).

In Section 10501(b), Congress has "explicitly stated" its intent to preempt state law remedies that touch upon or concern "transportation by rail carriers." *Pejepscot Indus. Park, Inc. v. Maine Central R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000). "The last sentence of § 10501(b) plainly preempts state law." *Id.*; *accord City of Auburn v. United States*, 154 F.3d 1025, 1028-30 (9th Cir. 1998); *Burlington N. Santa Fe Corp. v. Anderson*, 959 F. Supp. 1288, 1295 (D. Mont. 1997); *CSX Transp., Inc. v. Georgia Public Service Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) (noting extraordinary breadth of § 10501(b)); *Burlington N. R. Co. v. Page Grain Co.*, 545 N.W.2d 749 (Neb. 1996). This is consistent with longstanding federal preemption of the field of rail transportation, leaving no room for state causes of action. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981); *Modin v. New York Central Co.*, 650 F.2d 829, 834-35 (6th Cir. 1981) (finding ICA preemption of damage claim under state insurance law).

Congressional intent to preempt state-law remedies is further evidenced by the inclusion in the ICA of a specific remedy for violations of the sort claimed by NECR: "A rail carrier

7

providing transportation subject to the jurisdiction of the Board under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part." 49 U.S.C. § 11704(b) (2000). Section 11704 also prescribes in detail the procedure to be followed by a party seeking to impose liability on a rail carrier. 49 U.S.C. § 11704(c) (2000).

NECR alleges that ST and Conrail are rail carriers. Complaint ¶ 16. Nothing in the complaint avoids—or can avoid—the preemptive effects of Section 10501(b). The essence of NECR's complaint is that the TRO makes STRC and B&M liable for any damage resulting from a derailment of STRC or B&M rolling stock. The state law claims lodged by NECR fall comfortably within the ambit of the responsibilities that NECR alleges are imposed upon STRC and B&M by the TRO.

"[I]n deciding whether any conflict is present, a court's concern is necessarily with 'the nature of the activities which the States have sought to regulate, rather than on the method of regulation adopted.'" *Kalo Brick & Tile*, 450 U.S. at 317-18 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 243 (1959)) (striking down state common law damages actions relating to railroad abandonments). Indeed, the state law causes of action found preempted in *Kalo Brick & Tile* included one for common law negligence based on the carrier's alleged failure to maintain its roadbed. *Id.* at 323-25.[12] Moreover, just as in *Kalo Brick & Tile*, *see id.* at 322, the ICA "spells out with considerable precision the remedies available to" a party injured by a carrier's violation of the relevant provisions of the Act. *See* 49 U.S.C. § 11704 (2000) (prescribing damage remedies).

---

[12] The other state law causes of action found preempted in *Kalo Brick & Tile* were for violation of a statute requiring railroads to furnish cars, breach of the common law duty of a common carrier, and the common law tort of interference with contractual relations between the shipper and its customers. *Kalo Brick & Tile*, 450 U.S. at 323-25.

8

Thus in addition to the ICA's giving the STB exclusive jurisdiction over rail transportation, *see* 49 U.S.C. § 10501(b) (2000), preempting all state law remedies, *id.*, and providing a federal damage remedy for conduct like that alleged by NECR, *see* 49 U.S.C. § 11704(b) (2000), the ICC in the TRO covered the precise circumstances alleged by NECR.

Thus NECR's state causes of action are preempted by the ICA and the TRO, and the complaint must be dismissed for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## Conclusion

For the reasons set out above, the complaint should be dismissed because this Court lacks jurisdiction over the subject matter of the action and fails to state a claim on which relief can be granted.

Respectfully submitted,

Robert B. Culliford
BBO #638468
Iron Horse Park
North Billerica MA 01862
978-663-1029

*Attorney for Defendants Springfield Terminal Railway Company and Boston and Maine Corporation*

January 21, 2005.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL
RAILROAD, INC.,

        Plaintiff,

-v.-                                    Civil Action No. 04-30235-MAP

SPRINGFIELD TERMINAL
RAILWAY COMPANY, et al.,

        Defendants.

## DEFENDANTS' CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Rule 7.3(a) of the Local Rules of this Court, the defendants—Springfield Terminal Railway Company ("ST") and Boston and Maine Corporation ("B&M")—hereby state that each is wholly owned by Guilford Transportation Industries, Inc. ("GTI"), that GTI is not a public company, and that no public company owns ten percent or more of the stock of ST or B&M.

Respectfully submitted,

_____
Robert B. Culliford
BBO #638468
Iron Horse Park
North Billerica MA 01862
978-663-1029

*Attorney for Defendants Springfield Terminal Railway Company and Boston and Maine Corporation*

January 21, 2005.

DC:397129.1

DC:397129.1