# FLYNN & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

MICHAEL B. FLYNN*
RICHARD A. DAVIDSON, JR.
LORI A. WIRKUS⁺
JOHN E. YOUNG, IV
BETHANY M. MACHACEK

*also admitted in NY
⁺also admitted in CT

OF COUNSEL:
 DURKIN, MCDONNELL,
 CLIFTON & O'DONNELL

400 CROWN COLONY DRIVE
SUITE 200
QUINCY, MASSACHUSETTS 02169
TELEPHONE (617)773-5500
FACSIMILE (617)773-5510
E-MAIL: flynnlaw@flynnassoc.com

BOSTON OFFICE:
160 STATE STREET
EIGHTH FLOOR
BOSTON, MA 02109
TEL: (617)722-8253
FAX: (617)722-8254

DETROIT OFFICE:
PENOBSCOT BUILDING
645 GRISWOLD STREET, SUITE 3253
DETROIT, MI 48226
TEL: (313)963-3033
FAX: (313)963-3011

February 24, 2005

Civil Clerk's Office
United States District Court
 for the District of Massachusetts
Federal Building & Courthouse
1550 Main Street
Springfield, MA 01103

RE: NEW ENGLAND CENTRAL RAILROAD, INC. v. SPRINGFIELD TERMINAL RAILWAY COMPANY, et. al.
U.S. District Ct., C.A. No.: 04 30235 MAP

Dear Sir/Madam:

Enclosed please find for filing and the court's consideration, in conjunction with the parties pleadings concerning the defendants' *Motion to Dismiss*, a copy of the *Decision* rendered by the Surface Transportation Board ("STB"), dated February 23, 2005, Finance Docket No.: 34612, in the matter of <u>Boston and Maine Corp., et. al. v. New England Central Railroad, Inc.</u>

Thank you for your anticipated service in this matter.

Sincerely,

/s/ Richard A. Davidson, Jr.

Richard A. Davidson, Jr.

Encl.
pc: Michael B. Flynn, Esq.
    Robert Culliford, Esq

35267  SERVICE DATE - FEBRUARY 24, 2005
EB

SURFACE TRANSPORTATION BOARD

DECISION

STB Finance Docket No. 34612

BOSTON AND MAINE CORPORATION
and
SPRINGFIELD TERMINAL RAILWAY COMPANY
v.
NEW ENGLAND CENTRAL RAILROAD, INC.

Decided: February 23, 2005

Boston and Maine Corporation (B&M) and Springfield Terminal Railway Company (ST) (jointly, "BM/ST" or "complainants") request damages and a declaratory order in a complaint arising out of the derailment of a BM/ST train on track owned by the New England Central Railroad, Inc. (NEC). We find that the primary issues presented here, which involve claims of tortious acts and breach of contract, are better suited for adjudication before the courts. Thus, we are dismissing the complaint and the declaratory order request.

BACKGROUND

In Amtrak – Conveyance of B&M in Conn River Line in VT & NH, 4 I.C.C.2d 761 (1988) (Amtrak I), the Board's predecessor agency, the Interstate Commerce Commission (ICC), required B&M to convey its 48.8-mile "Connecticut River Line" to the National Railroad Passenger Corporation (Amtrak), subject to the requirement that Amtrak grant specified trackage rights back to B&M. The ICC also authorized Central Vermont Railway, Inc. (CV) to acquire the conveyed line from Amtrak and to operate it, subject to B&M's trackage rights. The carriers were directed to negotiate a trackage rights arrangement containing certain core requirements designed to ensure that the tenant carrier would be able to continue to conduct operations over the line.

During their negotiations, the carriers operated under a temporary trackage rights agreement. When the parties were unable to agree on certain terms for a permanent agreement, the ICC issued a decision in Amtrak – Conveyance of B&M in Conn River Line in VT & NH, 6 I.C.C.2d 539 (1990) (Amtrak II), clarifying its core requirements, resolving the disagreements, and adopting the detailed trackage rights terms and conditions attached as an appendix to that decision, herein called "the trackage rights order" (TO). Many provisions of the temporary agreement, including the provisions concerning responsibility for accidents (Section 7), were not in dispute and were carried over into the TO without further discussion.

STB Finance Docket No. 34612

In 1995, NEC acquired the assets of CV, including CV's rights and responsibilities under the TO. ST was assigned B&M's trackage rights over the subject line.

On November 1, 2004, BM/ST filed a complaint and petition for declaratory order arising out of a 7-car derailment of an ST train operating on NEC's track pursuant to the TO on or about July 3, 2004. Complainants allege that the derailment was caused by NEC's failure to maintain the track as required by the TO and Federal Railroad Administration (FRA) regulations and that, as a consequence, BM/ST suffered damages in excess of $100,000. In particular, BM/ST request compensatory, incidental, and punitive damages based on breach of contract (the TO) and tortious injury due to gross negligence, recklessness, and willful misconduct by NEC. According to complainants, NEC is demanding payment of approximately $750,000 in expenses allegedly resulting from the derailment, citing Section 7.1 of the TO as barring BM/ST claims or defenses based on the condition of the track.[1] BM/ST thus seek a declaratory order that NEC's interpretation of Section 7.1 would be contrary to public policy, because it would apportion all responsibility for the derailment on BM/ST even if the derailment was caused solely by grossly negligent, reckless, or willful misconduct by NEC.

On November 29, 2004, NEC filed an answer to the complaint. NEC denies that it failed to maintain the line properly or that the derailment was caused by unsafe track. In its answer, NEC asks the Board to conclude that it lacks jurisdiction over this matter and to dismiss the complaint, based on Section 7.1 of the TO.

