UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants

C. A. No.:  04-30235-MAP

## AMENDED COMPLAINT AND JURY DEMAND

1.      Plaintiff New England Central Railroad, Inc. ("NECR") is a Delaware corporation

with a principal place of business located at 2 Federal Street, Suite 201, St. Albans, VT.

2.      Defendant Springfield Terminal Railway Company ("STRC") is a Vermont

corporation with a usual place of business located at Iron Horse Park, Billerica, MA.

3.      Defendant Boston and Maine Corporation ("B&M") is a Massachusetts

corporation with a usual place of business located at Iron Horse Park, Billerica, MA.

## JURISDICTION AND VENUE

4.      The plaintiff hereby repeats and realleges its allegations set forth in ¶ 1 through 3

above as if expressly set forth herein.

5.      This Court has diversity jurisdiction over the subject matter of this action as per

49 U.S.C. §11704, in that:

      (a)      the plaintiff has been injured by the defendants who are rail carriers subject to the jurisdiction of the Surface Transportation Board ("Board") who have failed to obey an order of the Board and the plaintiff seek by means of this civil action to enforce the order of the Board, 49 U.S.C. §11704(a);

      (b)      the defendant rail carriers are liable for damages sustained by the plaintiff as a result of the defendants' act or omission in violation of the part, 49 U.S.C. §11704(b); and

      (c)      the plaintiff is permitted to file a civil action under 49 U.S.C. §11704(b) to enforce liability against the defendants, 49 U.S.C. §11704(c)(1).

6.      Additionally, the Court has supplemental jurisdiction over the plaintiff's breach of contract, negligence, and wanton/willful allegations as they are related to the claims made pursuant to 49 U.S.C. §11704.

7.      Venue for this action is predicated upon 28 U.S.C. §1391(a) and (c), and Local Rule 40.1.

## FACTUAL BACKGROUND

8.      The NECR repeats and realleges its allegations set forth in ¶ 1 through 7 above as if expressly set forth herein.

9.      In 1988, the National Railroad Passenger Corporation ("AMTRAK") purchased from the B&M a section of railroad track located between about Brattleboro, VT and Windsor, VT known as the "Connecticut River Line."

10.      AMTRAK immediately thereafter conveyed the Connecticut River Line to the Central Vermont Railway, Inc. ("CV").

11.     The CV was the NECR's predecessor.  In 1994, the NECR purchased the CV's assets, including the tracks which are the subject of this Complaint.

12.     As part of the conveyance of the Connecticut River Line from the B&M to AMTRAK and then to the CV, the CV was required by the Interstate Commerce Commission ("ICC") to grant back to the B&M certain rights (known as "trackage rights") to operate its freight trains over the CV's tracks between East Northfield, MA and White River Junction, VT.

13.     Initially, the parties operated under a temporary "Interim Agreement" regarding the B&M's trackage rights.

14.     On May 18, 1989, the CV petitioned the ICC to impose permanent terms and conditions for the B&M's trackage rights over a 48.8-mile segment of the Connecticut River Line as well as certain CV track segments at both ends of the Connecticut River Line.

15.     On February 6, 1990, the ICC imposed a modified *Trackage Rights Agreement* (the "*Agreement*") governing the terms and conditions of  the B&M's use of  the CV's (now NECR's) main-line track between East Northfield, MA and White River Junction, VT.  A copy of the *Agreement* imposed by the ICC is attached hereto as Exhibit "A" and is made a part hereof and specifically incorporated herein by this reference.

16      The *Agreement* is still in effect and currently governs the rights, responsibilities and obligations of the NECR, the B&M and/or STRC with respect to the operation of trains over the NECR's main-line track between East Northfield, MA and White River Junction, VT.

17.     The B&M and/or STRC have been operating trains over the tracks subject to the *Agreement* since 1990.

18.     The *Agreement*, at § 7.1 provides as follows:

> "[E]ach party hereto shall be responsible for and shall assume <u>all loss, damage or injury…to persons or property</u>, including the cost of removing any trackage, repairing trackage and correcting environmental damage, which may be caused by its engines, cars, trains or other on-track equipment (including damage by fire originating therefrom) <u>whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such loss, damage or injury</u>, and whether or not a third party may have caused or contributed to such loss, damage or injury, and for all loss or damage to its engines, cars, trains or other on-track equipment while on said trackage from any cause whatsoever, except in the case of collision, in which event the provisions of Section 7.2 shall apply."

Exh. A (emphasis supplied).

