# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL
RAILROAD, INC.,

           Plaintiff,

        -v.-                                         Civil Action No. 04-30235-MAP

SPRINGFIELD TERMINAL
RAILWAY COMPANY, et al.,

           Defendants.

## MEMORANDUM OF REASONS
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## COUNTS V THROUGH X OF AMENDED COMPLAINT
## AND TO REFER AMENDED COMPLAINT
## TO THE SURFACE TRANSPORTATION BOARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Rule 7.1 of the Rules of this Court, the defendants have moved to dismiss Counts V through X of the amended complaint [Docket No. 16] because they fail to state a claim on which relief can be granted. The counts in question are state law claims that are preempted by federal law. The defendants also have moved to refer the case to the Surface Transportation Board ("STB" or "Board") for consideration of an issue within the primary jurisdiction of that agency.

### Facts

This is a dispute between two railroads about liability for damages occurring when a freight train operated by the defendant Springfield Terminal Railway Company ("STRC") and/or

the defendant Boston and Maine Corporation ("B&M") (collectively, "Guilford"[1]) derailed while

traveling on track owned by the plaintiff, New England Central Railroad, Inc. ("NECR").

Amended Complaint [Docket #16] ¶ 20.[2]  Guilford's right to operate on NECR's track is

governed by a trackage rights order (the "TRO") that was imposed by the Interstate Commerce

Commission in 1990 upon the parties' predecessors in interest.  *Id.* ¶¶ 15-17[3]; *Amtrak—*

*Conveyance of B&M in Conn River Line in VT & NH*, 6 I.C.C.2d 539 (1990) ("*Amtrak II*").

As is apparent from the amended complaint, *see* Amended Complaint ¶¶ 14-19, 40-41,

43-44, 46, 48, 51-52, 63-64, the meaning of a provision of the TRO is central to the

determination of which railroad is liable for what damages.  Section 7.1 of the TRO provides in

pertinent part that—

> each party hereto shall be responsible for and shall assume all loss, damage or
> injury . . . to persons or property, including the cost of removing any trackage,
> repairing trackage and correcting environmental damage, which may be caused by
> its engines, cars. trains or other on-track equipment (including damage by fire
> originating therefrom) *whether or not the condition or arrangement of the*
> *trackage contributes in any manner or to any extent to such loss, damage or*
> *injury*, and whether or not a third party may have caused or contributed to such
> loss, damage or injury, and for all loss or damage to its engines, cars, trains or
> other on-track equipment while on said trackage from any cause whatsoever . . . .

*Amtrak II*, 6 I.C.C.2d at 564 (emphasis added).

NECR contends that Section 7.1 of the TRO makes Guilford liable for all the damages

caused by the derailment even if the cause of the derailment was the poor condition of NECR's

track.  *See* Amended Complaint ¶¶ 18-19, 51-52, 63-64.  Guilford, on the other hand, believes

that Section 7.1 was not intended to—and as a matter of public policy, could not, *see Nat'l R.*

---

[1] ST and B&M are wholly owned by Guilford Transportation Industries, Inc., which is not a party to this action.

[2] For purposes of a "facial attack" on subject matter jurisdiction, the well-pleaded allegations of the complaint must be taken as true.  2 Moore's Federal Practice § 12.30[4], at p. 12-39 (3rd ed. 2004).

[3] The TRO is to be interpreted under District of Columbia law.  *Amtrak—Conveyance of B&M in Conn River Line in VT & NH*, 6 I.C.C.2d 539, 567 (1990) (§ 9.9 of TRO).

*Passenger Corp.—Applic.—49 U.S.C. 24308(a)*, 3 S.T.B. 157, 162 (1998) ("public policy generally disfavors requiring one party to be responsible for another's gross negligence or willful and wanton misconduct")—insulate NECR from its own misconduct in failing to keep the track in adequate repair despite having knowledge of its substandard condition.

On November 1, 2004 Guilford filed a formal complaint and request for declaratory order with the Surface Transportation Board ("STB"), the successor to the ICC. *See* Amended Complaint ¶ 38. The Guilford petition to the STB was filed pursuant to the STB's jurisdiction under the Interstate Commerce Act ("ICA"),[4] specifically 49 U.S.C. § 11704(b), which gives the STB jurisdiction over damages claims against railroads. The STB initially declined to entertain Guilford's petition, *Boston and Maine Corp. v. New England Central R., Inc.*, 2005 STB LEXIS 116 (STB Fin. Docket No. 34612, served Feb. 24, 2005), but Guilford has requested reconsideration.

