UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants.

Civil Action No.:   04-30235-MAP

### NEW ENGLAND CENTRAL RAILROAD'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

On July 19, 2005, the parties appeared before this Honorable Court for a hearing on the defendant's, Boston and Maine Corporation and Springfield Railway Terminal Company (hereinafter "B&M/STRC"), *Motion to Dismiss*. At the conclusion of the hearing this Honorable Court granted the plaintiff, New England Central Railroad ("NECR"), until August 9, 2005, to file a *Supplemental Brief* in support of its opposition to the B&M/STRC's Interstate Commerce Commission Termination Act ("ICCTA") preemption claims. In their motion and at the hearing, the B&M/STRC argued that the NECR's common law claims are preempted by 49 U.S.C. § 10501(b). This *Supplemental Brief* establishes the grounds for the position that the NECR's common law claims, concerning the responsibility for damages which resulted from a derailment, are not preempted by the ICCTA. The ICCTA's preemption is not as broad or as far reaching as claimed by the B&M/STRC and the NECR's claims are not "covered," "touch upon," and/or "relate to" that subject matter providing preemption in 45 U.S.C. § 10501(b).

A. **THE SURFACE TRANSPORTATION BOARD HAS EXCLUSIVE JURISDICTION OVER TWO AREAS CONCERNING RAILROAD OPERATIONS.**

The ICCTA, by its own unequivocal language, only gives the Surface Transportation Board ("STB") exclusive jurisdiction over two areas concerning railroad operations. More specifically, 49 U.S.C. § 10501(b) provides that the STB has exclusive jurisdiction over:

(1) Transportation by rail carriers and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange and other operating rules), practices, routes, services, and facilities of such carriers, and

(2) The construction, acquisition, operation, abandonment or discontinuance of spur, industrial, team, switching, or sidetracks, or facilities....

Therefore, the STB does not have exclusive jurisdiction, and preemption does not apply to, subjects over which Congress has not granted to the STB exclusive jurisdiction in § 10501(b). The ICCTA recognizes that not all common law actions are preempted; instead, it is only those common law actions which involve the subjects over which the STB has exclusive jurisdiction which are preempted. For complete preemption, the regulations must "cover" the same subject matter as the state law at issue. CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 664 (1993). To prevail on a claim that the regulations have a preemptive effect, defendant must show more than that they "touch upon" or "relate to" that subject matter, because "covering" is a more restrictive term which indicates that preemption occurs only if "the federal regulations substantially subsume the subject matter of the relevant state law." Id.

The B&M/STRC cannot identify any portion of § 10501 which covers, touches upon, and/or relates to the subject matter of the NECR's claims (a dispute between two railroads over liability and damages for a derailment) for which preemption would be applicable. Simply put,

2

and contrary to the arguments advanced by the B&M/STRC, preemption does not lie simply because a railroad has been sued under a common law theory of recovery.

In examining whether preemption is applicable, the courts have looked closely at the particular subject of the common law claims in question to determine if the allegedly preempted claims are those which are in fact preempted by the ICCTA. Moreover, "[p]reemption, absent clear evidence of a contrary intent on the part of Congress, will not encroach on areas traditionally subject to the historic police powers of the States...." Engelhard Corp. v. Springfield Terminal Railway Co., 193 F.Supp.2d 385, 389 (D.Mass. 2002), *citing to* Medtronic Inc. v. Lohr, 518 U.S. 70 (1996). *See also* Florida East Coast Ry. Co., 266 F.3d 1324, 1376 (11th Cir. 2001)(While the preemptive reach of the ICCTA is broad it does not oust a city's powers to enforce non-discriminatory occupational licenses and zoning ordinances); In re: Appeal of Vermont Railway, 769 A.2d, 648, 655 (VT 2000)(holding certain zoning regulations are not preempted by the ICCTA because "these conditions do not interfere with railway operations"). These cases clearly evidence that though the preemptive reach of the ICCTA is extensive, it is not without limitations.

