UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

NEW ENGLAND CENTRAL
RAILROAD, INC.,

    Plaintiff,

  -v.-              Civil Action No. 04-30235-MAP

SPRINGFIELD TERMINAL
RAILWAY COMPANY, et al.,

    Defendants.

---

**NOTIFICATION OF DECISION BY THE
SURFACE TRANSPORTATION BOARD
AND PARTIAL WITHDRAWAL OF MOTION**

   Pending before this Court is the motion of the defendants—Springfield Terminal Railway

Company ("ST") and Boston and Maine Corporation ("B&M") (collectively, "Guilford")[1]—to

(1) dismiss Counts V through X of the amended complaint [Docket No. 16] for failure to state a

claim on which relief can be granted and (2) refer this matter to the Surface Transportation Board

("STB") for an interpretation of a provision of a trackage rights order (the "TRO") imposed in

1990 by the STB's predecessor, the Interstate Commerce Commission ("ICC").

   This action arises out of a derailment of a Guilford freight train traveling on track owned

by the plaintiff New England Central Railroad, Inc. ("NECR") in July 2004.  Guilford believes

that the derailment was caused by the poor condition of NECR's track.  The TRO contains a

---

[1] ST and B&M are wholly owned by Guilford Transportation Industries, Inc., which is not a party to this action.

provision that, NECR argued, absolves NECR of liability for the derailment even if the condition of its track was the result of its own gross negligence or willful misconduct.

In November 2004—a month before NECR filed this action—Guilford asked the STB to decide whether the liability provision of Section 7.1 of the TRO absolves NECR of responsibility for the derailment even if NECR was guilty of gross negligence or willful misconduct in failing to keep its track in good repair. The STB declined to hear the matter in February 2005.

Guilford subsequently had petitioned the STB for reconsideration. That petition was pending when this Court heard Guilford's motion on July 19, 2005. At that hearing, this Court asked to be advised of any decision by the STB on the reconsideration petition.

On January 10, 2006, the STB served its decision granting, in part, Guilford's petition for reconsideration. A copy of that ruling is attached. The STB decision sustains Guilford's position that Section 7.1 of the TRO does not insulate the plaintiff, New England Central Railroad, Inc. ("NECR"), from liability for damage caused by NECR's gross negligence or willful misconduct.

Guilford accordingly withdraws that portion of its motion that seeks referral to the STB, and asks that the Court proceed to decide that portion of the motion that seeks dismissal of NECR's state-law claims (Counts V through X of the amended complaint).

Respectfully submitted,

Eric L. Hirschhorn
Winston & Strawn LLP
1700 K Street, NW
Washington DC 20006
202-282-5706

Robert B. Culliford
BBO #638468
Iron Horse Park
North Billerica MA 01862
978-663-1029

*Attorneys for Defendants Springfield
Terminal Railway Company and Boston
and Maine Corporation*

January 12, 2006

35695
EB

SERVICE DATE – JANUARY 10, 2006

SURFACE TRANSPORTATION BOARD

DECISION

STB Finance Docket No. 34612

BOSTON AND MAINE CORPORATION
and
SPRINGFIELD TERMINAL RAILWAY COMPANY
v.
NEW ENGLAND CENTRAL RAILROAD, INC.

Decided:  January 9, 2006


     We are granting, in part, the petition of Boston and Maine Corporation (B&M) and Springfield Terminal Railway Company (ST) (jointly, "BM/ST" or "complainants") for reconsideration of our prior decision dismissing their complaint and petition for a declaratory order arising out of the derailment of a BM/ST train on track owned by the New England Central Railroad, Inc. (NEC).

BACKGROUND

     In Amtrak – Conveyance of B&M in Conn River Line in VT & NH, 4 I.C.C.2d 761 (1988) (Amtrak I), the Board's predecessor agency, the Interstate Commerce Commission (ICC), required B&M to convey its 48.8-mile "Connecticut River Line" to the National Railroad Passenger Corporation (Amtrak), subject to the requirement that Amtrak grant specified trackage rights back to B&M.  The ICC also authorized Central Vermont Railway, Inc. (CV) to acquire the conveyed line from Amtrak and to operate it, subject to B&M's trackage rights.  The carriers were directed to negotiate a trackage rights arrangement containing certain core requirements designed to ensure that the tenant carrier would be able to continue to conduct rail freight operations over the line.

     During their negotiations, the carriers operated under a temporary trackage rights agreement.  When the parties were unable to agree on certain terms for a permanent agreement, the ICC issued a decision in Amtrak – Conveyance of B&M in Conn River Line in VT & NH, 6 I.C.C.2d 539 (1990) (Amtrak II), clarifying its core requirements, resolving the disagreements, and adopting the detailed trackage rights terms and conditions attached as an appendix to that decision, herein called "the trackage rights order" (TO).  Many provisions of the temporary agreement were not in dispute and were carried over into the TO without further discussion.  In

STB Finance Docket No. 34612

subsequent transactions, NEC acquired CV's assets, including its rights and responsibilities under the TO, and B&M assigned its trackage rights over the line to its subsidiary, ST.

