UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CENTRAL RAILROAD, INC.,<br>Plaintiff,<br><br>v.<br><br>SPRINGFIELD TERMINAL RAILWAY<br>COMPANY and BOSTON AND MAINE<br>CORPORATION,<br>Defendants | Civil Action No.:   04-30235-MAP |

## PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' MOTION TO COMPEL DISCOVERY AND CROSS MOTION TO COMPEL DISCOVERY

The plaintiff, the New England Central Railroad, Inc. ("NECR"), hereby opposes the defendants' *Motion to Compel Discovery* and cross moves to compel the defendants' to provide answers to its interrogatories and responses to its requests for the production of documents. As grounds therefore, the NECR states that it has attached hereto as Exhibit "A" the *New England Central Railroad, Inc.'s Answers and Responses to the Interrogatories Propounded by the Defendants* and as Exhibit "B" the *Responses of the Plaintiff, New England Central Railroad, Inc., to Requests for Production of Documents by Defendant*; the defendants have <u>failed</u> to answer or respond to the written discovery propounded by the NECR on July 20, 2006; the NECR provided to the defendants 1184 pages of Bate stamped records, documents, reports, correspondence and the like in its *Initial Automatic Disclosure* on July 24, 2006, which contained nearly all of the information which the defendants sought by means of their written discovery requests; and the defendants failed to act in good faith to confer or attempt to confer with counsel for the NECR prior to filing the within motion.

**A.    THE ANSWERS AND RESPONSES TO THE WRITTEN DISCOVERY HAS BEEN MADE THIS DATE:**

The NECR has this date provided to the defendants its *Answers and Responses to the Interrogatories Propounded by the Defendants* and *Responses to Requests for Production of Documents by Defendant*. Due to the nature of the litigation and the shear volume of records and documents generated, created, or received as a result of the derailment caused by the defendants' crew's operation of their train, it has taken a considerable amount of time assembling and reviewing same, as well as their applicability to the various inquiries and requests propounded by the defendants. The NECR has withheld certain emails which are protected from discovery as work product prepared in anticipation of litigation and that are protected by the attorney/client privilege and therefore are not subject to production. The NECR is in the process of drafting a *Privileged Log* to document the emails and will provide same to the defendants.

Also, the NECR is still investigating the inquiries and requests concerning insurance coverage and benefits, therefore supplementation of the discovery responses will, if necessary, occur seasonably as soon as the review is complete. That being said, it is clear that whether or not there exists any insurance coverage concerning the derailment will not reasonably lead to the discovery of admissible evidence as to the happening or occurrence of the derailment caused by the defendants' crew, train, and/or equipment.

Further, many of the interrogatories and requests for the production of documents were not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the

2

derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

## B.    THE DEFENDANTS HAVE FAILED TO ANSWER OR RESPOND TO THE WRITTEN DISCOVERY PROPOUNDED BY THE NECR:

On July 20, 2006, the NECR propounded upon each defendant separate sets of interrogatories and a joint request for the production of documents and records. Attached hereto please find the *Plaintiff New England Central Railroad, Inc.'s Interrogatories to the Defendant, Springfield Terminal Railway Company* as Exhibit "C;" *Plaintiff New England Central Railroad, Inc.'s Interrogatories to the Defendant, Boston and Maine Corporation* as Exhibit "D;" and *Plaintiff New England Central Railroad, Inc.'s Requests for the Production of Documents to the Defendants* as Exhibit "E." The defendants have failed to answer or respond to the written discovery propounded by the NECR and they have failed to seek or obtain an extension of time to provide same. The answers and responses were due to the NECR on August 19, 2006, and are therefore are, as the date of this filing, 44 days past due. The defendants come before this court with unclean hands seeking an order to compel in such circumstances and therefore should not be granted the relief which they seek.

## C.    THE NECR PROVIDED TO THE DEFENDANTS 1184 PAGES OF BATE STAMPED RECORDS IN ITS *INTIAL AUTOMATIC DISCLOSURE*:

On July 24, 2006, the NECR provided to the defendants 1184 pages of Bate stamped records, documents, reports, correspondence as the documents described in its *Initial Automatic*

3

*Disclosure* which contained nearly all of the information which the defendants sought by means of their written discovery requests. Kindly find attached hereto as Exhibit "F" a list of the documents and records which were produced by the NECR to the defendants. The NECR has been diligent, conscientious, and thorough in providing to the defendants information and documentation which is relevant, and not privileged, to this litigation.

**D.    THE DEFENDANTS FAILED TO ACT IN GOOD FAITH TO CONFER OR ATTEMPT TO CONFER WITH COUNSEL FOR THE NECR PRIOR TO FILING THE WITHIN MOTION:**

The defendants failed to act in good faith to confer with the NECR prior to filing the within motion. The defendants did make contact as set forth in their memorandum, but they failed to set forth that counsel for the NECR telephoned back and left voicemail messages in response to each contact from August 30, 2006, forward. Further, that counsel for the NECR had left a message shortly after September 1, 2006, to which the defendants never responded, but, instead, the defendants chose to let time expire and then they filed the within motion.

The parties were exchanging voicemail messages from August 30th until the filing of the *Motion*. While this was ongoing, counsel for the NECR was diligently drafting answers and responses to the written discovery. There never was a conversation between counsel concerning the within motion, therefore there was never the required conference. Additionally, the efforts to conduct the required conference were minimal or token at best and, therefore, never rose to the level of "good faith" as required.

The defendants' request for relief should be denied as they only made a half-hearted effort to conduct the required conference.

4

E.    **THE NECR CROSS MOVES FOR THE DEFENDANTS TO ANSWER
AND RESPOND TO ITS INTERROGATORIES AND REQUESTS:**

The defendants come before this court without providing the NECR with answers to

*Plaintiff New England Central Railroad, Inc.'s Interrogatories to the Defendant, Springfield*

*Terminal Railway Company*; *Plaintiff New England Central Railroad, Inc.'s Interrogatories to*

*the Defendant, Boston and Maine Corporation*; or responses to the *Plaintiff New England*

*Central Railroad, Inc.'s Requests for the Production of Documents to the Defendants* all of

which were propounded on July 20, 2006. The answers and responses were due 44 days ago and

clearly at the time that the defendants' contemplated and then filed their *Motion*.

In light of the fact that the NECR has substantially complied with its discovery

obligations with its *Initial Required Disclosures*, as well as the answers and responses provided

to date, it respectfully requests that this Honorable Court order that the defendants provide

answers and responses forthwith to said written discovery.

WHEREFORE, the NECR respectfully requests that the defendants' *Motion* be denied,

for the reasons set forth above, and that this Honorable Court compel the defendants to provide

answers and responses to the NECR's written discovery which is not 44 days overdue.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the attached pleading was sent by
1st Class U.S. Mail - Postage Prepaid to Hand Facsimile Electronic Mail to all counsel of record.

Signed under the pains and penalties of perjury.

*Richard C. ferlon*
Dated: **10-2-06**

/s/ Richard A. Davidson, Jr.
Michael B. Flynn                          BBO# 559023
Richard A. Davidson, Jr.              BBO# 552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:  October 2, 2006

5

# EXHIBIT

## "A"

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants

Civil Action No.:   04-30235-MAP

## NEW ENGLAND CENTRAL RAILROAD, INC.'S ANSWERS AND RESPONSES TO THE INTERROGATORIES PROPOUNED BY THE DEFENDANTS

The New England Central Railroad, Inc. ("NECR") hereby answers and responds to the

*Defendants' First Set of Interrogatories*, as follows:

### GENERAL OBJECTIONS

The NECR objects to the defendants' *Definition and Instruction* section insofar as said

definitions and instructions exceed the scope of the *Uniform Definitions in Discovery Requests*

set forth in L.R. 26.5; that they seek and/or request information that is beyond the scope of

discovery as set forth in Fed. R. Civ. P. 26 and 33, and L.R. 33.1; that they are overly broad in

both time and scope; that they are vague and unduly burdensome; and that they seek, *inter alia*,

information which is privileged and beyond the scope of discovery as protected by the attorney-

client privilege and work product privilege doctrines.

### INTERROGATORY NO. 1:

State the basis of the claim that Defendants failed to obey an order of the Surface Transportation

Board, in violation of 49 U.S.C. § 11704(a), as alleged in Counts I and II of the Complaint.

