# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

NEW ENGLAND CENTRAL
RAILROAD, INC.,

        Plaintiff,

    -v.-                                   Civil Action No. 04-30235-MAP

SPRINGFIELD TERMINAL
RAILWAY COMPANY, et al.,

        Defendants.

---

## DECLARATION OF ERIC L. HIRSCHHORN
## IN SUPPORT OF DEFENDANTS' SECOND MOTION
## TO COMPEL DISCOVERY

Eric L. Hirschhorn declares as follows:

1.      I am counsel to the defendants in this action, Springfield Terminal Railway Company and Boston and Maine Corporation.  I make this declaration in support of the defendant's second motion to compel the plaintiff, New England Central Railroad, Inc. ("NECR") to respond to the defendants' interrogatories and requests for production of documents.

2.      The defendants made their first motion to compel on September 18, 2006 [Docket Nos. 39-40] because NECR was late in responding to the defendants' interrogatories and requests for production of documents, and had not provided a privilege log.  NECR responded to that motion by providing only a single document—the General Code of Operating Rules that is

used by NECR and a number of other railroads.  NECR's interrogatory responses also were incomplete in a number of respects.

3.    On October 16, 2006, counsel for NECR (Richard A. Davidson, Jr., Esq.) and I discussed the shortcomings of NECR's responses.  At Mr. Davidson's request, I sent him a letter the following day detailing the principal documents and interrogatory responses that the defendants had expected to receive but that NECR had not provided (Exh. A hereto).

Specifically, the missing items are:

- Weekly and semiweekly track inspection reports covering the Line, from January 1, 2002 to the present time.  These are different from the monthly track reports that were produced as part of NECR's initial disclosures under Rule 26(a)(1).

- All documents relating to the derailment that is the subject of the action, including all versions (draft and final) of any reports furnished to the Federal Railroad Administration in respect of the derailment, internal memoranda (handwritten and otherwise), and the like.

- All documents relating to or addressing the Federal Railroad Administration track inspection conducted on the Line in June 2005, including any plans for responding to or addressing the results of that inspection.

- All documents relating to actual or possible disciplinary action affecting individuals responsible for the condition of the track on the Line between January 1, 2002 and the present time.

- All recordings (including written transcripts and summaries thereof) of conversations between the ST/B&M crew of the train that derailed and the individuals responsible for dispatching the Line on behalf of NECR.

- The agreements between NECR and Amtrak.

- All correspondence between NECR (or its agents) and Amtrak since January 1, 2002 regarding track conditions and slow orders on the Line, as well as incentive payments.

- Copies of any slow orders governing the Line between April 1, 2005 and July 4, 2005.

- All correspondence between NECR and its agents, on the one hand, and the contractors who performed repair work on the Line due to the derailment, on the other, relating to such repair work.  We received considerable documentation of invoices and similar formal commercial items relating to this work as part of

NECR's initial disclosure but not the interchanges about the actual work to be performed.

4.     In addition to the absence of the anticipated documents, NECR's responses to the defendants' Interrogatories #10 and #15 contained various objections but no substantive information (Exh. A hereto). To the extent that NECR's objections were based upon the text of Section 7.1 of the Interstate Commerce Commission's 1990 trackage rights order, my letter reminded Mr. Davidson that the Surface Transportation Board's reconsideration decision, served January 10, 2006, interpreted that provision to be inapplicable if there has been gross negligence or willful misconduct on the part of NECR. No review of the STB ruling was sought, *see* 28 U.S.C. § 1336 (2000), and hence it is binding upon all parties. The defendants are entitled to the information sought in these interrogatories because it is reasonably calculated to lead to admissible evidence that the derailment was caused by NECR's gross negligence or willful misconduct.

5.     NECR's response to the defendants' Interrogatory #13 seemed to indicate that responsive information exists but is claimed by NECR to be privileged (Exh. A hereto). The privilege log that subsequently was provided to the defendants does not appear to address this issue, either (Exh. B hereto). Indeed, the privilege log doesn't address interrogatories at all but is limited to documents.

