UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

NEW ENGLAND CENTRAL RAILROAD, INC.,
Plaintiff,

v.

SPRINGFIELD TERMINAL RAILWAY
COMPANY and BOSTON AND MAINE
CORPORATION,
Defendants

Civil Action No.:  04-30235-MAP

### NEW ENGLAND CENTRAL RAILROAD, INC.'S OPPOSITION TO THE DEFENDANT'S SECOND MOTION TO COMPEL

The New England Central Railroad, Inc. ("NECR") opposes the defendant's *Second Motion to Compel Discovery*, dated November 21, 2006, in that the defendants were provided 1184 pages of Bate stamped records, documents, reports, correspondence and the like in its *Initial Automatic Disclosure* on July 24, 2006, which contained nearly all of the information which the defendants sought by means of their written discovery requests; the NECR completely and adequately responded to the defendants' first requests for written discovery within which were raised appropriate objections to the propounded requests[1]; the documents outlined in the defendants' counsel's letter of October 17, 2006, are a set of informal requests which result from the defendants' deficient initial requests to which the NECR had previously responded and/or objected to, and to which it provided a detailed *Privilege Log;* despite the previous responses and objections to the formal requests NECR's counsel agreed to inquire of the NECR concerning the

---

[1] At the time that the defendants initially sought to compel the discovery from the NECR they had themselves failed to provide the discovery which was propounded on them.

new requests; and defendants failed to act in good faith to confer or attempt to confer with counsel for the NECR prior to filing the within motion (which is the second time that this has now occurred).

## ARGUMENT

### A. The Defendants' Written Requests for Documents and Records were Deficient:

The NECR provided to defendants, as part of the NECR's initial Rule 26 disclosure, 1184 pages of Bate stamped records, documents, reports, correspondence which were relevant to this dispute. The defendants are attempting to portray the NECR as not being responsive to the document requests when, in fact, the NECR voluntarily provided most of that which was sought by the defendants in the NECR's initial disclosure. Additionally, the NECR objected to a number of the requests for various reasons but provided documents and records subject to the requests by referring the defendants' to that which had been already produced. Given the nature of the requests and how they were drafted, it was impossible for the NECR to determine what exactly the defendants were seeking through the written requests.[2]

The defendants are required to set forth with reasonable particularity the items or categories of the items which were requesting. Fed. R. Civ. P. 34(b). They failed to do so in their initial set of requests which then necessitated that they confer further with the NECR to identify that which they were seeking which the NECR informally agreed to search for and attempt to locate if the documents and/or records existed. The issue of that which the NECR did or did not produce was not the result of any shortcomings on the NECR's part. Counsel for the

---

[2] The defendants have failed to assert that the NECR did not properly respond to their initial Rule 34 requests, but instead complain that only one document was produced without acknowledging the production of the 1184 pages of documents from the NECR, but further complain that the NECR failed to provide documents to date concerning their informal requests.

2

parties agreed that <u>the defendants needed to better identify</u> that which they sought by the requests for documents and records and as a result the counsel for the defendants sent the October 17, 2006, letter which their counsel attached to their motion and a portion of which is contained within their memorandum at page 2. The NECR is in the process of addressing the <u>informal requests</u> and should have responses thereto, if they exist and are not privileged, by the end of this week.

**B.    The NECR's Answers and Objections to the Interrogatories Propounded by the Defendants were Appropriate:**

The defendants have attempted to articulate an argument that the NECR somehow failed to properly answer or respond to Interrogatory Nos.: 10, 13, and 15. The answers and responses were complete and contained a number of various objections which the defendants failed to address in their motion. The defendants only address one of the cited objections which is set forth in each interrogatory. The proper form for addressing the alleged deficiencies in the answers of the NECR would have been to re-print the interrogatory and answer then comment on same. The defendants have failed to extend this procedure in this case and by doing so the court does not have a complete picture of the dispute. The NECR has set forth the entire interrogatories and responses below and will comment on why they are appropriate and complete, as follows:

**INTERROGATORY NO. 10:**

> State whether any complaints and reports concerning the condition of the Line, including the Derailment Area, were communicated to you, between January 1, 2002 and the date of NECR's response to this interrogatory, by any person, including shippers, rail carriers, other persons, and your own employees or agents. If the answer is in the affirmative, provide:
>
> (i)   the name, address, and job classification of the

|     |                                                                                      |
| --- | ------------------------------------------------------------------------------------ |
|     | person to whom the complaint or report was communicated;                             |
| (ii)  | the name, address, and job classification of the person who communicated the complaint or report; |
| (iii) | a description of the nature of the complaint or report;                            |
| (iv)  | the date of the complaint or report; and                                           |
| (v)   | the identity of any documents relating to said complaint or report.                |

**ANSWER NO. 10:**

Objection. The NECR objects to this interrogatory on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome. The NECR objects to this interrogatory on the grounds that it seeks information which is protected from discovery by the attorney-client privilege, on the grounds that it seeks information which is work-product prepared in anticipation of litigation and on the grounds that it calls on the NECR, its employees and/or representatives to make statements and/or conclusions on issues of law which they may not be qualified to render. The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

1. **The Interrogatory is Overly Broad:**

The defendants failed to address, in their motion to compel even assuming their arguments are correct on the issue of gross negligence or willful misconduct, the fact that the interrogatory is overly broad in both time and scope in that it includes periods of time which are

4

clearly not relevant to this dispute, as well as areas of the track which is nowhere near the derailment site nor in any manner related to that site other than the fact that it is connected to the rail at some other location up or down the line. As set forth and referenced in *Plaintiff's Opposition to the Defendants' Motion to Dismiss the Amended Complaint and Request for Oral Argument,* the line in question is some 48.8 miles in length and runs in rural Vermont.