On December 22, 2004, BM/ST filed a proposed procedural schedule, representing that both parties agree to it, as required by 49 CFR 1111.10(a).

---

[1] Section 7.1 of the TO provides (6 I.C.C.2d at 564):

7.1 Save as herein otherwise provided, each party hereto shall be responsible for and shall assume all loss, damage or injury (including injury resulting in death) to persons or property, including the cost of removing any trackage, repairing trackage and correcting environmental damage, which may be caused by its engines, cars, trains or other on-track equipment (including damage from fire originating therefrom) whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such loss, damage or injury, and whether or not a third party may have caused or contributed to such loss, damage or injury, and for all loss or damage to its engines, cars, trains or other on-track equipment while on said trackage from any cause whatsoever, except in the case of collision, in which event the provisions of Section 7.2 shall apply.

STB Finance Docket No. 34612

## DISCUSSION AND CONCLUSION

Given that this dispute is founded primarily on claims of breach of contract and tortious actions, we find that the courts are the appropriate forum to resolve the dispute. This agency has recognized that resolution of contract disputes should typically be pursued before the courts or through arbitration,[2] and we believe that deference to the courts should apply here. The dispute does not involve the interpretation of a core operational provision of the TO and does not involve service questions, over which we have primary jurisdiction, but is, rather, a dispute over liability for a derailment, an area as to which we have very little expertise and limited authority.

We recognize that, when the ICC issued the TO in Amtrak II, it declined to adopt an arbitration clause proposed by CV, stating instead that (6 I.C.C.2d at 556-57):

> Disputes may be referred to us for resolution. This is appropriate, as the operations will be conducted pursuant to our decision in Amtrak [I], supra, and this follow-up decision.

This language, however, does not mean that the Board must resolve all disputes arising under the TO. Rather, this language allows the agency to interpret the provisions in the agreement to ensure that the trackage rights as valued in the takings portion of Amtrak I are not undermined and that the operations conducted thereunder do not neglect the essential interests of the shippers and passengers who were intended to benefit from the transactions approved in Amtrak I. The intent of this language was not to require the agency to get involved in issues such as liability over a derailment. Indeed, this agency does not have special expertise regarding the adjudication and award of damages concerning the claims presented in this proceeding.

This interpretation of Amtrak I and Amtrak II is consistent with our decision in Rymes Heating Oils, Inc. – Petition for Declaratory Order, STB Finance Docket No. 34098 (STB served July 19, 2002) (Rymes). In Rymes, a shipper sought and obtained a declaration that it was entitled to receive service from NEC as an alternative to service from B&M, notwithstanding Section 1.3 of the TO, which reserves to B&M service to "existing shippers and facilities." Unlike the provisions of Section 7.1, the ICC, in helping to develop the provisions of Section 1 governing service, intended to assure that the value of the property rights ordered conveyed in Amtrak I was preserved. See 6 I.C.C.2d 542-43. The Board's interpretation of the provisions of Section 1 in Rymes was necessary to resolve a dispute over a fundamental issue involving the scope of the trackage rights – who is entitled to be served under the TO – and involved provisions key to valuing the trackage rights granted to B&M as part of determining the

---

[2] See, e.g., MVC Transp., LLC – Acquisition Exemption – P&LE Properties, Inc., STB Finance Docket No. 34462 et al. (STB served Oct. 20, 2004); Burlington Northern, Inc. – Trackage Rights, 347 I.C.C. 210, 213 (1974).

STB Finance Docket No. 34612

compensation due to B&M for ordering the transfer of the Connecticut River Line. And, unlike the current proceeding, the dispute in <u>Rymes</u> involved the interests of shippers protected under our governing statute, and did not concern non-regulatory issues such as responsibility for an accident. Thus, while the Board was the appropriate forum to adjudicate the dispute in <u>Rymes</u>, it is not here.

In its ruling on subsequent litigation in the <u>Rymes</u> matter, the United States Court of Appeals for the First Circuit discussed the three factors to determine if the primary jurisdiction of the Board applies: "(1) whether the agency determination lies at the heart of the task assigned by the agency; (2) whether the agency expertise is required to unravel intricate technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court." <u>Rymes Heating Oils. v. Springfield Terminal Ry.</u>, 358 F.3d 82, 91 (1st Cir. 2004), <u>citing</u> <u>Pejepscot Indus. Park, Inc. v. Maine Cent. R.R.</u>, 215 F.3d 195, 205 (1st Cir. 2000).

In the present case, an examination of these factors demonstrates that the Board does not have primary jurisdiction. The agency determinations in the TO are not central to the dispute here. The dispute centers around fact-bound issues that can most expeditiously and properly be resolved by the courts. Nor is agency expertise required to unravel intricate technical facts. This agency is not charged with the investigation of the cause of train accidents and has little expertise in determining gross negligence, recklessness, and willful misconduct, or in determining damages on the basis of such conduct. Similarly, the expertise of the Board is not needed to resolve other major fact-bound issues that could be dispositive of the matter, such as the condition of the track when the accident occurred, the extent, if any, to which the accident had any connection with track maintenance, and the intent of the landlord and tenant carriers when the terms of Section 7.1 were being worked out. Thus, we do not believe a determination by the Board here would materially aid a court should the parties choose to pursue this matter there.

For the foregoing reasons, we conclude that the primary issues presented here are more properly the subject of adjudication before the courts, and we will, therefore, dismiss the complaint and request for a declaratory order without further addressing the merits of the dispute.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

<u>It is ordered</u>:

1. The complaint and request for a declaratory order are dismissed.

STB Finance Docket No. 34612

2. This decision is effective on its date of service.

By the Board, Chairman Nober, Vice Chairman Buttrey, and Commission Mulvey.

                        Vernon A. Williams
                              Secretary