19.     According to § 9.7 of the *Agreement*, any reference to "the trains, locomotives, cars or equipment of, or in the account of, one of the parties hereto" means "the trains, locomotives, cars and equipment <u>in the possession of or operated by one of the parties</u> and includes such trains, locomotives, cars and equipment which are owned by, leased to, or in the account of such party."   Exh. A (emphasis supplied).

20.     On July 3, 2004, employees of the B&M and/or STRC were operating a B&M and/or STRC freight train southbound on a section of the NECR's main line which is subject to the *Agreement*.   The train consisted of two (2) locomotives pulling nineteen (19) freight cars behind them, all of which were either owned by, or in the account, of the B&M and/or STRC.

21.     At approximately 6:40 AM, at approximately milepost 10.18, the trailing wheels of the train's sixth freight car came off the tracks, but the car remained upright.

22.     The train's crew failed to observe the freight car's derailed wheels and continued to operate the train, dragging the derailed freight car along behind the locomotives.

23.     The derailed car's wheels were dragged along the NECR's tracks for approximately five (5) miles, traversing over an open deck bridge and three separate grade crossings, all the while causing extensive damage to the NECR's tracks and related property.

24.     The derailed wheels finally struck a piece of railroad known as a "frog" which was located approximately at mile post 5.58 (the north switch of the Hartland, VT siding track). The car's hitting the frog caused it to become completely derailed and flipped it onto its side.

25.     As the freight car flipped, it caused the following six (6) freight cars to also derail.

26.     The derailment of these cars cased extensive damage to the NECR's trackage and related property in the area of the derailment.

27.     Due to the damage caused by the derailed wheels of the car and subsequent derailment, the NECR's main line track was shut down for several days clean up procedures and repairs from mile post 10.18 to mile post 5.58.

28.     The NECR's track was thereafter reopened for service under a speed restriction for approximately thirty (30) days while the NECR worked to repair and restore the damaged trackage and related property.

29.     The NECR has a separate agreement with AMTRAK which permits AMTRAK, *inter alia*, to operate passenger service over the Connecticut River Line.

30.     The agreement between the NECR and AMTRAK also contains financial incentives to NECR relating to AMTRAK's run-time performance over the Connecticut River Line.

31.     AMTRAK was forced to bus its passengers around the damaged track for the period of time that the Connecticut River Line was completely shut down.

5

32.     The NECR lost revenue that it otherwise would have received from AMTRAK while its track was completely shut down.

33.     While the speed restriction was in place, AMTRAK's "run time" over the CRL was increased by about thirty (30) minutes which negatively impacted AMTRAK's run-time performance.  As a result, the NECR was unable to meet its run-time incentives and suffered the loss of additional revenue it otherwise would have received.

34.     The NECR also incurred additional costs, expenses and damages as a result of its track being shut down.

35.     The B&M and/or STRC is responsible for all of the NECR's losses, damages and injuries incurred and/or suffered as a result of the derailment

36.     The NECR has demanded that the B&M and/or STRC pay the losses and damages which resulted from the derailment.

37.     Despite the NECR's demands for payment, both the B&M and the STRC have failed, neglected and/or otherwise refused to pay the NECR's losses and damages.

38.     Instead, both the B&M and the STRC filed a *Formal Complaint and Petition for Declaratory Order* with the Board alleging that the NECR failed to maintain and repair the Connecticut River Line in a Class II condition.

### COUNT I
### 49 U.S.C. §11704(a) claim v. B&M

39.     The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 38 above as if specifically set forth herein.

40.     The NECR has been injured because the defendant B&M did not obey an order of the Board.

6

41.    The order of the Board that the defendant B&M did not obey was the *Agreement*.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

## COUNT II
## 49 U.S.C. §11704(a) claim v. STRC

42.    The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 41 above as if specifically set forth herein.

43.    The NECR has been injured because the defendant STRC did not obey an order of the Board.

44.    The order of the Board that the defendant STRC did not obey was the *Agreement*.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

## COUNT III
## 49 U.S.C. §11704(b) and (c)(1) claim v. B&M

45.    The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 44 above as if specifically set forth herein.

46.    The NECR has been injured because the defendant B&M failed to pay its damages under the Agreement which is an order of the Board.  49 U.S.C. §11704(b) and (c)(1).

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

## COUNT IV
## 49 U.S.C. §11704(b) and (c)(1) claim v. STRC

47.     The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 46 above as if specifically set forth herein.

48.     The NECR has been injured because the defendant STRC failed to pay its damages under the Agreement which is an order of the Board.  49 U.S.C. §11704(b) and (c)(1).