A month after Guilford filed its complaint at the STB, NECR filed this action, which seeks damages arising out of the same derailment. Counts I through IV of NECR's amended complaint allege claims against Guilford under Section 11704 of the ICA. Amended Complaint ¶¶ 39-48. Counts V through X allege state law claims—specifically, breach of contract, negligence, and gross negligence. *Id.* ¶¶ 49-72. Subject matter jurisdiction over the six state law claims, according to NECR, is available under the supplemental jurisdiction statute. *Id.* ¶ 6.

**Argument**

I.      **NECR's state law claims are preempted by 49 U.S.C. § 10501(b).**

Six of NECR's claims (Counts V through X) are said to arise under various state law causes of action (breach of contract, negligence, gross negligence, etc.). Such claims, however,

_____

[4] The ICA has been codified, principally to 49 U.S.C. §§ 701-727 and 10101-16106.

are preempted by the ICA.[5]  The ICA confers upon the STB exclusive jurisdiction over all

aspects of rail transportation[6], including "rates, classifications, rules (including *car service,*

*interchange, and other operating rules*), practices, routes, services, and *facilities* of [rail]

carriers."  49 U.S.C. § 10501(b) (2000) (emphasis added).  Section 10501(b) also decrees that

"[e]xcept as otherwise provided in this part,[7] the *remedies provided under this part* with respect

to the regulation of rail transportation are *exclusive* and *preempt* the *remedies* provided under

Federal or *State law*."  *Id.* (emphasis added).[8]  State common law remedies such as those sought

by Counts V through X of the amended complaint are preempted by section 10501(b) and by

former section 10501(d), which was enacted by the Staggers Rail Act of 1980.[9]  *Alliance*

*Shippers, Inc. v. Southern Pac. Transp. Co.*, 858 F.2d 567, 568-69 (9th Cir. 1988).

As demonstrated below (and as alleged by NECR, *see* Amended Complaint ¶¶ 5(a)-(b),

39-48), the ICA provides remedies with respect to the claims at issue here.  Hence the state law

claims—which constitute Counts V through X of the amended complaint—are preempted by

---

[5] Preemption is appropriately raised by motion to dismiss. *Sturm, Ruger Co., Inc. v. Connecticut Gen. Life Ins. Co.*, 1994 WL 258313 (D.N.H. 1994); *Laval v. British Airways, PLC*, 812 F. Supp. 713, 721 (S.D. Tex. 1992).

[6] "Transportation" includes locomotives, cars, facilities, and equipment "of any kind related to the movement of . . . property . . . by rail," as well as "services related to that movement." 49 U.S.C. § 10102(9) (2000). Guilford's train was engaged in rail transportation when the derailment occurred. Amended Complaint ¶ 20.

[7] "[T]his part" is part A (Rail) of subtitle IV (Interstate Transportation) of title 49 of the U.S. Code. *See* 109 Stat. 804-05. Part A comprises sections 10101 through 11908 of title 49.

[8] The full text of section 10501(b) reads:

> "(b)    The jurisdiction of the Board over—
>
>> "(1)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>>
>> "(2)    the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."

[9] Similar provisions have been contained in the Interstate Commerce Act since 1920. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 329 n. 16 (1981).

4

Section 10501(b). NECR is limited to the remedy prescribed by the federal statute, 49 U.S.C. § 11704.

Federal law "shall be the supreme Law of the Land; . . . any Thing in the Constitution or the Laws of any state to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. There are three types of preemption pursuant to the Supremacy Clause—(1) express preemption, where the intent of Congress is explicitly stated in the language of a statute or implicitly contained in its structure and purpose; (2) conflict preemption, where the state law in question conflicts with the federal law; and (3) field preemption, where federal law so thoroughly occupies the field as to leave no room for the states to supplement it. *Cippollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Any given situation may involve more than one type of preemption, *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 n. 6 (2000), and the case at bar involves both express and field preemption. And where, as here, the express preemptive language of the federal statute is broad and makes no distinction between positive state enactments and common law, state common law remedies also are preempted. *Levesque v. Miles, Inc.*, 816 F. Supp. 61, 67 (D.N.H. 1993) (citing *Cippollone*).

In section 10501(b), Congress has "explicitly stated" its intent to preempt state law remedies that touch upon or concern "transportation by rail carriers." *Pejepscot Industrial Park, Inc. v. Maine Central R.R. Co.*, 215 F.3d 195, 202 (1st Cir. 2000). "The last sentence of § 10501(b) plainly preempts state law." *Id.; accord City of Auburn v. United States*, 154 F.3d 1025, 1028-30 (9th Cir. 1998); *Burlington N. Santa Fe Corp. v. Anderson*, 959 F. Supp. 1288, 1295 (D. Mont. 1997); *CSX Transp., Inc. v. Georgia Public Service Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) (noting extraordinary breadth of § 10501(b)); *Burlington N. R.R. Co. v. Page Grain Co.*, 545 N.W.2d 749 (Neb. 1996). This is consistent with longstanding federal

preemption of the field of rail transportation, leaving no room for state causes of action. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981); *Modin v. New York Central Co.*, 650 F.2d 829, 834-35 (6th Cir. 1981) (Interstate Commerce Act preemption of damage claim under state insurance law).