**B.      THE B&M/STRC'S ARGUMENT FOR PREEMPTION IS TOO BROAD.**

The B&M/STRC have cast too broad a net in its argument, in an attempt to broaden and/or expand the ICCTA's jurisdiction, in order to capture within the ICCTA's preemptive power virtually all common law claims against railroads regardless of their subject matter. For instance, the B&M/STRC have argued that "state common law remedies such as those sought by *Counts 5* through *10* (of the NECR's ) *Amended Complaint* are preempted by § 10501(b)" (*Memorandum of Reasons in Support of Defendants' Motion to Dismiss,* at p.4.). This argument is simply not supported by a fair reading of § 10501(B) or the applicable case law. Likewise, the

3

B&M/STRC's sweeping assertion that, Congress has "'explicitly stated its intent to preempt state law remedies that <u>touch upon or concern</u> 'transportation by rail carriers'" is also not supported by the relevant case law. *See* <u>CSX Transportation, Inc. v. Easterwood</u>, *supra*.

Instead, the cases cited by the B&M/STRC are readily distinguishable from the claims being brought by the NECR in this case. Also, those cases cited by the B&M/STRC are clearly limited in scope to the particular facts at hand and demonstrate that the scope of the STB's exclusive jurisdiction does not extend to common law tort claims of the type asserted by the NECR. For instance, in <u>Alliance Shippers Inc. v. Southern Pacific Transportation Co.</u>, the Ninth Circuit dealt with causes of action for price discrimination under federal common law and state statutory law, 858 F.2d 567 (9th Cir. 1988). Alliance Shippers alleged that shippers other than themselves had received more favorable rates for a particular type of railroad service (trailer on flatcar otherwise known as "TOFC" service) which the ICC had specifically ruled was exempted from rate classification. <u>Id</u>. The Ninth Circuit holding was specifically limited to common law statutory action for price discrimination in the exempted TOFC, specifically "because a court remedy for discriminatory rates is inconsistent with the purpose of the Staggers Act." <u>Id</u>. at 569. The remedies sought in the <u>Alliance</u> case had nothing to do with the type of remedies which the NECR seeks to bring in this action.

Similarly, another case the B&M/STRC cited, <u>City of Auburn v. United States</u>, did not even deal with the question of whether or not a common law tort claim was preempted by the ICCTA. 154 F.3d 1025 (9th Cir. 1998). Instead, in the <u>City of Auburn</u> case, a railroad, the Burlington Northern Santa Fe ("BNSF"), had applied to the STB to reopen a previously dormant line, and proposed certain repairs and improvements to the line. Although the BNSF applied for local permits for these repairs and improvements, it contended in that process that it was entitled

4

to ICCTA preemption of the local permitting requirements. The STB ruled in the BNSF's favor, that state and local permit requirements were in fact preempted by the ICCTA, relying not only on § 10501, but also on 49 U.S.C. § 11321(a) which provides that:

> [a] rail carrier...participating in [an approved or exempted merger or acquisition transaction] is exempt from the anti-trust laws and from all other law, including state and municipal law, as necessary to let that rail carrier...hold, maintain, and operate properly...acquired through the transaction.

Thus, the City of Auburn case, unlike the NECR case here, dealt with a subject (the STB approved acquisition) which is clearly within the exclusive jurisdiction of § 10501(b)(2) and has absolutely nothing to do with the type of common law actions the NECR is raising herein.

Two other cases cited by the B&M/STRC, simply did not deal with ICCTA preemption of common law torts. See Burlington Northern Santa Fe Corp. v. Anderson, 95 F.Supp. 1288 (D. Mont. 1997) and CSX Transportation, Inc. v. Georgia Public Service Commission, 944 F.Supp. 1573 (N.D. Ga. 1996). Instead, both of these cases dealt with state agencies which had, for years prior to the enactment of the ICCTA in 1996, regulated a railroad's ability to modify its intrastate facilities. Both cases involved a railroad's challenge to the state regulation and presented issues which are completely different from those raised by the NECR's common law claims here.

In Anderson, the issue decided was whether the ICCTA preempted a Montana state law authorizing the Montana Public Service Commission to exercise regulatory authority over railroad agencies in Montana, where the agency had historically regulated the railroad's intrastate economic activities, including the establishment of rates and charges, the authority to compel the railroad to provide reasonable accommodations and services to the public and the affected by closure, consolidation or centralization of a railroad facility. 959 F.Supp. at 1291. Likewise, in Georgia Public Service Commission the issue decided was "whether the (ICCTA)

5

preempts the (Georgia statute's) authority to regulate railroad agencies closing in Georgia." 944 F.Supp. at 1580. Preemption was found in both cases because the state statutes in question dealt with the precise type of economic regulation contemplated as being within the exclusive jurisdiction of the STB pursuant to § 10501(b). *See e.g.* Anderson, 959 F.Supp. at 1297 (the "state issue falls squarely in the preempted field of economic regulation, and it effects the policy of railroad transportation.") (*emphasis supplied*); Georgia Public Service Commission, 944 F.Supp. at 1581 (the "regulation of railroad agency closings certainly seems to come within 'regulation of rail transportation,' which is expressly preempted by § 10501(b)(2).").