On November 1, 2004, BM/ST filed a complaint and petition for declaratory order arising out of the derailment of an ST train operating on NEC's Connecticut River Line track on or about July 3, 2004. ST's train was operating on NEC's track pursuant to the TO issued in Amtrak II. Complainants alleged that the derailment was caused by NEC's failure to maintain the track as required by the TO and Federal Railroad Administration (FRA) regulations and that, as a consequence, BM/ST suffered damages in excess of $100,000. BM/ST requested compensatory, incidental, and punitive damages based on breach of contract (the TO) and tortious injury due to gross negligence, recklessness, and willful misconduct by NEC. NEC responded that any claims based on the condition of the track are barred by Section 7.1 of the TO.[1] BM/ST argued that NEC's interpretation of Section 7.1 is contrary to public policy because it would apportion all responsibility for the derailment to BM/ST even if the derailment was caused solely by grossly negligent, reckless, or willful misconduct by NEC. NEC has brought an action in Federal district court to recover damages. New England Central R.R. v. Boston and Maine Corp., Civ. Action No. 04-30235 – MAP (D. Mass., filed Dec. 3, 2004).

By decision served on February 24, 2005 (February 2005 Decision), we dismissed BM/ST's complaint and petition for a declaratory order. We explained that this dispute is not within the Board's primary jurisdiction because the dispute is founded primarily on claims of breach of contract and tortious actions. We reasoned that the dispute involves neither the interpretation of core operational provisions of the TO nor service questions, but is, rather, a dispute over liability for a derailment, an area over which the Board has little expertise and limited jurisdiction. For this reason, we concluded that the court is the appropriate forum to resolve the parties' dispute.

---

[1] Section 7.1 of the TO provides (6 I.C.C.2d at 564):

7.1 Save as herein otherwise provided, each party hereto shall be responsible for and shall assume all loss, damage or injury (including injury resulting in death) to persons or property, including the cost of removing any trackage, repairing trackage and correcting environmental damage, which may be caused by its engines, cars, trains or other on-track equipment (including damage by fire originating therefrom) whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such loss, damage or injury, and whether or not a third party may have caused or contributed to such loss, damage or injury, and for all loss or damage to its engines, cars, trains or other on-track equipment while on said trackage from any cause whatsoever, except in the case of collision, in which event the provisions of Section 7.2 shall apply.

STB Finance Docket No. 34612

On March 10, 2005, BM/ST filed a petition for reconsideration of that decision. Complainants do not dispute our finding that this controversy predominantly involves claims of breach of contract and tortious actions arising from a train derailment and that the court is better suited to resolving such fact-bound issues. But complainants argue that the Board should, at a minimum, decide whether Section 7.1 of the TO was intended by the ICC to absolve the track owner (now NEC) from liability claims that are based on gross negligence or willful misconduct. On March 30, 2005, NEC filed a reply in opposition to BM/ST's petition for reconsideration.

DISCUSSION AND CONCLUSIONS

In the February 2005 Decision, we mistakenly assumed that Section 7.1 was not in dispute when the TO was adopted and concluded that the Board's expertise was not required to determine the intent of the parties regarding Section 7.1. We will grant reconsideration to the extent required to provide guidance on the proper interpretation of the provision that the agency imposed.

As noted by complainants, the Board has expressly declined to impose a contested provision that would excuse a carrier from liability resulting from its own gross negligence or willful misconduct, finding such a provision to be contrary to public policy. See National R.R. Passenger Corp. – Applic. – 49 U.S.C. 24308(a), 3 S.T.B. 157, 162 (1998). The concerns expressed by the Board in that case apply with equal force here. The statute requires that the Board implement policies that "promote a safe and efficient rail transportation system" and "operate transportation facilities and equipment without detriment to the public health and safety." 49 U.S.C. 10101(3), (8). To construe TO Section 7.1 as excusing gross negligence and willful misconduct would not encourage safe operations, and it would contravene well-established precedent that disfavors such indemnification provisions.[2] Thus, we do not believe that it was the intent of the agency in imposing TO Section 7.1 to allow the landlord carrier to escape liability for maintenance failures that are the result of its own gross negligence or willful misconduct, and we do not construe TO Section 7.1 in that manner.

The remaining issues involved in the complaint are fact-bound, and they predominantly involve claims of breach of contract and tort. For the reasons discussed in the February 2005 Decision, we will continue to defer to the courts the resolution of the remaining issues.

It is ordered:

1. Complainants' petition for reconsideration is granted to the extent discussed above.

---

[2] See National R.R. Passenger Corp. v. Consolidated Rail Corp., 698 F. Supp. 951, 971-72 (D.D.C. 1988), rev'd on other grounds, 892 F.2d 1066 (D.C. Cir. 1990); see also Harris v. Howard University, Inc., 28 F. Supp. 2d 1, 14 (D.D.C. 1988).

STB Finance Docket No. 34612

2. This decision is effective on its date of service.

By the Board, Chairman Buttrey, and Commissioner Mulvey.

Vernon A. Williams
Secretary