**ANSWER NO. 1:**

Objection. The NECR objects to this interrogatory on the grounds that it seeks
information which is protected from discovery by the attorney-client privilege, on the grounds
that it seeks information which is work-product prepared in anticipation of litigation and on the
grounds that it is overly broad and unduly burdensome, and that it calls on the NECR, its
employees and/or representatives to make statements and/or conclusions on issues of law which
they may not be qualified to render.

Without waiving these objections, the NECR answers as follows:  the defendants have
failed to pay damages that the NECR sustained as a result of  the July 3, 2004, derailment of the
defendants' southbound train on the NECR's *Connecticut River Line* despite the ICC-imposed
obligations as set forth in the modified *Trackage Rights Agreement* ("Agreement"), at § 7.1. The
defendants were ordered by the ICC to be responsible for and to assume all loss, damage or
injury to persons or property, including the cost of  removing any trackage, repairing trackage
and correcting environmental damage, which was caused by the defendants' engines, cars, trains
or other on-track equipment, whether or not the condition or arrangement of the trackage
contributes in any manner, or to any extent, to such loss, damage or injury, as well as all losses
or damage to the defendants' engines, cars, trains or other on-track equipment while on the
*Connecticut River Line*.  According to § 9.7 of the *Agreement*, any reference to "the trains,
locomotives, cars or equipment of, or in the account of, one of the parties hereto" means "the
trains, locomotives, cars and equipment in the possession of or operated by one of the parties and
includes such trains, locomotives, cars and equipment which are owned by, leased to, or in the
account of such party."

On July 3, 2004, employees of the B&M and/or STRC, J.C. Scappace, Jr. and A. Peter

2

Kari, were operating a B&M and/or STRC freight train southbound on a section of the NECR's main line which is subject to the *Agreement*. The train consisted of two (2) locomotives pulling nineteen (19) freight cars behind them, all of which were either owned by, or in the account, of the B&M and/or STRC.

At approximately 6:40 AM, the trailing wheels of the train's sixth freight car (CNIS 413224) came off the tracks as it approached milepost 10.18, but the car remained upright. The point of lift (the point at which the car's wheels came off the track and became first became derailed) was approximately five (5) feet north of a farm crossing which is located at approximately mile post 10.18. The point of lift was evidenced by a flange mark on the easternmost rail. The point of drop (the point at which the wheels dropped down onto the ground) was approximately twenty-four (24) feet south of the point of lift, at approximately the center line of the crossing. The point of drop was evidenced by a gouge mark.

The defendants' crew failed to observe the derailed railcar, in violation of the applicable *General Code of Operating Rules*, Rules 6.29.2 ("Train Inspections By Crew Members") and 6.21 ("Precautions Against Unusual Conditions"), continued to operate the train and dragged the derailed car for approximately five (5) miles. All the while the derailed railcar was causing extensive damage to the NECR's tracks, railbed, track structure and related property including, but not limited to, railroad ties, an open deck bridge and three crossings. Cuts in and related damage to the ties indicated that the derailed wheels were, in some locations, as far as two (2) feet from the rails. The derailed wheels finally struck a piece of track structure known as a "frog" which was located approximately at mile post 5.58 (the north switch of the Hartland, VT siding track). The car's hitting the frog caused it to become completely derailed and flipped it onto its side. As the freight car flipped, it caused the following six (6) freight cars to also derail.

3

The derailment of these cars caused further extensive damage to the NECR's trackage, railbed, track structure and related property in the area of the derailment. Due to the damage caused by the derailed wheels of the car and subsequent derailment, the NECR's main line track was shut down for several days while clean up procedures and repairs from south of mile post 10.18 to mile post 5.58 were being performed.

The NECR's track was thereafter reopened for service under a speed restriction for approximately thirty (30) days while the NECR worked to repair and restore the damaged trackage and related property. The NECR was party to an agreement with AMTRAK which permitted AMTRAK, *inter alia*, to operate passenger service over the Connecticut River Line. The agreement between the NECR and AMTRAK also contained financial incentives to NECR relating to AMTRAK's run-time performance over the Connecticut River Line. AMTRAK was forced to bus its passengers around the damaged track for the period of time that the Connecticut River Line was completely shut down. The NECR lost revenue that it otherwise would have received from AMTRAK while its track was completely shut down. While the speed restriction was in place, AMTRAK's "run time" over the CRL was increased by about thirty (30) minutes which negatively impacted AMTRAK's run-time performance. As a result, the NECR was unable to meet its run-time incentives and suffered the loss of additional revenue it otherwise would have received. The NECR also incurred additional costs, expenses and damages as a result of its track being shut down.

The B&M and/or STRC is responsible for all of the NECR's losses, damages and injuries incurred and/or suffered as a result of the derailment as the cars and locomotives were in the defendants' possession and being operated by the defendants at the time of the derailment. The NECR has invoked the provisions of § 7.1 and demanded that the B&M and/or STRC pay the

4

losses and damages which resulted from the derailment, but the defendants have refused to remit payment denying that they were responsible for the damages caused by their train's derailment. Despite the NECR's demands for payment, both the B&M and the STRC have failed, neglected and/or otherwise refused to pay the NECR's losses and damages. Instead, both the B&M and the STRC filed a *Formal Complaint and Petition for Declaratory Order* with the Surface Transportation Board alleging that the NECR failed to maintain and repair the Connecticut River Line in a Class II condition.

As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 2:**

State the basis of the claim that Defendants failed to obey an order of the Surface Transportation Board to pay damages specified under the Agreement, in violation of 49 U.S.C. § 11704(b), as alleged in Counts III and IV of the Complaint.

**ANSWER NO. 2:**

The plaintiff restates and specifically incorporates herein by this reference its objections and answer to Interrogatory No. 1 as if the same has been fully set forth herein. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 3:**

State the basis of the breach of contract claim alleged in Counts V and VIII of the Complaint.

**ANSWER NO. 3:**

The plaintiff restates and specifically incorporates herein by this reference its objections

and answer to Interrogatory No. 1 as if the same has been fully set forth herein. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

## INTERROGATORY NO. 4:

State the basis of the negligence claim alleged in Counts VI and IX of the Complaint.

## ANSWER NO. 4:

The plaintiff restates and specifically incorporates herein by this reference its objections and answer to Interrogatory No. 1 as if the same has been fully set forth herein. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

## INTERROGATORY NO. 5:

State the basis of the gross negligence and willful, wanton and reckless conduct claims alleged in Counts VI and X of the Complaint.

## ANSWER NO. 5:

The plaintiff restates and specifically incorporates herein by this reference its objections and answer to Interrogatory No. 1 as if the same has been fully set forth herein. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

## INTERROGATORY NO. 6:

State the basis for the debarment of STRC employees, J.C. Scappace, Jr. and A. Peter Kari, from operating over the Line, and identify all acts or omissions of such individuals concerning the Derailment.

6

**ANSWER NO. 6:**

The plaintiff restates and specifically incorporates herein by this reference its objections and answer to Interrogatory No. 1 as if the same has been fully set forth herein. Mr. Scarpacce and Mr. Kari were debarred due to their violation of *General Code of Operating Rules* 6.21 and 6.29. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 7:**

Describe with particularity, and state every fact concerning, how the Derailment occurred.

**ANSWER NO. 7:**

The plaintiff restates and specifically incorporates herein by this reference its objections and answer to Interrogatory No. 1 as if the same has been fully set forth herein. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 8:**

Identify and describe all written and oral policies you possess that concern maintenance and upkeep of the Line, including the Derailment Area.

**ANSWER NO. 8:**

Objection. The NECR objects to this interrogatory on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome. The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint

7

"whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

Without waiving these objections, the plaintiff answers as follows: the plaintiff's track inspection and maintenance policies are set out in a document entitled *RailAmerica Engineering Standards and Policies* (a copy of which has been produced). In addition, various *Bulletin Orders* which are issued from time to time (copies of a number of which have been produced) contain information pertaining to track conditions. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 9:**

Identify each of your agents or employees who are designated as qualified to supervise certain renewals and inspect track, per the requirements of 49 C.F.R. § 213.7, and had any responsibility concerning the maintenance and inspection of the Line, including the Derailment Area, between January 1, 2003 and the date of NECR's response to this interrogatory.