6.     Magistrate Judge Neiman's order of October 24, 2006 required NECR to provide its privilege log no later than November 1. On the afternoon of the due date, Mr. Davidson e-mailed me asking for two additional days to provide the log (Exh. C hereto). I acceded to Mr. Davidson's request but asked the whereabouts of the additional documents and interrogatory answers that had been the subject of our discussion and my letter back in mid-October (Exh. C hereto).

3

7.    I finally received NECR's privilege log on November 6 but received no additional documents or interrogatory responses.  On November 8, I e-mailed Mr. Davidson asking for a telephone conference on the missing materials.  Mr. Davidson was unable to confer until the following Monday—November 13.

8.    On November 13, 2006, Mr. Davidson and I  again discussed the missing items. He indicated at that time that he expected to be able to make them available by that Friday, November 17.  We also discussed the status of discovery and the schedule of the case, and decided to file a joint motion seeking a three-month extension of the date (February 2, 2007) the Court had set for the pretrial conference and related filings.  The motion was filed that afternoon [Docket No. 47] but was denied the following day.

9.    Mr. Davidson and I were unable to coordinate a telephone conference until two days later (November 16).  At that time Mr. Davidson reiterated his expectation of delivering the missing items by the 17th.  No materials were delivered on November 17 (a Friday), or the following Monday (November 20), or thus far today (November 21).  I telephoned Mr. Davidson on the morning of November 20, was told that he was in the office but on another call, and left a message indicating that this motion soon would be filed if the materials were not forthcoming.  I have received no response to that message.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on November 21, 2006.

Eric L. Hirschhorn

Exhibit A

# WINSTON & STRAWN LLP

<table>
<tr><td>35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703</td><td>1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817</td><td>333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543</td></tr>
</table>

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

BUCKLERSBURY HOUSE
3 QUEEN VICTORIA STREET
LONDON, EC4N 8NH

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

(202) 282-5000

FACSIMILE (202) 282-5100

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5894

ERIC L. HIRSCHHORN
(202) 282-5706
ehirschhorn@winston.com

October 17, 2006

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Richard A. Davidson, Jr., Esquire
Flynn & Associates, P.C.
400 Crown Colony Drive, Suite 200
Quincy, Massachusetts 02169

      Re:    **New England Central Railroad, Inc. v. Springfield Terminal Railway
Company et al.**

Dear Rich:

As discussed over the phone yesterday morning, this is to outline the discovery
issues that currently are outstanding in the above-captioned action.

*Our discovery responses.* I am sending ST and B&M's responses to NECR's
document requests and interrogatories this evening by overnight courier.

*NECR's document production.* The sole document that NECR produced in
response to our June 30, 2006 request is the General Code of Operating Rules (4th ed. Apr. 2,
2000) that is used by NECR and a number of other railroads. At a minimum, we had expected
NECR's production to include the following items:

- Weekly and semiweekly track inspection reports covering the Line, from
  January 1, 2002 to the present time. These are different from the monthly
  track reports that were produced as part of NECR's initial disclosures
  under Rule 26(a)(1).

- All documents relating to the derailment that is the subject of the action,
  including all versions (draft and final) of any reports furnished to the
  Federal Railroad Administration in respect of the derailment, internal
  memoranda (handwritten and otherwise), and the like.

WINSTON & STRAWN LLP

Richard A. Davidson, Jr., Esquire
October 17, 2006
Page 2

- All documents relating to or addressing the Federal Railroad Administration track inspection conducted on the Line in June 2005, including any plans for responding to or addressing the results of that inspection.

- All documents relating to actual or possible disciplinary action affecting individuals responsible for the condition of the track on the Line between January 1, 2002 and the present time.

- All recordings (including written transcripts and summaries thereof) of conversations between the ST/B&M crew of the train that derailed and the individuals responsible for dispatching the Line on behalf of NECR.

- The agreements between NECR and Amtrak.

- All correspondence between NECR (or its agents) and Amtrak since January 1, 2002 regarding track conditions and slow orders on the Line, as well as incentive payments.