### 2. The Interrogatory is Vague:

The interrogatory fails to define the meaning of the terms "complaints" or "reports" about the line. Further, the defendants utterly failed to define the meaning by reference to the "condition of the Line." The use of these terms used in this context are unclear, imprecise, and ambiguous thus making it impossible for the NECR to respond to this interrogatory.

### 3. The Interrogatory is unduly burdensome:

The interrogatory requires the NECR to canvas each and every one of its employees and agents concerning any communications that they may have had with any person, shipper, rail carrier, or other persons concerning the "condition" of the line during a period of four years. This is unduly burdensome to the NECR and would require that it expend unwarranted time and resources inquiring about miles of track and extended time periods which are not relevant to the dispute between the parties.

### 4. The Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence:

The interrogatory is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the derailment occurred before the first derailed car reached any section of track which is alleged to have not been in Class II condition; (2) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning

5

track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (3) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

The defendants cannot escape the reality and hard fact that their train derailed before the first derailed car reached a section of track which they allege was not in Class II condition. In other words, the defendants' train began to derail on track that was in Class II condition, thus the NECR was in full compliance with the requirements set forth in the *Trackage Rights Agreement*. Further, any theory of defense or liability, as the case may be, concerning the condition of the track is preempted by the applicable federal regulation.

For the foregoing reasons, the NECR requests that the Court deny the defendants' motion to compel further answers and/or responses to this interrogatory.

**INTERROGATORY NO. 13:**

> Identify and describe all oral and written reports and documents, whether created before or after the Derailment, created by any person, including you and FRA, concerning the condition of the Line, including the Derailment Area, during the two years preceding the Derailment or concerning potential causes of the Derailment.

**ANSWER NO. 13:**

> Objection. The NECR objects to this interrogatory on the grounds that it seeks information which is protected from discovery by the attorney-client privilege, on the grounds that it seeks information which is work-product prepared in anticipation of litigation and on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome. The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses

and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*. The plaintiff further objects on the grounds that it cannot answer for the FRA.

Without waiving these objections, the plaintiff answers as follows: any and all non-objectionable documents responsive to this interrogatory which have been discovered, after diligent effort and inquiry, to be within the plaintiff's possession, custody and control, have been produced to the defendants with the plaintiff's initial *Automatic Disclosure* and responses to the defendants' document requests and the plaintiff refers the defendant to these documents for information responsive to this interrogatory.

As discovery is ongoing, the plaintiff reserves the right to supplement this answer in a timely fashion prior to trial.

1. **The Interrogatory is Overly Broad:**

The interrogatory is overly broad in both time and scope in that it includes periods of time which are clearly not relevant to this dispute, as well as areas track which is nowhere near the derailment site nor in any manner related to that site other than the fact that it is connected to the rail at some other location up or down the 48.8 miles on the line which runs through rural Vermont.

2. **The Interrogatory is Vague:**

The interrogatory fails to define the meanings of the terms "reports" and "documents" about the line. Further, the defendants failed to define the meaning by their reference to the "condition of the Line." The use of these terms used in this context are unclear, imprecise, and ambiguous thus making it impossible for the NECR to respond to this interrogatory.

3. **The Interrogatory is unduly burdensome:**

The interrogatory requires the NECR to canvas each and every one of its employees and agents concerning any communications that they may have had with any person, shipper, rail carrier, repair personnel, contractor, or other persons concerning the "condition" of the line during a period of two years. This is unduly burdensome to the NECR and would require that it expend unwarranted time and resources inquiring about miles of track and extended time periods which are not relevant to the dispute between the parties.

4. **The Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence:**

The interrogatory is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the derailment occurred before the first derailed car reached any section of track which is alleged to have not been in Class II condition; (2) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (3) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

The defendants' train began to derail on track that was in Class II condition, thus the NECR was in full compliance with the requirements set forth in the *Trackage Rights Agreement*. Any theory of defense or liability, as the case may be, concerning the condition of the track is preempted by the applicable federal regulation.

For the foregoing reasons, the NECR requests that the Court deny the defendants' motion to compel further answers and/or responses to this interrogatory.