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

## COUNT V
## BREACH OF CONTRACT v. B&M

49.     The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 48 above as if specifically set forth herein.

50.     The train which was involved in the derailment on July 3, 2004 as described herein was being operated by, owned by and/or in the account of the B&M and/or STRC at the time of the derailment.

51.     Pursuant to § 7.1 of the *Agreement*, the B&M and/or STRC is required and obligated to assume and pay for any and all loss, damage or injury incurred by the NECR as the result of the derailment.

52.     Despite the NECR's demanding that the B&M and/or STRC pay for the losses, injuries and damages which resulted from the derailment, the B&M and/or STRC has failed, neglected and/or otherwise refused to pay for these losses, injuries and damages or to otherwise honor its obligations under the *Agreement*.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

## COUNT VI
## NEGLIGENCE v. B&M

53.     The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 52 above as if specifically set forth herein.

54.     On July 3, 2004, the train's crew had sole control and responsibility for the operation of the train and had a duty to operate the train reasonably and safely.

55.     The train's crew breached this duty by operating the train in an unreasonable and unsafe manner.

56.     As a result of the crew's negligence, the train was caused to derail and thereby caused damage to the NECR's property and related trackage and also caused the NECR to suffer additional losses, damages and/or injuries.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

## COUNT VII
## GROSS NEGLIGENCE, WILFUL, WANTON AND RECKLESS CONDUCT v. B&M

57.     The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 58 above as if specifically set forth herein.

58.     On July 3, 2004, the train's crew had sole control and responsibility for the operation of the train and had a duty to operate the train reasonably and safely.

9

59.     The train's crew breached this duty by operating the train in a grossly unreasonable, willful, wanton, reckless and unsafe manner.

60.     As a result of the crew's gross negligence, willful, wanton, reckless and unsafe operation negligence, the train was caused to derail and thereby caused damage to the NECR's property and related trackage and also caused the NECR to suffer additional losses, damages and/or injuries.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

**COUNT VIII**
**BREACH OF CONTRACT v. STRC**

61.     The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 60 above as if specifically set forth herein.

62.     The train which was involved in the derailment on July 3, 2004 as described herein was being operated by, owned by and/or in the account of the B&M and/or STRC at the time of the derailment.

63.     Pursuant to § 7.1 of the *Agreement*, the B&M and/or STRC is required and obligated to assume and pay for any and all loss, damage or injury incurred by the NECR as the result of the derailment.

64.     Despite the NECR's demanding that the B&M and/or STRC pay for the losses, injuries and damages which resulted from the derailment, the B&M and/or STRC has failed, neglected and/or otherwise refused to pay for these losses, injuries and damages or to otherwise honor its obligations under the *Agreement*.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

**COUNT IX**
**NEGLIGENCE v. STRC**

65.    The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 64 above as if specifically set forth herein.

66.    On July 3, 2004, the train's crew had sole control and responsibility for the operation of the train and had a duty to operate the train reasonably and safely.

67.    The train's crew breached this duty by operating the train in an unreasonable and unsafe manner.

68.    As a result of the crew's negligence, the train was caused to derail and thereby caused damage to the NECR's property and related trackage and also caused the NECR to suffer additional losses, damages and/or injuries.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

**COUNT X**
**GROSS NEGLIGENCE, WILFUL, WANTON AND RECKLESS CONDUCT v. STRC**

69.    The NECR repeats and re-alleges the allegations contained in paragraphs 1 through 68 above as if specifically set forth herein.

70.    On July 3, 2004, the train's crew had sole control and responsibility for the operation of the train and had a duty to operate the train reasonably and safely.

11

71.     The train's crew breached this duty by operating the train in a grossly unreasonable, willful, wanton, reckless and unsafe manner.

72.     As a result of the crew's gross negligence, willful, wanton, reckless and unsafe operation negligence, the train was caused to derail and thereby caused damage to the NECR's property and related trackage and also caused the NECR to suffer additional losses, damages and/or injuries.

WHEREFORE, the NECR demands judgment against the B&M and/or STRC in a monetary amount to be proven at trial together with interest, costs, attorney's fees and such other relief as this Court deems just and proper under the circumstances.

### JURY DEMAND

The NECR demands a trial by jury as to all issues.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

 /s/  Richard A. Davidson, Jr
Michael B. Flynn                    BBO# 559023
Richard A. Davidson, Jr.            BBO# 552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated: February 25, 2005

12