Congressional intent to preempt state-law remedies is further evidenced by the inclusion in the ICA of specific remedies for violations of the sort claimed by NECR: First, "[a] person injured because a rail carrier . . . does not obey an order of the Board . . . may bring a civil action in a United States District Court to enforce that order under this subsection." 49 U.S.C. § 11704(a) (2000). Second, "[a] rail carrier providing transportation subject to the jurisdiction of the Board under this part is liable for damages sustained by a person as a result of an act or omission of that carrier in violation of this part." 49 U.S.C. § 11704(b) (2000). Section 11704 also sets out in detail the procedure to be followed by a party seeking to impose liability on a rail carrier under subsection (b). 49 U.S.C. § 11704(c) (2000).

STRC and B&M are rail carriers, Amended Complaint ¶ 5(a), and the derailment occurred while the defendants were providing rail transportation, *id.* ¶ 20. Nothing in Counts V through X avoids—or can avoid—the preemptive effects of section 10501(b). Moreover, as NECR has recognized in its Counts I through IV, the ICA affords NECR a remedy in the event that STRC or B&M is found liable.

It makes no difference that the state law involved here is common law rather than legislative or administrative regulation. "'[S]tate regulation can be as effectively exerted through an award of damages as through some form of preventive relief,'" *Cippollone*, 505 U.S. at 521 (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)), and "in deciding whether any conflict is present, a court's concern is necessarily with 'the nature of the

activities which the States have sought to regulate, rather than on the method of regulation adopted.'" *Kalo Brick & Tile*, 450 U.S. at 317-18 (quoting *Garmon*, 359 U.S. at 243) (striking down state common law damages actions relating to railroad abandonments). Indeed, *Kalo Brick & Tile* held that the ICA preempts state law causes of action for breach of the common law duty of a common carrier, common law negligence based on the carrier's alleged failure to maintain its roadbed, and the common law tort of interference with contractual relations between the shipper and its customers. *Kalo Brick & Tile*, 450 U.S. at 323-25;[10] *see Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 444 (5th Cir. 2001) (ICA preempts common law negligence action); *Guckenberg v. Wisconsin Central Ltd.*, 178 F. Supp. 2d 954, 958 (E.D. Wisc. 2001) (ICA preempts common law nuisance action)

Here, as was the case in *Kalo Brick & Tile*, the ICA "spells out with considerable precision the remedies available to" a party injured by a carrier's violation of the relevant provisions of the Act. *See id.* at 322; 49 U.S.C. § 11704 (2000). Further, the ICA expressly addresses trackage rights as an action requiring STB approval. 49 U.S.C. § 11323(a)(6) (2000); *see* 49 C.F.R. pt. 1180 (2004) (implementing regulations).

Judge Stearns of this Court recently addressed a similar situation—one in which a shipper sued two railroads for damages due to nonpayment of car mileage allowances. *Engelhard Corp. v. Springfield Terminal Ry. Co.*, 193 F. Supp. 2d 385 (D. Mass. 2002). The plaintiff alleged a claim under 49 U.S.C. § 11704 for violation of the ICA requirement that railroads pay car mileage when they use shippers' rail cars, plus four state law claims based upon contract and quantum meruit theories. *Id.* at 388 n. 6. Citing 49 U.S.C. § 10501(b), along with ICA

---

[10] An additional state law cause of action found preempted in *Kalo Brick & Tile* was for violation of a statute requiring railroads to furnish cars. *Kalo Brick & Tile*, 450 U.S. at 323-25.

7

provisions expressly giving the STB jurisdiction over car mileage allowances, the Court

dismissed the four state law counts on preemption grounds. *Id.* at 389-90.

Thus Congress in the ICA gave the STB exclusive jurisdiction over rail transportation

generally and trackage rights in particular, preempted all state remedies, and provided a federal

remedy for rail carrier violations of the ICA. Section 10501(b) preempts NECR's state law

claims and Counts V through X accordingly should be dismissed.