Further, in the case of Chicago & Northwestern Transportation Co. v. Kalo Brick & Tile Co., a case arising under the Interstate Commerce Act as it existed prior to the enactment of the ICCTA, also dealt with a subject (the abandonment of railroad lines) which was clearly within the then Interstate Commerce Commission's exclusive authority to regulate. 45 U.S. 311, 320, (1981) ("the authority of the Commission to regulate abandonments is exclusive… [and its] authority over abandonments is also plenary.") (*citations omitted*). In Kalo Brick, a business which had been damaged by a railroad's decision to abandon one of its tracks, brought common law tort actions against the railroad for the damages it suffered, as a result of the abandonment. Id. at 313-315. The ICC had approved the railroad's application for a certificate declaring that the public convenience and necessity permitted it to abandon the railroad line in question. Id. at 314. Although the Supreme Court found the ICCTA preempted the common law claims for damages, it did so because the railroad had applied for permission to abandon the line in question. The ICC's authority over abandonments was so broad that it included the types of claims which were contemplated by the common law actions:

> [w]e hold that the Interstate Commerce Act precludes the shipper
> from pressing a state-court action for damages against a regulated

6

> carrier when the Interstate Commerce Commission in approving
> carrier's application for abandonment, reaches the merits of the
> matters the shipper seeks to raise in the state court.

Id. at 331-332. The Supreme Court specifically held that its ruling was limited to the particular facts before it: "[w]e reserve for another day the question of whether such a cause of action lies when no application is made to the commission." Id. The Kalo case is clearly distinguishable from the NECR's because the STB has not previously ruled on the issues as raised by the NECR's common law claims (in fact, the STB has ruled that it does not have jurisdiction over the NECR's claims[1]) and because the subject of the NECR's claims (i.e. the responsibility for damages which arise as a result of the derailment) is completely unlike the subject of the abandonment of railroad lines which is a subject over which the ICC clearly had exclusive jurisdiction.

The other cases the B&M/STRC had cited, although dealing with the preemption of common law tort claims, likewise arise from subjects which are clearly within the STB's exclusive jurisdiction. See e.g. Friberg v. Kansas City Southern Railway Co., 267 F.3d 439 (5th Cir. 2001)( Kansas City Southern lengthened its right of way and constructed additional sidetracks, under the exclusive jurisdiction of the STB, as provided by § 10501(b)(2), regarding construction of railroad tracks, resulted in an increased use of, and blockage of a railroad crossing and the plaintiff's customers were unable to get to its business on the other side of the crossing); Gukenberg v. Wisconsin Central Ltd., 178 F.Supp.2d 954, 959 (E.D. Wisc. 2001). (Plaintiff's nuisance claim preempted because it arose from the railroad's construction of two new sidetracks, conduct which pertained to the "operation…of a sidetrack…" a subject over which the STB's jurisdiction is exclusive under § 10501(b)(2), and because the plaintiff's

---

[1] The B&M/STRC have sought a reconsideration of the STB's initial ruling. As of the writing of this *Supplemental Brief* the STB has yet to act on the B&M/STRC's petition for reconsideration.

7

qualified "regulation" of railroad activities would interfere with day-to-day railway operations.); Modin v. New York Central Co., 650 F.2d 829, 835 (where a railroad worker's insurance policy was unlawfully cancelled as the result of a merger of railroads which had been approved by the ICC, the plaintiff states statutory and common law failure to warn causes of action were preempted because the "merger of multi-state railroad systems implicates important national interests that should not be thwarted by state rules imposing possibly conflicting duties"); Englehard Corp., *supra* (a plaintiff's common law based causes of action challenging railroad car hire rates under a tariff which had previously been set by the ICC are preempted because the ICC has created an exclusive remedy for their non-payment.").