**ANSWER NO. 9:**

Objection. The NECR objects to this interrogatory on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome. The NECR objects to this interrogatory on the grounds that it seeks information which is protected from discovery by the attorney-client privilege, on the grounds that it seeks information which is work-product prepared in anticipation

of litigation and on the grounds that it calls on the NECR, its employees and/or representatives to make statements and/or conclusions on issues of law which they may not be qualified to render. The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

Without waiving these objections, the plaintiff answers as follows: Richard R. Boucher was the track supervisor. Rick T. Boucher (track inspector), and Ronald W. Boucher (track foreman) were also involved in track maintenance and inspection in the area of the derailment. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 10:**

State whether any complaints and reports concerning the condition of the Line, including the Derailment Area, were communicated to you, between January 1, 2002 and the date of NECR's response to this interrogatory, by any person, including shippers, rail carriers, other persons, and your own employees or agents. If the answer is in the affirmative, provide:

(i)     the name, address, and job classification of the person to whom the complaint or

        report was communicated;

(ii)    the name, address, and job classification of the person who communicated the

        complaint or report;

(iii)   a description of the nature of the complaint or report;

(iv)    the date of the complaint or report; and

(v)     the identity of any documents relating to said complaint or report.

**ANSWER NO. 10:**

Objection. The NECR objects to this interrogatory on the grounds that it is overly broad

in both time and scope, vague, and unduly burdensome. The NECR objects to this interrogatory

on the grounds that it seeks information which is protected from discovery by the attorney-client

privilege, on the grounds that it seeks information which is work-product prepared in anticipation

of litigation and on the grounds that it calls on the NECR, its employees and/or representatives to

make statements and/or conclusions on issues of law which they may not be qualified to render.

The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated

to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the

*Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in

its complaint "whether or not the condition or arrangement of the trackage contributes in any

manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

10

the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

## INTERROGATORY NO. 11:

Identify each of your agents or employees who had any role in investigating or analyzing the Derailment in the seventy-two hours following the Derailment's occurrence.

## ANSWER NO. 11:

Objection.  The NECR objects to this interrogatory on the grounds that it seeks information which is protected from discovery by the attorney-client privilege and on the grounds that it seeks information which is work-product prepared in anticipation of litigation. The NECR objects to this interrogatory on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome.  Without waiving these objections, the plaintiff answers as follows:  Michael Lawyer, Charlie Moore, Steve Larro, Richard T. Boucher, Steve Scott, Vicky Lagrow and the plaintiff's attorneys.  The plaintiff further refers the defendants to the documents which the plaintiff has produced with its initial *Automatic Disclosure* and responses to the defendants' document requests.  As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

## INTERROGATORY NO. 12:

Please identify the author or authors of each document produced in response to the Defendants' First Request for Production of Documents.

## ANSWER NO. 12:

Objection.  The NECR objects to this interrogatory on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome.

11

**INTERROGATORY NO. 13:**

Identify and describe all oral and written reports and documents, whether created before or after the Derailment, created by any person, including you and FRA, concerning the condition of the Line, including the Derailment Area, during the two years preceding the Derailment or concerning potential causes of the Derailment.

**ANSWER NO. 13:**

Objection. The NECR objects to this interrogatory on the grounds that it seeks information which is protected from discovery by the attorney-client privilege, on the grounds that it seeks information which is work-product prepared in anticipation of litigation and on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome. The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. The plaintiff further objects on the grounds that it cannot answer for the FRA.

Without waiving these objections, the plaintiff answers as follows: any and all non-objectionable documents responsive to this interrogatory which have been discovered, after

12

diligent effort and inquiry, to be within the plaintiff's possession, custody and control, have been produced to the defendants with the plaintiff's initial *Automatic Disclosure* and responses to the defendants' document requests and the plaintiff refers the defendant to these documents for information responsive to this interrogatory.

As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 14:**

Describe all repair and cleanup procedures that were performed on the Line, including the Derailment Area, between July 2, 2004 and August 15, 2004, and identify the date of each such procedure and each person designated as qualified to supervise certain renewals and inspect track pursuant to 49 C.F.R. § 213.7 who performed each such procedure.

**ANSWER NO. 14:**

Objection. The NECR objects to this interrogatory on the grounds that it is overly broad and unduly burdensome. The NECR also objects to this interrogatory on the grounds that it calls on the NECR, its employees and/or representatives to make statements and/or conclusions on issues of law which they may not be qualified to render.

Without waiving these objections, the plaintiff answers as follows: non-objectionable documents responsive to this interrogatory which have been discovered, after diligent effort and inquiry, to be within the plaintiff's possession, custody and control, have been produced to the defendants with the plaintiff's initial *Automatic Disclosure* and responses to the defendants' document requests and the plaintiff refers the defendant to these documents for information responsive to this interrogatory. In addition, the plaintiff states that through the employment of its own internal forces and equipment as well as the use of outside private contractors and their

13

equipment, the damaged portions of the plaintiff's track, roadbed and related structures, including its rails and track bed, were removed and disposed of.   The plaintiff also used its own internal forces and equipment to temporarily repair its damaged trackage, roadbed and related structures in order to allow limited train movements associated with the derailment clean-up efforts. The plaintiff retained private contractors to perform the final, permanent repairs that were required to restore the track to its proper condition.  This process took approximately three (3) months and included the disposal and replacement of railroad ties, the repair of grade crossings and the repair of a bridge.  The plaintiff incurred costs and expenses related to the payment and procurement of the services necessary to repair its property, including the payment of its own employees, the costs associated with the use of its own equipment, the reimbursement of various necessary and related expenses and the payment of the private contractors that were retained.

As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 15:**

State whether any other derailments, accidents, property damage or incidents have occurred between milepost 9 and milepost 14.3 between January 1, 1996 and the date of your response to this interrogatory and, if so, state the date and location of each such incident; identify any other persons who were involved; describe the incident and any damages you incurred; identify any insurance company to which a claim was submitted on your behalf; and provide the court, caption, and case number of any civil actions that were filed concerning the incident.

**ANSWER NO. 15:**

Objection.  The NECR objects to this interrogatory on the grounds that it is overly broad

14

in both time and scope, vague, and unduly burdensome. The plaintiff also objects to this

interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of

admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights*

*Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint

"whether or not the condition or arrangement of the trackage contributes in any manner or to any

extent to such" losses and damages; (2) the derailment occurred before the first derailed car had

reached any section of track which is alleged to have not been in Class II condition; (3) any

theory of defense or liability regarding the condition of the track is preempted by federal law and

the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b)

and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area

of the derailment complied with the requirements of the *Trackage Rights Agreement*.

**INTERROGATORY NO. 16:**

Identify the nature and amount of revenue allegedly lost by NECR as a result of

Defendants' actions, as more particularly alleged in Paragraphs 32 and 33 of the Complaint.

**ANSWER NO. 16:**

The plaintiff restates and specifically incorporates herein by this reference its objections

and answer to Interrogatory No. 14 as if the same has been fully set forth herein. In addition, the

plaintiff states that it incurred other damages including, but not limited to: loss of revenue

caused by the plaintiff's inability to meet on-time incentives with AMTRAK (estimated to total

approximately $175,000.00) and car hire charges. The amounts of the plaintiff's damages are

identified in the documents referred to in Answer No. 14. In addition to the documents

identified in Answer No. 14, the plaintiff states that supporting documentation had been sent to

the defendants prior to the filing of the complaint in this case. Further, the plaintiff is in the

process of locating its agreement with AMTRAK and documents pertaining to tie disposal costs, and will produce them in a timely fashion prior to trial.

As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 17:**

Identify the damages sought by NECR in this action and state the basis of the amount of damages claimed.

**ANSWER NO. 17:**

The plaintiff restates and specifically incorporates herein by this reference its objections and answer to Interrogatory No. 14 and No. 16 as if the same has been fully set forth herein. As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

**INTERROGATORY NO. 18:**

Identify any insurance payments that you have sought or received with respect to the Derailment.

**ANSWER NO. 18:**

The NECR is investigating the existence of any such payments and will supplement this response in a timely fashion prior to trial, if applicable.

**INTERROGATORY NO. 19:**

Identify each person whom you expect to call as an expert witness at the trial of this action. As to each person so identified, provide:

    (i)      the subject matter on which the expert is expected to testify;

    (ii)     the substance of the facts and opinions to which he is expected to testify;

     (iii)    a summary of the grounds for each opinion; and

     (iv)    the identity of all factual information supplied to the expert.