- All correspondence between NECR and its agents, on the one hand, and the contractors who performed repair work on the Line due to the derailment, on the other, relating to such repair work. We received considerable documentation of invoices and similar formal commercial items relating to this work as part of NECR's initial disclosure but not the interchanges about the actual work to be performed.

*NECR's responses to our interrogatories.* NECR's responses to our Interrogatories # 10 and #15 contain various objections but no substantive information. To the extent that NECR's objections are based upon the text of Section 7.1 of the Interstate Commerce Commission's 1990 trackage rights order, I note that the Surface Transportation Board's reconsideration decision, served January 10, 2006, interpreted that provision to be inapplicable if there has been gross negligence or willful misconduct on the part of NECR. No review of the STB ruling was sought, *see* 28 U.S.C. § 1336, and hence it is binding upon all parties. ST and B&M are entitled to the information sought in our interrogatories because it is reasonably calculated to lead to admissible evidence that the derailment was caused by NECR's gross negligence or willful misconduct.

NECR's response to our Interrogatory #13 seems to indicate that responsive information exists but is claimed by NECR to be privileged. ST and B&M are entitled to receive either the information or a claim of privilege set out in the manner envisaged by Rule 26(b)(5) of the Federal Rules and (as to documents) Rule 34.1(e) of the Local Rules of this Court.

WINSTON & STRAWN LLP

Richard A. Davidson, Jr., Esquire
October 17, 2006
Page 3

*Claims of privilege.* You indicated that NECR shortly will produce a privilege log governing information withheld from NECR's responses to our June 30, 2006 document requests and interrogatories. It is essential that we receive this log promptly so that we can bring disputes before the Court for resolution before we take depositions of NECR employees.

*Non-expert depositions.* We expect to take approximately eight to ten non-expert depositions of current NECR employees. These probably will include the six individuals named in NECR's answer to our Interrogatory #11 and Mr. Richard R. Boucher. We didn't agree on a location for these depositions but you asked us to consider taking them in St. Albans or Burlington, Vermont. You intend to take depositions of ST and B&M employees at your office in Quincy, Massachusetts. You and I agreed to consult further to determine times, locations, and the individuals to be deposed.

*Expert witnesses.* We agreed to delay temporarily the identification of expert witnesses and the production of their reports. (Your report is due today and ours on November 15, 2006.) We also agreed that the delay should be brief because the holiday season soon will be upon us, the Court has scheduled the Rule 26 conference for February 2, 2007, and the parties' pretrial memoranda are due January 26, 2007.

I believe this includes everything we covered. Please let me know if I have omitted or misstated anything, or if there are other issues that we need to discuss.

Sincerely,

Eric L. Hirschhorn

WINSTON & STRAWN LLP

Richard A. Davidson, Jr., Esquire
October 17, 2006
Page 4

bc:    Robert B. Culliford, Esq. (w/o encls.)
       Clinton P. Wright, Esq. (w/o encls.)

# Exhibit B

**Hirschhorn, Eric**

| | |
|---|---|
| **From:** | Richard Davidson [radavidsonjr@flynnassoc.com] |
| **Sent:** | Monday, November 06, 2006 3:00 PM |
| **To:** | Hirschhorn, Eric |
| **Cc:** | Michael Flynn |
| **Subject:** | NECR v. BM/STRC |

Eric:

Attached please find the Privilege Log concerning the documents withheld in the above-captioned matter.

Thank you for your attention to this matter.