**INTERROGATORY NO. 15:**

State whether any other derailments, accidents, property damage or incidents have occurred between milepost 9 and milepost 14.3 between January 1, 1996 and the date of your response to this interrogatory and, if so, state the date and location of each such incident; identify any other persons who were involved; describe the incident and any damages you incurred; identify any insurance company to which a claim was submitted on your behalf; and provide the court, caption, and case number of any civil actions that were filed concerning the incident.

**ANSWER NO. 15:**

Objection. The NECR objects to this interrogatory on the grounds that it is overly broad in both time and scope, vague, and unduly burdensome. The plaintiff also objects to this interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the defendants are obligated, by the *Trackage Rights Agreement*, to assume all of the losses and damages alleged by the plaintiff in its complaint "whether or not the condition or arrangement of the trackage contributes in any manner or to any extent to such" losses and damages; (2) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (3) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (4) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

  **1. The Interrogatory is Overly Broad:**

The interrogatory is overly broad in both time and scope in that it includes a ten year period of time which are clearly not relevant to this dispute. The defendants are aware that the tracks were inspected by the FRA during that period set forth in the interrogatory, as well as the fact that the NECR inspected the track as required by federal regulations. The defendants have been provided with the FRA inspection report for June 2005 which is the last inspection before

9

the derailment of the defendants' train. Also, any other FRA reports are freely available to the defendants as public records should they determine that they need same.

### 2. The Interrogatory is Vague:

The interrogatory fails to define the meaning of the terms "accidents, property damage or incidents" on the line. The use of said terms used in this context is unclear, imprecise, and ambiguous thus making it impossible for the NECR to respond to this interrogatory.

### 3. The Interrogatory is unduly burdensome:

The interrogatory requires the NECR to canvas each and every one of its employees and agents concerning any events as described that they may have had with any person, shipper, rail carrier, repair personnel, contractor, or other persons concerning the line during a period of ten years. This is unduly burdensome to the NECR and would require that it expend unwarranted time and resources inquiring of periods of time which are not relevant to the dispute between the parties.

### 4. The Interrogatory is not reasonably calculated to lead to the discovery of admissible evidence:

The interrogatory is not reasonably calculated to lead to the discovery of admissible evidence because: (1) the derailment occurred before the first derailed car had reached any section of track which is alleged to have not been in Class II condition; (2) any theory of defense or liability regarding the condition of the track is preempted by federal law and the regulations concerning track conditions, including, but not limited to 49 C.F.R. §§ 213.9 (b) and 213.63, with which the plaintiff had complied; and (3) the condition of the track in the area of the derailment complied with the requirements of the *Trackage Rights Agreement*.

The defendants' train began to derail on track that was in Class II condition, thus the NECR was in full compliance with the requirements set forth in the *Trackage Rights Agreement*. Any theory of defense or liability, as the case may be, concerning the condition of the track is preempted by the applicable federal regulation.

For the foregoing reasons, the NECR requests that the Court deny the defendants' motion to compel further answers and/or responses to this interrogatory.

### C. The Defendants Failed to Act in Good Faith to Confer or Attempt to Confer with the NECR Prior to Filing the Motion:

The defendants filed their motion less than twenty-four hours after leaving a voicemail concerning their intent to do same. Counsel for the NECR did not have an opportunity to respond to the voicemail message given other matters which required his attention that day. Filing the motion without a further call or without at least waiting a day cannot be considered by the court as an act of good faith to confer or attempt to confer.

For the foregoing reasons, the NECR requests that the Court deny the defendants' motion to compel further answers and/or responses to this interrogatory.

### CONCLUSION

The NECR has agreed to informally provide documents and records, if they exist and are not subject to privilege, subject to the written informal request of the defendants from their counsel in the letter dated October 17, 2006. It is the NECR's belief that whatever records which it has which are responsive to the informal request should be available by the end of this week. The NECR is diligently searching to ascertain what is and does not exist.

Further, the NECR fully and completely responded to the interrogatories as drafted by the defendants in a manner which was appropriate and complete as could be done given that which was presented to it for answers and responses.

Last, the defendants failed to confer with the NECR as required by the rules of procedure, therefore the motion should be denied on procedural grounds alone.

WHEREFORE, the NECR requests that the defendants' motion to compel be denied.

Respectfully submitted,

NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

_/s/ Michael B. Flynn_
Michael B. Flynn                          BBO# 559023
Richard A. Davidson, Jr.           BBO# 552988
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated: November 27, 2006

## CERTIFICATE OF SERVICE

I, Richard A. Davidson, Jr., hereby certify that a true and accurate copy of the attached opposition was sent by the court's electronic filing system, as well as by 1st Class U.S. Mail, postage prepaid, to Eric L. Hirschhorn, Esq., Winston & Strawn, LLP, 1700 K Street, NW, Washington, D.C. 20006 and Robert B. Culliford, Esq., Boston & Maine Railroad, Springfield Terminal Railway Company, Iron Horse Park, 1700 High Street, North Billerica, MA 01862.

Signed under the pains and penalties of perjury this 27th day of November 2006.

_/s/ Richard A. Davidson, Jr._
Richard A. Davidson, Jr.    BBO# 552988