**II.    The amended complaint should be referred to the STB under the primary jurisdiction doctrine.**

Regardless of whether NECR's state law claims (Counts V through X) are dismissed, the

central legal issue here is the meaning of Section 7.1 of the TRO. This is an issue that the Board,

as successor to the ICC, is uniquely qualified to decide: Was Section 7.1 intended by the ICC to

absolve a track owner whose track is in substandard condition due to its own gross negligence or

willful misconduct from liability for a derailment resulting from the condition of that track?

In another case involving the same TRO, the Court of Appeals for this circuit described

the Board as *"uniquely suited"* to determine the meaning of the TRO, as well as to make

decisions about national rail transportation policy. *Rymes Heating Oils, Inc. v. Springfield

Terminal Ry. Co.*, 358 F.3d 82, 91 (1st Cir. 2004) (emphasis added); *accord Hansen v. Norfolk &

W. Ry. Co.*, 689 F.2d 707, 712 (7th Cir. 1982) (noting appropriateness of primary jurisdiction

referral for interpretation of ICC's own order). In addition to being about the meaning of the

TRO, the dispute between Guilford and NECR raises a significant question of transportation

policy—namely, whether a track owner can absolve itself, in advance, of gross negligence and

even willful misconduct in the discharge of its track safety responsibilities.

The Board previously has addressed this issue: "[P]ublic policy generally disfavors

requiring one party to be responsible for another's gross negligence or willful and wanton

misconduct." *Nat'l R. Passenger Corp.—Applic.— 49 U.S.C. 24308(a)*, 3 S.T.B. 157, 162 (1998). Moreover, the TRO is to be interpreted under District of Columbia law, *Amtrak II*, 6 I.C.C.2d at 567 (§ 9.9 of TO), which considers "[c]ontract provisions which appear to indemnify against willful, wanton, reckless, or intentional misconduct by the indemnitee [to be] contrary to public policy." *Nat'l R. Passenger Corp. v. Consolidated Rail Corp.*, 698 F. Supp. 951, 970-71 & n. 6 (D.D.C. 1988) (applying D.C. law), *vacated and remanded on other grounds*, 892 F.2d 1066 (1990); *see Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop. Ass'n*, 441 A.2d 956, 964-65 (D.C. 1982) (invalidating contract provision as violative of public policy).

The STB did dismiss Guilford's complaint against NECR. *Boston and Maine Corp. v. New England Central R., Inc.*, 2005 STB LEXIS 116 (STB Fin. Docket No. 34612, served Feb. 24, 2005). That seemed to reflect principally a reluctance to engage in fact finding as to which carrier was at fault in respect of the derailment, though it also indicated some reluctance to interpret Section 7.1. *See id.* at *1, *4, *7-*8.[11] Guilford believes, however, that the STB will react very differently if this Court refers the matter to it, for it is Board policy that "[p]etitions for issuance of a declaratory order premised on referral from a federal court are routinely accepted." *Engelhard Corp.—Petition for Declaratory Order—Springfield Terminal Railway Corp. and Consolidated Rail Corp.*, 2003 STB LEXIS 157, at *4 (STB Docket No. 42075, served Apr. 1, 2003) (citing *Delegation of Authority—Declaratory Order Proceedings*, 5 I.C.C.2d 675, 676 (1989)).

Finally, in addition to the fact that the Board is well qualified to explain the meaning of a provision ordered by its predecessor, the legal standard is one that should be uniform for all STB-imposed trackage rights. The promotion of nationwide regulatory uniformity is, of course,

---

[11] On March 10, 2005 B&M/STRC filed a petition for reconsideration at the STB, asking that the Board reconsider so much of its ruling as declined to interpret § 7.1. The STB has not yet acted on that request.

a classic basis for application of the primary jurisdiction doctrine. *See, e.g., Pejepscot Indus. Park, Inc. v. Maine Central R. Co.*, 215 F.3d 195, 205-06 (1st Cir. 2000) ("promote uniformity"); *Hansen*, 689 F.2d at 710-11 (same). The Court accordingly should refer this case to the STB for consideration of whether Section 7.1 absolves NECR of its own negligence or willful misconduct.

## Conclusion

For the reasons set out above, Counts V through X of the amended complaint should be dismissed for failure to state a claim on which relief can be granted. Regardless of whether such counts are dismissed, the matter should be referred to the STB, under the primary jurisdiction doctrine, for its interpretation of Section 7.1.

Respectfully submitted,

Eric L. Hirschhorn
Winston & Strawn LLP
1400 L Street, NW
Washington DC 20005
202-371-5706

Robert B. Culliford
BBO #638468
Iron Horse Park
North Billerica MA 01862
978-663-1029

*Attorneys for Defendants Springfield Terminal Railway Company and Boston and Maine Corporation*

March 16, 2005.