The NECR's claims deal with a subject which is not among those specifically identified and/or described in § 10501(b). More specifically, the NECR's common law claims deal with the responsibility for damages arising from a derailment and the contractual obligations between the parties with respect to this derailment. This is not the type of subject which has been considered by any of the courts in the cases discussed herein which have found ICCTA, or ICA preemption. The NECR's common law actions here do not amount to "regulation" which reaches at national interests which was one of the reasons for the enactment of the ICCTA. Moreover, the STB has already rejected in this case and with it the arguments that it has jurisdiction, exclusive or otherwise, over these claims. *See NECR's Memorandum of Law in Support of It's Opposition to the Defendant's Motion to Dismiss* at p. 4 and Exhibit "C;" *see also* fn 1, *supra*.

Generally, there exists a "presumption against preemption" which dictates that if § 10501(b) "can be read sensibly not to have a preemptive effect, the presumption controls and no preemption may be inferred." Florida East Coast Railway Co. v. City of West Palm Beach,

8

266 F.3rd. at 1328. The ICCTA only preempts common law causes of action which is one of the subjects over which the STB has exclusive jurisdiction, and the doctrine does not withdraw from the states the "power to regulate where the activity regulated (is) a merely peripheral concern" of federal law. San Diego Building Trades v. Garmon, 359 U.S. 236, 243 (1959). Instead:

> Rather, express preemption applies only to state laws "with respect to regulations of rail transportation." 49 U.S.C. 10501(b). This necessarily means something qualitatively different from laws "with respects to rail transportation"…In this manner, Congress narrowly tailored the ICCTA preemption provision to displace only "regulation," i.e., those state laws that may reasonably be said to have the effect of "managing" or "governing" rail transportation …while permitting the continued application of laws having a more remote or incidental effect on rail transportation.

Florida East Coast, 266 F.3rd at 1331 (*citation omitted*).

State contract claims and tort claims which arise out of interference with voluntarily assumed contractual obligations are not necessarily analogous to regulatory statutes clearly preempted by § 10501(b). South Dakota v. Burlington Northern & Santa Fe Ry., 280 F.Supp.2d 919, 931 (2003). In addition, preemption only applies when the "challenge state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Perez v. Campbell, 402 U.S. 637, 649 (1971), *quoting* Hinez v. Davidowitz, 312 U.S. 51, 67 (1941). With respect to § 10501(b), its preemptive effect is only to the extent that the state statute conflicts with federal law. Railroad Ventures, Inc. v. Surface Transportation Board, 299 F.3d 523, 563 (6th Cir. 2002). In Kraus v. Santa Fe Southern Pacific Corp., the Ninth Circuit held that a plaintiff's state laws claims for tortuous interference with economic relationships were not preempted by the ICA's railroad merger provisions. 878 F.2d 1193 (9th Cir. 1989).

9

C.  **WHEN COURTS HAVE FOUND PREEMPTION OF COMMON LAW CLAIMS SUCH CLAIMS AMOUNTED TO REGULATION OF THE RAILROAD.**

As noted above, Courts regularly have found that the ICCTA preempts state common law claims with respect to railroad operations. In Friberg, the ICCTA preempted negligence and negligence per se claims with respect to the railroad's blocking the roadway. 267 F.3d at 444. Had the plaintiff prevailed on the claims, then the effect of the judgment would have been to regulate the railroad preventing the railroad from the full use of its additional side track and crossing, i.e. forced the railroad to make economic decisions pertaining to train length, speed and scheduling, subjects which are preempted by the ICCTA. Also, in Guckenberg, the state law nuisance claim derived from the railroad's actions in operating railway traffic upon the railroad's property adjacent to that of the property of the plaintiffs. 178 F. Supp.2d 954.

The NECR's claims are clearly distinguishable from those discussed above in that the B&M/STRC's railroad operations would not be effected by said claims. Any award of damages would have absolutely no regulatory effect on the B&M/STRC.

WHEREFORE, for all the above stated reasons, in addition to those reasons stated in its original opposition, the NECR respectfully requests this Honorable Court to deny the defendant's *Motion to Dismiss*.

                                  Respectfully submitted,
                                  NEW ENGLAND CENTRAL RAILROAD, INC.,
                                  by its attorneys,

                                  /s/ Richard A. Davidson, Jr.
                                  Michael B. Flynn      BBO# 559023
                                  Richard A. Davidson, Jr.   BBO# 552988
                                  FLYNN & ASSOCIATES, P.C.
                                  400 Crown Colony Drive, Suite 200
                                  Quincy, MA 02169
                                  (617) 773-5500

Dated: August 9, 2005