## ANSWER NO. 19:

Objection. The NECR objects to this interrogatory to the extent that it seeks information

which is beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(4)(B). Without

waiving this objection, the NECR further states that neither it nor its attorneys have determined

the identity of experts who will be called at trial and that it will comply with the *Scheduling*

*Order* entered by the Court, pursuant to Fed. R. Civ. P. 16(b) and L. R. 16.1, at the *Scheduling*

*Conference.*

Michael Lawyer deposes and says that: he is a Roadmaster for the plaintiff NECR and
that he signs these answers for and on behalf of NECR and is authorized to do so; that the
matters stated in the foregoing answers are not all within the personal knowledge of the deponent
and that the deponent is informed that there is no officer of NECR who has personal knowledge
of all such matters; that such facts as stated in said answers which are not within the personal
knowledge of the deponent have been assembled by authorized employees with personal
knowledge or agents of the NECR and he is informed and believes that the facts stated in and
answers are true and so states under the pains and penalties of perjury this 2ND day of October,
2006. The plaintiff reserves the right to supplement or amend its answers and responses to each
of the defendants' interrogatories up to and until the time of trial.

Michael Lawyer, ROADMASTER
New England Central Railroad, Inc

As to the objections:

Michael B. Flynn     BBO# 559023
Richard A. Davidson, Jr.    BBO# 552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the attached pleading was sent by
1st Class U.S. Mail - Postage Prepaid/In-Hand/Facsimile/Electronic Mail to all counsel of record.

Signed under the pains and penalties of perjury.

Dated: 10/2/06

17

# EXHIBIT
# "B"

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants

C.A. No.:  04-30235-MAP

## RESPONSES OF THE PLAINTIFF, NEW ENGLAND CENTRAL RAILROAD, INC., TO REQUESTS FOR PRODUCTION OF DOCUMENTS BY DEFENDANTS

The plaintiff, New England Central Railroad, Inc. ("NECR"), responds to the defendants'

*Requests for the Production of Documents,* as follows:

### GENERAL OBJECTIONS

The NECR objects to the defendants' *Definition and Instruction* section insofar as said

definitions and instructions exceed the scope of the *Uniform Definitions in Discovery Requests*

set forth in L.R. 26.5; that they seek and/or request information that is beyond the scope of

discovery as set forth in Fed. R. Civ. P. 26 and 33, and L.R. 33.1; they are overly broad in both

time and scope, vague, and unduly burdensome; and seek, *inter alia,* information which is

privileged and beyond the scope of discovery as protected by the attorney-client privilege and

work product privilege doctrines.  Without waiving the foregoing objections, the NECR responds

to the defendants' requests, as follows:

**REQUEST NO. 1:**

Please produce any and all documents identified in NECR's Initial Disclosures pursuant to Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure.

**RESPONSE NO. 1:**

Documents responsive to this request were previously provided to the defendants on July 24, 2006, and Bate stamped 000000 to 001183. Additionally, please find a copy of the *General Code of Operating Rules, 4th Edition* attached hereto as *Response No. 1*. Further, the defendants have previously instructed the NECR not to produce, due to its size and volume, a copy of the *Official Railway Equipment Register* which the NECR's counsel has in his office and which is available for inspection and copying at anytime.

**REQUEST NO. 2:**

Please produce any and all documents concerning the frequency of inspections, persons charged with conducting inspections, and procedures followed when conducting inspections, of the Line, including the Derailment Area, between January 1, 2002 and the date of NECR's response to this request for production.

**RESPONSE NO. 2:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

the track in the area of the derailment complied with the requirements of the *Trackage Rights*

*Agreement.* Without waiving these objections, the NECR refers the defendants to the documents

which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure.*

## REQUEST NO. 3:

Please produce any and all documents concerning inspections of the Line, including the

Derailment Area, conducted by you or on your behalf, that occurred between January 1, 2002

and the date of NECR's response to this request for production.

## RESPONSE NO. 3:

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the

discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage*

*Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its

complaint "whether or not the condition or arrangement of the trackage contributes in any

manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

the track in the area of the derailment complied with the requirements of the *Trackage Rights*

*Agreement.* Without waiving these objections, the NECR refers the defendants to the documents

which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure.*

**REQUEST NO. 4:**

Please produce any and all documents concerning inspections of the Line, including the

Derailment Area, conducted by FRA, that occurred between January 1, 2002 and the date of

NECR's response to this request for production.

**RESPONSE NO. 4:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome; and said documents are equally available to the

defendants from the FRA; and on the grounds that it is not reasonably calculated to lead to the

discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage*

*Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its

complaint "whether or not the condition or arrangement of the trackage contributes in any

manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

the track in the area of the derailment complied with the requirements of the *Trackage Rights*

*Agreement.* Without waiving these objections, the NECR refers the defendants to the documents

which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure.*

**REQUEST NO. 5:**

Please produce any and all documents concerning maintenance and capital work, persons

charged with performing maintenance and capital work, and procedures followed when

conducting maintenance and capital work, on the Line, including the Derailment Area, between

January 1, 2002 and the date of NECR's response to this request for production.

**RESPONSE NO. 5:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome, and it is not reasonably calculated to lead to the

discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage*

*Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its

complaint "whether or not the condition or arrangement of the trackage contributes in any

manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

the track in the area of the derailment complied with the requirements of the *Trackage Rights*

*Agreement*. Without waiving these objections, the NECR refers the defendants to the documents

which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure*.

**REQUEST NO. 6:**

Please produce any and all maintenance contracts, management contracts or agreements

concerning the management, administration, maintenance, capital work, and upkeep of the Line,

including the Derailment Area, from January 1, 2002 to the date of NECR's response to this

request for production.

**RESPONSE NO. 6:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

**REQUEST NO. 7:**

Please produce any and all documents concerning work, including maintenance, capital work, emergency or other work, performed on the Line, including the Derailment Area, by you or on your behalf, between January 1, 2002 and the date of NECR's response to this request for production.

**RESPONSE NO. 7:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. Without waiving these objections, the NECR refers the defendants to the documents which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure*.

## REQUEST NO. 8:

Please produce any and all documents, created or in force between January 1, 2002 and the date of NECR's response to this request for production, concerning track condition, and track safety generally, for the Line, including the Derailment Area.

## RESPONSE NO. 8:

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome; it seeks information which is protected from discovery as work product prepared in anticipation of litigation and that which is protected by the attorney/client privilege; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b)

7

and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area

of the derailment complied with the requirements of the *Trackage Rights Agreement.* Without

waiving these objections, the NECR refers the defendants to the documents which it provided on

July 24, 2006, as part of the NECR's *Initial Required Disclosure.*

**REQUEST NO. 9:**

Please produce any and all records, communications, and documents concerning complaints and

reports communicated to you, between January 1, 2002 and the date of NECR's response to this

request for production, by any person, including shippers, rail carriers, and your own employees

or agents, concerning the condition of the Line, including the Derailment Area.

**RESPONSE NO. 9:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the

discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage*

*Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its

complaint "whether or not the condition or arrangement of the trackage contributes in any

manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

the track in the area of the derailment complied with the requirements of the *Trackage Rights*

*Agreement.* Further, it seeks information which is protected from discovery as work product

prepared in anticipation of litigation and that which is protected by the attorney/client privilege.

The NECR is preparing a privileged log of the documents and records responsive to this request which it will make available to the defendants.

**REQUEST NO. 10:**

Please produce any and all communications and documents concerning the number and frequency of NECR owned or operated trains and vehicles that traveled over the Line, including the Derailment Area, between January 1, 2004 and August 1, 2004.

**RESPONSE NO. 10:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. Further, it seeks information which is protected from discovery as work product prepared in anticipation of litigation and that which is protected by the attorney/client privilege. The NECR is preparing a privileged log of the documents and records responsive to this request which it will make available to the defendants.

**REQUEST NO. 11:**

Please produce any and all communications and documents concerning derailments, accidents, property damage, or incidents, occurring between January 1, 1996 and the date of NECR's response to this request for production on the Line between milepost 0 and milepost 14.3.

**RESPONSE NO. 11:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement.* The request also seeks information which is protected from discovery as work product prepared in anticipation of litigation and that which is protected by the attorney/client privilege. The NECR is preparing a privileged log of the documents and records responsive to this request which it will make available to the defendants. Without waiving these objections, the NECR refers the defendants to the documents which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure.*

**REQUEST NO. 12:**

Please produce any and all records, reports, communications, documents, drawings, or other tangible works produced by any person, including you, your agents or employees, and the FRA, concerning the condition of the Line, including the Derailment Area, in the two years preceding the Derailment or concerning potential causes of the Derailment.

**RESPONSE NO. 12:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome; it seeks information which is protected from discovery as work product prepared in anticipation of litigation and that which is protected by the attorney/client privilege; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. The NECR is preparing a privileged log of the documents and records responsive to this request which it will make available to the defendants. Without waiving these objections, the NECR refers the defendants to the documents which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure*.