Sincerely,

Richard A. Davidson, Jr.
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA   02169
Tel. No.: (617) 773-5500
Fax No.: (617) 773-5510

**This email transmission and any accompanying attachments may contain privileged and confidential information intended only for the use of the intended addressee. Any dissemination, distribution, copying or action taken in reliance on the contents of this email by anyone other than the intended recipient is strictly prohibited. If you have received this email in error please immediately delete it and notify sender.**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants

Civil Action No.:  04-30235-MAP

## PLAINTIFF'S PRIVILEGED LOG FOR DOCUMENTS WITHHELD FROM DISCOVERY BASED UPON ATTORNEY-CLIENT PRIVILEGE AND/OR WORK PRODUCT DOCTRINE

The plaintiff, New England Central Railroad, Inc., has withheld from the documents and records produced in the discovery of this case, based upon either the attorney-client privilege or pursuant to the work product doctrine, the following documents and/or records:

| DATE | AUTHOR | RECIPIENT | SUBJECT |
|------|--------|-----------|---------|
| 7/6/04 | Robby Devin | Charles Moore, et al. | Guilford's responsibility to pay damages |
| 7/6/04 | Charles Moore | Robby Devin, et al. | Guilford's responsibility to pay damages |
| 7/6/04 | Robby Devin | Charles Moore, et al. | Guilford's responsibility to pay damages |
| 7/6/04 | Charles Moore | Sandy Franger, et al. | Guilford's responsibility to pay damages |
| 7/7/04 | Tammy Campbell | Charles Moore, et al. | Calculating daily car hire charges |
| 7/7/04 | Vicky Lagrow | Tammy Campbell, et al. | Car hire calculations |
| 8/20/04 | Gary Laakso | Charles Moore | Selection of derailment counsel and issues to be addressed |
| 9/3/04 | Jeni Ladue | Charles Moore, et al. | Invoicing the B&M for the derailment |
| 8/24/04 | Charles Moore | Gary Laakso, et al. | Positions concerning inquiries from in-house counsel |
| 8/20/04 | Gary Laakso | Charles Moore | Inquiries from in-house counsel |
| 8/24/04 | Robby Devin | Gary Laakso | Contacting ST's insurance carrier |
| 8/24/04 | Gary Laakso | Robby Devin | Contacting ST's insurance carrier |
| 8/21/04 | Charles Moore | Gary Laakso | Selection of derailment counsel and issues to be addressed |
| 8/20/04 | Gary Laakso | Charles Moore | Selection of derailment counsel and issues to be addressed |