11

**REQUEST NO. 13:**

Please produce any and all communications, documents and other evidence concerning, or

forming the basis for, NECR's decision to bar STRC employees J.C. Scappace, Jr. and A. Peter

Kari from operating over the Line, as more particularly described in Paragraph 23 of Defendants'

Answer and Counterclaims.

**RESPONSE NO. 13:**

Objection.  The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome and it seeks information which is protected from

discovery as work product prepared in anticipation of litigation and that which is protected by

the attorney/client privilege.  Without waiving these objections, the NECR refers the defendants

to the documents which it provided on July 24, 2006, as part of the NECR's *Initial Required*

*Disclosure.*

**REQUEST NO. 14:**

Please produce any and all photographs, images, and other depictions concerning the derailment,

including all photographs, images, or depictions of the Line, Derailment Area, instrumentalities,

and persons involved in the Derailment.

**RESPONSE NO. 14:**

Documents responsive to this request were provided to the defendants on July 24, 2006, as part

of its *Initial Required Disclosure.*

**REQUEST NO. 15:**

Please produce any and all communications and documents concerning any repair and cleanup

procedures performed on the Line, including the Derailment Area following the Derailment.

12

**RESPONSE NO. 15:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope, vague and unduly burdensome, it seeks information which is protected from discovery as work product prepared in anticipation of litigation and that which is protected by the attorney/client privilege; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. The NECR is preparing a privileged log of the documents and records responsive to this request which it will make available to the defendants. Without waiving these objections, the NECR refers the defendants to the documents responsive to this request were provided to them on July 24, 2006, as part of its *Initial Required Disclosure*.

**REQUEST NO. 16:**

Please produce any and all documents concerning the damages claimed by NECR in this action.

**RESPONSE NO. 16:**

Documents responsive to this request were provided to the defendants on July 24, 2006, as part of its *Initial Required Disclosure*.

**REQUEST NO. 17:**

Please produce all documents concerning the National Railroad Passenger Corporation's

("Amtrak's") authorization to operate over the NECR owned Connecticut River Line at the time

of the Derailment.

**RESPONSE NO. 17:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

and scope, vague and unduly burdensome; and it is not reasonably calculated to lead to the

discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage*

*Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its

complaint "whether or not the condition or arrangement of the trackage contributes in any

manner or to any extent to such" losses and damages; (2) the derailment occurred before the first

derailed car had reached any section of track which is alleged to have not been in Class II

condition; (3) any theory of defense or liability regarding the condition of the track is preempted

by federal law and the regulations concerning track conditions, including, but not limited to 49

C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of

the track in the area of the derailment complied with the requirements of the *Trackage Rights*

*Agreement*.

**REQUEST NO. 18:**

Please produce any and all communications and documents concerning, and expressing the basis

for, the temporary speed restriction, approximately thirty days in duration, alleged in Paragraph

28 of the Complaint, placed on the Line and Derailment Area following the Derailment.

**RESPONSE NO. 18:**

Objection. The NECR objects to this request on the grounds that it is overly broad in both time

14

and scope and vague; it seeks information which is protected from discovery as work product prepared in anticipation of litigation and that which is protected by the attorney/client privilege; and it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. Without waiving these objections, the NECR refers the defendants to the documents which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure*.

## REQUEST NO. 19:

Please produce any and all documents concerning revenue allegedly lost by NECR as a result of the Defendants' actions.

## RESPONSE NO. 19:

Objection. The NECR objects to this request on the grounds that it is overly broad in both time and scope and vague. Without waiving these objections, the NECR refers the defendants to the documents which it provided on July 24, 2006, as part of the NECR's *Initial Required Disclosure*.

**REQUEST NO. 20:**

Please produce any and all documents concerning insurance coverage of, and insurance

payments that you have sought or received with respect to, the Derailment.

**RESPONSE NO. 20:**

The NECR is investigating the existence of documents, if any, which may be responsive to this

request and will seasonably supplement its response accordingly.

**REQUEST NO. 21:**

Please produce any and all documents concerning insurance claims filed on your behalf, and

insurance benefits received, for losses and damages that you contend were incurred as a result of

the Derailment.

**RESPONSE NO. 21:**

See the *Response No. 20* above which incorporated herein by this reference.

**REQUEST NO. 22:**

Please produce any and all documents identified in response to the Defendants' First Set of

Interrogatories propounded to NECR that are not otherwise called for by this request.

**RESPONSE NO. 22:**

Not applicable.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

. CERTIFICATE OF SERVICE
I hereby certify that a true and accurate copy of the attached pleading was sent by
1st Class U.S. Mail - Postage Prepaid/In-Hand/Facsimile/Electronic Mail to all counsel of record.

Signed under the pains and penalties of perjury.

Dated: 10/2/06

/s/ Richard A. Davidson, Jr.

| | |
|---|---|
| Michael B. Flynn | BBO# 559023 |
| Richard A. Davidson, Jr. | BBO# 552988 |

FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:  October 2, 2006

# EXIBIT

## "C"

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants.

Civil Action No.: 04-30235-MAP

## PLAINTIFF, NEW ENGLAND CENTRAL RAILROAD, INC.'S INTERROGATORIES TO THE DEFENDANT, SPRINGFIELD TERMINAL RAILWAY COMPANY

The plaintiff, New England Central Railroad, Inc. ("NECR") hereby propounds, pursuant to Fed. R. Civ. P. 26 and 33 and L.R. 26.5 and 33.1, its first set of interrogatories to the defendant, Springfield Terminal Railway Company ("STCR"). These interrogatories are to be regarded as continuing and you are to provide, by way of supplementary answers thereto, such additional information as may hereafter be obtained by the STRC or any person on its behalf which will augment or otherwise modify any answer or answers given to the following interrogatories:

INTERROGATORY NO. 1

State the name, address and title of the person(s) responding to these interrogatories on behalf of the STRC and indicate the nature and duration of their association with the STRC, whether they are an employee, agent, or corporate officer of the STRC, and describe their duties and responsibilities now and on July 3, 2004.

INTERROGATORY NO. 2

Identify each person who has knowledge of any fact relating in any manner to the events,

transactions, and/or occurrences that are described in any pleading setting forth a claim or defense in this action, and/or any investigation thereof, and for each such person state:

    (a)    name, address and telephone number;

    (b)    describe to the subject matter and facts about which they have knowledge and in what capacity or circumstance they acquired such knowledge;

    (c)    state whether or not the STRC or any of its agents, attorneys, servants or employees know of the existence of, have taken, or have in their possession a statement made by or taken from such a person concerning the derailment on July 3, 2004, any subsequent investigation thereof, and/or this action or its subject matter; and

    (d)    state whether or not you intend to call the person as a witness at trial.

INTERROGATORY NO. 3

Identify each document or tangible thing that the STRC intends to rely on in its defense of this action and in the prosecution of its counterclaim, and for each document indicate if and for what purpose the STRC intends to present the document or tangible thing as an exhibit at trial.

INTERROGATORY NO. 4

State each and every fact on which the STRC relies regarding its allegations that the NECR failed to maintain the *Connecticut River Line* (the "Line") at no less than F.R.A. Class 2 condition.

INTERROGATORY NO. 5

State each and every fact on which the STRC relies regarding its allegations that the NECR failed to properly maintain the *Line*.

INTERROGATORY NO. 6

State each and every fact on which the STRC relies regarding its allegations that the NECR is

2

responsible for the derailment which occurred on July 2, 2004, on the *Line*.

INTERROGATORY NO. 7

State each and every fact on which the STRC relies regarding its allegations that the NECR

violated the *Modified Trackage Rights Agreement*, issued by the Interstate Commerce

Commission on February 6, 1990.

INTERROGATORY NO. 8

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 8 of its

*Counterclaim*.

INTERROGATORY NO. 9

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 12 of

its *Counterclaim*.

INTERROGATORY NO. 10

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 16 of

its *Counterclaim*.

INTERROGATORY NO. 11

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 18 of

its *Counterclaim*.

INTERROGATORY NO. 12

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 19 of

its *Counterclaim* and in answering this interrogatory describe in detail where the STRC

understands that its train partially derailed, which car partially derailed, the location of that car in

the train, how long (in time and distance) the partially derailed car traveled over the *Line* before

it completely or fully derailed, and the point at which the partially derailed car became

completely derailed.

3

INTERROGATORY NO. 13

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 21 of its *Counterclaim*.

INTERROGATORY NO. 14

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 24 of its *Counterclaim*.