| 8/16/04 | Steve Scott | Michael Lawyer | Responsibility for clean-up and capital work |
|---------|-------------|----------------|-----------------------------------------------|
| 8/11/04 | Jeni Ladue | Michael Lawyer, et al. | AMRTRAK incentive calculations |
| 7/19/04 | Tammy Campbell | Jeni Ladue | Derailment delay calculations and interpretations |
| 8/1/04 | Charles Moore | Tammy Campbell, et al. | AMTRAK monies due - derailment |
| 7/30/04 | Tammy Campbell | Steve Scott, et al. | Delay amounts due and conductor's delay reports |
| 7/30/04 | Steve Scott | Thomas Murphy, et al. | Delay amounts due and conductor's delay reports |
| 7/30/04 | Thomas Murphy | Jeni Ladue | Delay amounts due and conductor's delay reports |
| 7/29/04 | Jeni Ladue | Thomas Murphy | Delay amounts due and conductor's delay reports |
| 7/26/04 | Jeni Ladue | Thomas Murphy | Delay amounts due and conductor's delay reports |
| 7/10/04 | Charles Moore | Michael Lawyer | Cars solely in account of the ST and case strategy |
| 7/6/04 | Gary Laasko | Charles Moore, et al. | Cars solely in account of the ST and case strategy |
| 7/6/04 | Charles Moore | Robby Devin, et al. | ST's exposure and case strategy |
| 7/6/04 | Robby Devin | Charles Moore, et al. | ST's exposure and case strategy |
| 7/9/04 | Mark Chin | Michael Lawyer, et al. | Case strategy and damages containment |
| 7/9/04 | Michael Lawyer | Mark Chin | Case strategy and damages containment |
| 7/9/04 | Mark Chin | Michael Lawyer, et al. | Case strategy and damages containment |
| 7/9/04 | Michael Lawyer | Mark Chin, et al. | Case strategy and damages containment |
| 7/9/04 | Mark Chin | Charles Moore, et al. | Case strategy and damages containment |
| 7/9/04 | Charles Moore | Mark Chin, et al. | Case strategy and damages containment |
| 7/9/04 | Mark Chin | Delores Rangel, et al. | Case strategy and damages containment |
| 7/9/04 | Delores Rangel | Charles Moore | Case strategy and damages containment |
| 7/9/04 | Charles Moore | Dolores Rangel | Case strategy and damages containment |
| 7/9/04 | Charles Moore | Jeff Bloom | Case strategy and damages containment |
| 7/9/04 | Charles Moore | Scott Linn | Case strategy and damages containment |
| 7/9/04 | Charles Moore | Mark Chin, et al. | Case strategy and damages containment |
| 7/9/04 | Charles Moore | Mark Chin, et al. | Case strategy and damages containment |
| 7/6/04 | Charles Moore | Robby Devin, et al. | Authority for contractor billing and contact with Sid Culliford for billing |
| 7/6/04 | Robby Devin | Charles Moore, et al. | Responsibility for damages |
| 7/6/04 | Charles Moore | Robby Devin, et al. | Investigation of the cause of the derailment |
| 7/6/04 | Robby Devin | Charles Moore, et al. | NECR's legal rights and Trackage Rights Agreement interpretation |
| 7/6/04 | Charles Moore | Sandy Franger, et al. | NECR's legal rights and Trackage Rights Agreement interpretation |
| 7/6/04 | Terry Campbell | Charles Moore, et al. | NECR's legal rights and Trackage Rights Agreement interpretation |
| 7/6/04 | Charles Moore | Tammy Campbell, et al. | NECR's legal rights and Trackage Rights Agreement interpretation |
| 7/8/04 | Charles Moore | Gary Laakso | Damages and damage to the NECR property |
| 7/8/04 | Gary Laakso | Charles Moore | Damages and damage to the NECR property |
| 7/6/04 | Charles Moore | Steve Scott | Capturing damage related expenses |
| | Charles Moore | Daniel Hershman | NECR's legal rights, Trackage Rights Agreement interpretation, and damage calculations |
| | Charles Moore | Jeni Ladue, et al. | NECR's legal rights, Trackage Rights Agreement interpretation, and damage |

| | | | calculations |
|---|---|---|---|
| 9/3/04 | Jeni Ladue | Charles Moore, et al. | NECR's legal rights, Trackage Rights Agreement interpretation, and damage calculations |
| 7/9/04 | Gary Laakso | Charles Moore, et al. | Damage to ties, 49 CFR 213.109(e) and damages |
| 7/8/04 | Charles Moore | Gary Laakso | NECR's legal rights, Trackage Rights Agreement interpretation, and damage calculations |
| 7/8/04 | Gary Laakso | Charles Moore | Damages considerations and tie value |
| 7/8/04 | Gary Laakso | Charles Moore | NECR's legal rights and Trackage Rights Agreement interpretation |
| 7/8/04 | Charles Moore | Gary Laakso | NECR's legal rights and Trackage Rights Agreement interpretation |
| 7/8/04 | Charlie Moore | Larry Ferguson | Analysis of the derailment |
| | Charles Moore | Gary Laakso | Enforcement of the Trackage Rights Agreement |
| 8/20/04 | Gary Laakso | Charles Moore | Enforcement of the Trackage Rights Agreement |
| 8/25/04 | Charles Moore | Gary Laakso | Enforcement of the Trackage Rights Agreement |
| 8/20/04 | Gary Laakso | Charles Moore | Enforcement of the Trackage Rights Agreement |
| 8/25/04 | Gary Laakso | Charles Moore | Enforcement of the Trackage Rights Agreement |
| | Charles Moore | Jeff Bloom | Enforcement of the Trackage Rights Agreement and damages |
| 7/8/04 | Charles Moore | Scott Linn | Enforcement of the Trackage Rights Agreement and damages |
| 2/16/04 | Gary Laakso | Charles Moore | Litigation strategy and information |
| 2/16/04 | Michael Flynn | Gary Laakso, et al. | Litigation strategy and information |
| 10/19/04 | Gary Laakso | Charles Moore | Damages and enforcement of the terms of payment under the Trackage Rights Agreement, as well as possible remedies |
| 10/19/04 | Charles Moore | Gary Laakso | Damages and enforcement of the terms of payment under the Trackage Rights Agreeme |
| 9/28/04 | Charles Moore | Gary Laakso | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/20/04 | Gary Laakso | Charles Moore | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/21/04 | Charles Moore | Gary Laakso | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/20/04 | Gary Laakso | Charles Moore | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/5/04 | Charles Moore | Gary Laakso | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/5/04 | Gary Laakso | Charles Moore | Damages and enforcement of the terms of payment under the Trackage Rights |