INTERROGATORY NO. 15

State whether STRC employee J.C. Scappace, Jr. was ever disciplined by the STRC or any other railroad. In answering this interrogatory, kindly provide for each instance of discipline the following:

      1.     the date of the incident on which the discipline was based occurred;

      2.     the nature of the allegations made by the railroad against Mr. Scappace which gave rise to the discipline; and

      3.     the discipline that was imposed on Mr. Scappace.

INTERROGATORY NO. 16

State the speed and throttle setting of the STRC train at a distance of two miles before the derailment, one mile before the derailment, one-half mile before the derailment, one-quarter mile before the derailment, and at the time of the derailment.

INTERROGATORY NO. 17

State in itemization of the STRC's damages that it alleges it suffered as a result of the derailment and for which it seeks in its Counterclaims. In answering this interrogatory, identify all insurance payments that the STRC has sought or received with respect to said derailment and damages.

4

INTERROGATORY NO. 18

State each and every fact on which the STRC relies regarding its allegations that the NECR

failed to maintain the *Line*, that the NECR's maintenance of the *Line* violated the ICA and the

TRO, and that the NECR's failure to maintain the *Line* caused the derailment.

INTERROGATORY NO. 19

State each and every fact on which the STRC relies regarding its allegations that the NECR

failed to perform its obligations under the TRO.

INTERROGATORY NO. 20

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 64 of

its *Counterclaim*.

INTERROGATORY NO. 21

State each and every fact on which the STRC relies regarding its allegations set forth in ¶ 71 of

its *Counterclaim*.

INTERROGATORY NO. 22

State whether STRC employee A.P. Kari was ever disciplined by the STRC or any other railroad.

In answering this interrogatory, kindly provide for each instance of discipline the following:

     1.     the date of the incident on which the discipline was based occurred;

     2.     the nature of the allegations made by the railroad against Mr. Kari which gave rise

             to the discipline; and

     3.     the discipline that was imposed on Mr. Kari.

INTERROGATORY NO. 23

List all of the applicable rules and regulations, by title, edition and issuing entity, which

governed or were applicable to the STRC crew's operation of the train over the *Line* which were

in effect on July 3, 2004.

## INTERROGATORY NO. 24

Identify fully and completely each person whom you expect to call as an expert witness at the trial of the above-entitled case, including each person's full name, address, employment and educational background, and, with respect to each such witness, please further state:

    (a)    fully and in complete detail the subject matter upon which each expert is expected by you to testify;

    (b)    the substance of the facts and opinions to which you expect each expert to testify; and

    (c)    set forth a summary of the grounds for each opinion which you expect each expert to give.

## INTERROGATORY NO. 25

Please provide a complete organizational chart as to depict the chain of authority within the STRC, by listing each employee's name, usual job location or reporting yard, and title, from the crew of the train to the person with highest position as of July 3, 2004. In creating said chart, kindly include each employee and their supervisors who had any role in investigating the happening of the derailment on July 3, 2004.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

Michael B. Flynn        BBO# 559023
*mbflynn@flynnassoc.com*
Richard A. Davidson, Jr.    BBO# 552988
*radavidsonjr@flynnassoc.com*
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing pleading on all parties by ~~hand~~/mail delivering same, to all counsel of record.
Signed under the pains and penalties of perjury.

DATED

7/20/06

Dated: July 20, 2006

6

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

Civil Action No.: 04-30235-MAP

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants.

## PLAINTIFF, NEW ENGLAND CENTRAL RAILROAD, INC.'S INTERROGATORIES TO THE DEFENDANT, BOSTON AND MAINE CORPORATION

The plaintiff, New England Central Railroad, Inc. ("NECR") hereby propounds, pursuant to Fed. R. Civ. P. 26 and 33 and L.R. 26.5 and 33.1, its first set of interrogatories to the defendant, Boston and Maine Corporation ("B&M"). These interrogatories are to be regarded as continuing and you are to provide, by way of supplementary answers thereto, such additional information as may hereafter be obtained by the B&M or any person on its behalf which will augment or otherwise modify any answer or answers given to the following interrogatories:

INTERROGATORY NO. 1

State the name, address and title of the person(s) responding to these interrogatories on behalf of the B&M and indicate the nature and duration of their association with the B&M, whether they are an employee, agent, or corporate officer of the B&M, and describe their duties and responsibilities now and on July 3, 2004.

INTERROGATORY NO. 2

Identify each person who has knowledge of any fact relating in any manner to the events, transactions, and/or occurrences that are described in any pleading setting forth a claim or defense in this action, and/or any investigation thereof, and for each such person state:

- (a) name, address and telephone number;

- (b) describe the subject matter and facts about which they have knowledge and in what capacity or circumstance they acquired such knowledge;

- (c) state whether or not the B&M or any of its agents, attorneys, servants or employees know of the existence of, have taken, or have in its or their possession a statement made by or taken from such a person concerning the derailment on July 3, 2004, any subsequent investigation thereof, and/or this action; and

- (d) state whether or not you intend to call the person as a witness at trial.

INTERROGATORY NO. 3

Identify each document or tangible thing that the B&M intends to rely on in its defense of this action and in the prosecution of its counterclaim, and for each document indicate if and for what purpose the B&M intends to present the document or tangible thing as an exhibit at trial.

INTERROGATORY NO. 4

State each and every fact on which the B&M relies regarding its allegations that the NECR failed to maintain the *Connecticut River Line* (the "Line") at no less than F.R.A. Class 2 condition.

INTERROGATORY NO. 5

State each and every fact on which the B&M relies regarding its allegations that the NECR failed to properly maintain the *Line*.

INTERROGATORY NO. 6

State each and every fact on which the B&M relies regarding its allegations that the NECR is responsible for the derailment which occurred on July 2, 2004, on the *Line.*

INTERROGATORY NO. 7

State each and every fact on which the B&M relies regarding its allegations that the NECR violated the *Modified Trackage Rights Agreement,* issued by the Interstate Commerce Commission on February 6, 1990.

INTERROGATORY NO. 8

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 8 of its *Counterclaim.*

INTERROGATORY NO. 9

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 12 of its *Counterclaim.*

INTERROGATORY NO. 10

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 16 of its *Counterclaim.*

INTERROGATORY NO. 11

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 18 of its *Counterclaim.*

INTERROGATORY NO. 12

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 19 of its *Counterclaim* and in answering this interrogatory set forth in detail where the B&M understands that the train partially derailed, which car partially derailed, the location of that car

3

in the train, how long (in time and distance) the partially derailed car traveled over the *Line* before it completely or fully derailed, and the point at which the partially derailed car became completely derailed.

## INTERROGATORY NO. 13

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 21 of its *Counterclaim*.

## INTERROGATORY NO. 14

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 24 of its *Counterclaim.*

## INTERROGATORY NO. 15

State in detail the nature and substance of the business relationship between the Springfield Terminal Railway Company and the B&M.

## INTERROGATORY NO. 16

State in itemization of the B&M's damages that it alleges it suffered as a result of the derailment and for which it seeks in its Counterclaims. In answering this interrogatory, identify all insurance payments that the B&M has sought or received with respect to said derailment and damages.

## INTERROGATORY NO. 17

State each and every fact on which the B&M relies regarding its allegations that the NECR failed to maintain the *Line*, that the NECR's maintenance of the *Line* violated the ICA and the TRO, and that the NECR's failure to maintain the line caused the derailment.

## INTERROGATORY NO. 18

State each and every fact on which the B&M relies regarding its allegations that the NECR failed

4

to perform its obligations under the TRO.

INTERROGATORY NO. 19

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 64 of

its *Counterclaim.*

INTERROGATORY NO. 20

State each and every fact on which the B&M relies regarding its allegations set forth in ¶ 71 of

its *Counterclaim.*

INTERROGATORY NO. 21

List all of the applicable rules and regulations, by title, edition and issuing entity, which

governed or were applicable to the B&M crew's operation of the train over the *Line* which were

in effect on July 3, 2004.

INTERROGATORY NO. 22

Identify fully and completely each person whom you expect to call as an expert witness at the

trial of the above-entitled case, including each person's full name, address, employment and

educational background, and, with respect to each such witness, please further state:

> (a)    fully and in complete detail the subject matter upon which each expert is expected
>
>         by you to testify;
>
> (b)    the substance of the facts and opinions to which you expect each expert to testify;
>
>         and
>
> (c)    set forth a summary of the grounds for each opinion which you expect each expert
>
>         to give.