| | | | Agreement |
|---|---|---|---|
| 8/5/04 | Charles Moore | Gary Laakso | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/21/04 | Charles Moore | Gary Laakso | Damages and enforcement of the terms of payment under the Trackage Rights Agreeme |
| 8/17/04 | Gary Laakso | Scott Linn, et al. | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/17/04 | Scott Linn | Gary Laakso, et al. | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/23/04 | Charles Moore | Jeni Ladue | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/23/04 | Jeni Ladue | Charles Moore | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/23/04 | Charles Moore | Jeni Ladue | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/21/06 | Charles Moore | Jeni Ladue | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 8/17/04 | Gary Laakso | Scott Linn, et al. | Damages and enforcement of the terms of payment under the Trackage Rights Agreement |
| 7/8/04 | Gary Laakso | Charles Moore | Enforcement of the terms of payment under the Trackage Rights Agreement |
| 7/8/04 | Charles Moore | Gary Laakso | Enforcement of the terms of payment under the Trackage Rights Agreement |
| 7/6/04 | Charles Moore | Robby Devin, et al. | Trackage Rights Agreement interpretation |
| | Charles Moore | | Suggested narrative for ST derailment with draft report and notes |
| | Charles Moore | Steve Scott | Cost and damage management and expense capture |
| 9/16/04 | Gary Laakso | Charles Moore, et al. | Damages – direct vs. consequential damages |
| 7/8/04 | Gary Laakso | Charles Moore | Trackage Rights Agreement and interpretatic |
| 7/7/04 | Charles Moore | Gary Laakso | Trackage Rights Agreement and interpretatic |
| 7/7/04 | Gary Laakso | Charles Moore | Trackage Rights Agreement and interpretatic |

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

Michael B. Flynn                    BBO# 559023
Richard A. Davidson, Jr.            BBO# 552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated:  November 6, 2006

4

# Exhibit C

## Hirschhorn, Eric

**From:** Hirschhorn, Eric
**Sent:** Wednesday, November 01, 2006 2:42 PM
**To:** 'Richard Davidson'
**Subject:** RE: NECR v. BM/STRC

**Rich--**

**OK, but what about the documents and interrogatory answers addressed in my letter to you of October 17?  I need those as well.**

**We also need to set deposition dates and reset the dates for our respective expert reports, lest we become mired in trying to complete these activities in the middle of the holidays.**

**Rgds,
Eric.**

-----Original Message-----
**From:** Richard Davidson [mailto:radavidsonjr@flynnassoc.com]
**Sent:** Wednesday, November 01, 2006 2:32 PM
**To:** Hirschhorn, Eric
**Subject:** NECR v. BM/STRC

Eric:

I have the log 95% complete, but have been in depositions today and scheduled for tomorrow.  Is it okay if I get the log to you by Noon on Friday?

Sincerely,

Richard A. Davidson, Jr.
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA   02169
Tel. No.: (617) 773-5500
Fax No.: (617) 773-5510

This email transmission and any accompanying attachments may contain privileged and confidential information intended only for the use of the intended addressee.  Any dissemination, distribution, copying or action taken in reliance on the contents of this email by anyone other than the intended recipient is strictly prohibited.  If you have received this email in error please immediately delete it and notify sender.