INTERROGATORY NO. 23

Please provide a complete organizational chart as to depict the chain of authority within the

B&M, by listing each employee's name, usual job location or reporting yard, and title, include

each employee and their supervisors who had any role in investigating the happening of the

derailment on July 3, 2004.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

_signature_

Michael B. Flynn                         BBO# 559023
*mbflynn@flynnassoc.com*
Richard A. Davidson, Jr.         BBO# 552988
*radavidsonjr@flynnassoc.com*
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:  July 20, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing
pleading on all parties by ~~hand~~/mail delivering same, to
all counsel of record.
Signed under the pains and penalties of perjury.

DATED      _signature_
                7/20/06

6

# EXHIBIT

## "E"

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

Civil Action No.: 04-30235-MAP

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants.

## PLAINTIFF, NEW ENGLAND CENTRAL RAILROAD, INC.'S
## REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO THE DEFENDANTS

The plaintiff, New England Central Railroad, Inc. ("NECR") hereby propounds, pursuant

to Fed. R. Civ. P. 26 and 34 as well as L.R. 26.5 and 34.1, its first requests for the production of

documents to the defendants, Springfield Terminal Railway Company and Boston and Maine

Corporation.  These requests are to be regarded as continuing and the defendants are to provide,

by way of supplementary responses thereto, such additional information as may hereafter be

obtained which will augment or otherwise modify any response made hereto:

REQUEST NO. 1:

Any and all photographs, motion pictures, video tapes, charts or diagrams in the possession,

custody or control of the defendants which relate in any way to the derailment on July 3, 2004

and/or which relate in any way to the damages allegedly sustained by the defendants.

REQUEST NO. 2:

Any and all statements taken from or given by the defendants, their employees or agents, which

relate in any way to the derailment on July 3, 2004, and/or to the damages that the defendants

allegedly suffered.

REQUEST NO. 3:

Any and all statements taken from or given by all witnesses who were witnesses either directly or indirectly to the derailment on July 3, 2004.

REQUEST NO. 4:

Copies of all incident reports and all statements, whether in writing or recorded by mechanical and/or electronic means, made by the defendants or its employees, partners, servants, representatives or agents to the defendants, any insurance company, or any governmental agency which relate in any way to the derailment on July 3, 2004, or which relate in any way to damages allegedly suffered by the defendants.

REQUEST NO. 5:

All reports, statements, signed or unsigned, transcribed, written and/or oral, in the possession, custody or control of the defendants which relate to the derailment on July 3, 2004.

REQUEST NO. 6:

All reports, statements and letters in the possession, custody or control of the defendants which were filled out and/or completed by any expert or experts concerning the derailment on July 3, 2004.

REQUEST NO. 7:

Copies of all records, documents, invoices, and bills which evidence the damages that the defendants allegedly suffered as a result of the derailment on July 3, 2004.

REQUEST NO. 8:

Any and all documents which mention, describe, refer to, or explain the happening of the derailment on July 3, 2004.

2

REQUEST NO. 9:

Any and all documents, memoranda, notes, and correspondence relating to the investigation of

the derailment on July 3, 2004.

REQUEST NO. 10:

Copies of any and all policies of insurance, including declaration pages, jackets, riders or

endorsements naming or including the defendants as insureds and which were in effect at any

time and under which the defendants received, made, or could have made claim for any payment

on account of the damages alleged in the *Counterclaim*.

REQUEST NO. 11:

Copies of all operating rules, regulations, bulletins, track warrants, orders and the like which

were in effect on July 3, 2004, under which the STRC's crew was required to operate the train

over the *Connecticut River Line* in the location of the derailment.

REQUEST NO. 12:

Any and all reports pertaining or relating to the derailment on July 3, 2004.

REQUEST NO. 13:

Copies of any and all documents pertaining to liens or other encumbrances on the property which

the plaintiff claims were damaged by the fire which is the subject of the plaintiff's complaint and

which existed at the time of the fire or came into existence at any time thereafter.

REQUEST NO. 14:

The complete personnel, medical, disciplinary, and training files for STRC employees J.C.

Scappace and A.P. Kari.

REQUEST NO. 15:

A copy of the event recorder print-out for July 3, 2004, for the lead locomotive in the train that

was involved in the derailment.

3

REQUEST NO. 16:

A copy of the documents identified in the defendants' *Automatic Disclosure* made pursuant to

Fed. R. Civ. P. 26(a)(1)(B).

REQUEST NO. 17:

A copy of all documents identified in response to either of the defendants' answers to the

NECR's interrogatories.

REQUEST NO. 18:

A copy of all documents which support the defendants' allegation that the NECR failed to

inspect the *Line* properly.

REQUEST NO. 19:

A copy of all documents which support the defendants' allegation that the NECR failed to

maintain the *Line* safely.

REQUEST NO. 20:

A copy of all documents which support the defendants' allegation that the derailment was caused

by a defective, unsafe track condition.

REQUEST NO. 21:

A copy of all documents which support the defendants' allegation that the NECR's debarment of

Messrs. Scappace and Kari was without good cause.

REQUEST NO. 22:

A copy of all documents which support the defendants' allegation that the NECR's maintenance

of the *Line* violated the ICA and the TRO.

REQUEST NO. 23:

A copy of all documents which support the defendants' allegation that the NECR's maintenance

of the *Line* was grossly negligent, reckless and willful.

4

REQUEST NO. 24:

A copy of all recorded communications between the STRC crew and its own dispatchers, the

STRC, or the B&M at the time of and/or after the occurrence of the derailment on July 3, 2004,

whether the communications occurred over the radio, by telephone, email, or text messaging.

REQUEST NO. 25:

A copy STRC employees J.C. Scappace and A.P. Kari's cellular phone records for the billing

period which included July 3, 2004.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

Michael B. Flynn                          BBO# 559023
*mbflynn@flynnassoc.com*
Richard A. Davidson, Jr.              BBO# 552988
*radavidsonjr@flynnassoc.com*
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:  July 20, 2006

**CERTIFICATE OF SERVICE**

hereby certify that I served a copy of the foregoing
 ng on all parties by hand/mail delivering same, to
 nsel of record.
  under the pains and penalties of perjury.

 D

7/20/06

5

# EXHIBIT

## "F"

## INDEX FOR HARTLAND DERAILMENT

| | |
|---|---|
| 000000 | Hartland Derailment Invoice |
| 000001 | NECR Weekly Time Sheets |
| 000012 | Receipts |
| 000014 | Invoice |
| 000015 | NECR Daily Operating Bulletin No. 185 Effective at 0001 Hours July 03, 004 |
| 000021 | Fax to Steve Scott from Michele Wilk 9/21/04 Initial Rail Equipment/ Accident Incident Record 4/7/03 |
| 000023 | Initial Rail Equipment/Accident Incident Record 4/7/03 |
| 000024 | Base Information (Equipped Box Car) |
| 000025 | Canadian National Railways Waybill |
| 000027 | Daily Interchange Report of Cars Delivered |
| 000028 | Springfield Terminal Railway Switch List for Track WRIS 7/3/04 |
| 000030 | RailComm DOC Track Warrant  7/3/04 |
| 000031 | NECR Map Vermont Interchange Stations |
| 000032 | Train Cancellations |
| 000033 | Letter to Charles Moore from Larry Ferguson Re:  7/3/04 Derailment (7/9/06) |
| 000035 | Interstate Commerce Commission Decision 2/6/90 |
| 000065 | Track Survey |
| 000069 | NECR Track Chart |
| 000073 | Invoice Repairs to Track @ Heartland Derail |
| 000074 | Cross Level Alinement |
| 000086 | Hartland Track Notes |
| 000089 | Picture |
| 000090 | Drawing (Point of Lift to Point of Drop) |
| 000093 | NECR Operating Diagram |
| 000094 | General Code of Operating Rules |
| 000096 | Map of Vermont |
| 000097 | RailAmerica Foreman's Track Warrant  7/4/04 |
| 000098 | RailAmerica's Atlantic Region Dispatch Center Incident Documentation Form 7/3/04 |
| 000100 | Fax to Charles Moore With Notice of Hearing for A. Peter Kari and J.C. Scapacce, Jr.  7/13/04 |
| 000104 | Letter to Charles Moore from Larry Ferguson Re :  J.C. Scapacce, Jr. and A. Peter Kari   8/23/04 |
| 000106 | Certified Letter Notice of Hearing to J.C. Scapacce, Jr. 7/13/04 |
| 000108 | Certified Letter ice of Hearing to A. Peter Kari 7/13/04 |
| 000110 | Train Inspection by Crew Members |
| 000111 | Initial Rail Equipment Accident/Incident Report 7/8/04 |
| 000112 | Accident/Incident Report 7/3/04 |
| 000114 | Certified Letter to A. Peter Kari Re:  Hearing 7/27/04 |
| 000116 | Certified Letter to J.C. Scapacce Jr. Re:  Hearing 7/27/04 |
| 000118 | Letter to Charles Moore from Larry Ferguson Re:  Scapacce and Kari |
| 000119 | Certified Letter to A. Peter Kari Re:  Hearing on 8/9/04 (No discipline will be assessed)  (8/23/04) |
| 000120 | Certified Letter to J.C. Scappace, Jr Re:  Hearing on 8/9/04 (No discipline will be assessed)  8/23/04 |
| 000121 | Hearing Transcript – 7/19/04 |
| 000167 | Fax to Charles from G.A. Burke |

| 000168 | Detailed Analysis Plot |
|---|---|
| 000172 | Memo to ARDC Dispatchers – Springfield Employees Banned from NECR |
| 000173 | Letter to Charles Moore Re: Scapacce and Kari 8/23/04 |
| 000175 | Fax to Larry Ferguson Re: Derailment of July 3, 2004 |
| 000177 | Fax to ARDC Dispatchers – Employees Scapacce and Kari Banned |
| 000179 | Memo Re: Guilford Derailment 7/3/04 |
| 000180 | Fax to Larry Ferguson Re: Springfield Derailment 7/3/04 (7/7/04) |
| 000182 | Surface Transportation Board Decision 2/24/05 |
| 000187 | Memo to Charles Moore from Jack Dail Re: Traffic between CN to ST 10/21/04 |
| 000188 | NECR Track Chart |
| 000191 | Fax to Larry Ferguson from Charles Moore Re: Springfield Derailment 7/3/04 (7/8/04) |
| 000193 | Initial Rail Equipment Accident/Incident Report 7/8/04 |
| 000194 | Map for Lebanon |
| 000195 | Memo to Charles Moore Re: Weather conditions for 7/3/04 Hartland, VT |
| 000198 | General Code of Operating Rules Fourth Edition 4/2/02 |
| 000199 | Finance Docket No 31250 February 6, 1990 |
| 000229 | RailAmerica General Code of Operating Rules (Revised 1/02) |
| 000247 | Springfield Terminal Switch List for Track WRIS 7/2/04 |
| 000248 | RailAmerica's Atlantic Region Dispatch Center Incident Documentation Form 7/3/04 |
| 000250 | Rail America Training Sign in Sheet 4/26/04 |
| 000251 | Note from Bill Mount/Instructor stating that Scapacce and Kari attended non-RailAmerica GCOR/Safety Rule Class on 4/26/04 |
| 000252 | RailComm DOC Track Warrant 7/3/04 |
| 000253 | NECR Daily Operating Bulletin No. 185 7/3/04 |
| 000259 | Roxbury Subdivision Footnotes |
| 000263 | NECR Operating Diagram |
| 000264 | Map NECR Interchange Stations |
| 000265 | Switch List Conductors Report #2 7/1/04 |
| 000267 | NECR Car Shop (Released as of) 6/29/04 |
| 000268 | Switch List Conductors Report #2 7/1/04. |
| 000269 | Invoice |
| 000270 | Incident Form |
| 000271 | Letter to Charles Moore from Larry Ferguson Re: July 3, 2004 Derailment 7/9/04 |
| 000273 | Hartland Derailment Partial Summary of Expenses |
| 000274 | Invoices |
| 000312 | Receipts |
| 000318 | Invoices |
| 000324 | Receipt |
| 000325 | Invoice |
| 000326 | Email from Bob Marquette Re: Ballast to the NECR 7/30/06 |
| 000327 | Invoices |
| 000334 | Email to S. Mumley Re: Stone 7/27/04 |
| 000335 | Invoices |
| 000336 | Receipts |
| 000337 | Invoices |
| 000338 | Receipts |

| 000339 | Invoices |
|--------|----------|
| 000353 | Receipts |
| 000358 | Invoices |
| 000373 | Receipts |
| 000376 | Invoices |
| 000385 | Receipt |
| 000386 | Invoices |
| 000408 | Receipts |
| 000412 | Invoices |
| 000413 | Receipts |
| 000415 | Invoices |
| 000432 | Receipt |
| 000433 | Invoices |
| 000479 | Receipt |
| 000480 | Invoices |
| 000492 | Receipt |
| 000497 | Invoices |
| 000508 | Receipts |
| 000509 | Invoices |
| 000512 | Receipts |
| 000513 | Invoices |
| 000514 | Receipt |
| 000515 | Invoices |
| 000518 | Receipt |
| 000519 | Invoices |
| 000527 | Receipts |
| 000534 | Invoices |
| 000548 | Receipt |
| 000549 | Invoices |
| 000561 | Receipts |
| 000566 | Invoices |
| 000577 | Receipts |
| 000578 | Invoices |
| 000581 | Receipts |
| 000582 | Invoice |
| 000583 | Receipt |
| 000584 | Invoices |
| 000587 | Receipt |
| 000588 | Invoices |
| 000596 | Receipts |
| 000603 | Invoices |
| 000623 | Receipt |
| 000626 | Invoices |
| 000631 | ECI Flagman Worksheet |
| 000632 | Invoices |
| 000635 | Receipt |
| 000636 | Invoices |
| 000709 | Receipts |
| 000712 | Invoices |
| 000717 | ECI Flagman Worksheet |

| 000718 | Invoices |
|--------|----------|
| 000721 | Receipts |
| 000722 | Invoices |
| 000736 | Receipt |
| 000737 | Invoices |
| 000749 | Receipts |
| 000754 | Invoices |
| 000765 | Receipts |
| 000766 | Invoices |
| 000769 | Receipt |
| 000770 | Invoice |
| 000771 | Receipt |
| 000772 | Invoices |
| 000775 | Receipt |
| 000776 | Invoices |
| 000784 | Receipts |
| 000791 | Invoices |
| 000797 | Exception Report Quick Exception List 6/8/04 |
| 000807 | Track Geometry Inspection Report 6/8/04 |
| 000832 | Roxbury Subdivision Footnotes |
| 000836 | Memo to Michael Lawyer from Manuel Arzamendi  Re:  Senority at time of ST Derailment 7/04 |
| 000837 | Monthly Switch Inspections (Roxbury Subdivision) 9/04 |
| 000838 | Daily Track Inspections Report |
| 000855 | Monthly Switch Inspections (Roxbury Subdivision) 8/04 |
| 000856 | Daily Track Inspection Report |
| 000874 | Monthly Switch Inspections (Roxbury Subdivision)  7/04 |
| 000875 | Daily Track Inspections Report |
| 000893 | Monthly Switch Inspections (Roxbury Subdivision)  6/04 |
| 000894 | Daily Track Inspections Report |
| 000912 | NECR Switch Inspection List (Roxbury Sub)  5/04 |
| 000913 | Daily Track Inspection Report |
| 000924 | NECR Switch  Inspection List (Roxbury Sub)  4/04 |
| 000925 | Daily Track Inspection Report |
| 000933 | NECR Switch Inspection List (Roxbury Sub)  3/04 |
| 000934 | Daily Track Inspection Report |
| 000950 | NECR Switch Inspection List (Roxbury Sub)  2/04 |
| 000951 | Daily Track Inspection Report |
| 000960 | NECR Switch Inspection List (Roxbury Sub) 1/04 |
| 000961 | Daily Track Inspection Report |
| 000974 | RailAmerica Engineering Standards & Policies 2002 Revision |
| 001061 | Invoice (Car Hire Rate) |
| 001065 | Daily Interchange Report of Cars Received 7/5/04 |
| 001071 | Switch List Conductors Report 7/3/04 |
| 001105 | Online Patron Report 7/6/04 |
| 001113 | NECR Atlantic Region Dispatching Center 7/2/04 |
| 001114 | Switch List Conductors Report #2 7/2/04 |
| 001120 | South Revised Switch List Conductors Report #2   7/2/04 |
| 001125 | NECR Cars Released 6/29/04 |
| 001126 | Switch List Conductors Report #2  7/1/04 |

| 001127 | NECR Atlantic Region Dispatching Center 7/5/04 |
| 001128 | Switch List Conductors Report 7/5/04 |
| 001130 | Revised NECR Atlantic Region Dispatching Center 7/5/04 |
| 001131 | Revised Switch List Conductors Report  #2 7/5/04 |
| 001137 | Revised Switch List Conductors Report #2  7/3/04 |
| 001139 | Pictures |