UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW ENGLAND CENTRAL RAILROAD, INC.,<br>Plaintiff,<br><br>v.<br><br>SPRINGFIELD TERMINAL RAILWAY<br>COMPANY and BOSTON AND MAINE<br>CORPORATION,<br>Defendants | Civil Action No.: 04-30235-MAP |

**THE PLAINTIFF NEW ENGLAND CENTRAL RAILROAD'S
BRIEF IN REPLY TO THE DEFENDANTS' OPPOSITION
TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff New England Central Railroad, Inc. ("NECR") hereby files this brief in reply to the defendants' *Opposition to the Plaintiff's Motion for Summary Judgment*. The NECR is filing this brief for the following purposes: (1) to demonstrate that the STB's decision pertaining to "gross negligence" is erroneous and not entitled to this court's deference; (2) to respond to the defendants' arguments pertaining to preemption; and (3) to clarify certain factual inaccuracies in the defendants' submissions. As further grounds therefore, the NECR states as follows:

**I.     THE STB'S JANUARY 2006 DECISION REGARDING GROSS NEGLIGENCE
       IS ERRONEOUS AND NOT ENTITLED TO THIS COURT'S DEFERENCE:**

The defendants have argued that, because the STB in January 2006 decided that the indemnity provision of the *Trackage Rights Agreement* (§ 7.1) was not meant to relieve either party of liability for its gross negligence, the NECR is not entitled to indemnity in this case. The NECR does not agree that this Honorable Court is required to follow the STB's decision on this

issue. The NECR further argues that the STB's decision was erroneous, because (pursuant to D.C. law) parties can bargain away their liability even for grossly negligent conduct.

Although the STB's rulings can be considered by the Court, they are not dispositive, nor are they even necessarily entitled to deference. *See* CSX Transportation, Inc. v. Georgia Pacific Serv. Comm'n, 944 F. Supp. 1573, 1584, n.8 (N.D. Ga. 1996). The STB itself has also recognized such when it set forth that:

> railroads do not require authority from the Board to build or expand their facilities such as truck transfer facilities, weigh stations, or similar facilities, relating to their railroad operations, or to upgrade an existing line or to construct an unregulated spur or team track. In such cases, we can provide advice about how preemption applies but we have no direct involvement in the process. Thus, the interpretation of the preemption provisions has evolved largely through Court decisions in cases outside of our direct jurisdiction and in which we were not a party.

*See* Borough of Riverdale Petition for Declaratory Order, the New York Susquehanna and Western Railway Corporation, STB Finance Docket No. 33466, 1999 WL 715272 at * 7 (Sept. 9, 1999).

In addition, District of Columbia law simply does not, as a general matter of public policy, prohibit contractual provisions allowing indemnification for gross negligence. National R.R. Passenger Corp. v. Consolidated Rail Corp., 698 F. Supp. 951, 971 (D.D.C. 1988), *rev'd on other grounds*, 892 F.2d 1066 (D.C. Cir. 1990) ("No cases in the District of Columbia specifically address … whether a contract which is said to indemnify for gross negligence, reckless, wanton or willful misconduct or for conduct warranting the imposition of punitive damages is void on public policy grounds."). Instead, D.C. law provides that parties to a written agreement may provide that one indemnify the other against the other's negligence. District of Columbia v. Murtaugh, 728 A.2d 1237, 1245 (D.C. 1999); W.M. Schlosser Co. v. Maryland Drywall Co., 673 A.2d 647, 653 (D.C. 1996); District of Columbia v. Royal, 465 A.2d 367, 368-

69 (D.C. 1983). An indemnity provision can be construed to permit an indemnitee to recover for his own negligence so long as the court is firmly convinced that such an interpretation reflects the intention of the parties. Schlosser, 673 A.2d at 653; United States v. Seckinger, 397 U.S. 203, 211 (1970). Such an intention should be "plainly evident from the face of the contract." Murtaugh, 782 A.2d at 1245-1246 *quoting* Royal, 465 A.2d at 369. NECR has already briefed this precise issue. *See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment* at p. 7-10. The District of Columbia uses a two-part test to determine if an indemnification provision covering the indemnitee's gross negligence is enforceable. This test requires the court to "balance the weight of public policy considerations against the intentions of the parties to the contract." National R.R. Passenger Corp.., 698 F. Supp. at 970.

In this case, the indemnification provision was clearly intended by the parties to encompass gross negligence, and the clause is not contrary to public policy. The only evidence in the record currently before the Court clearly demonstrates that the parties intended § 7.1 to provide for indemnity in the circumstances present here, at least with respect to any claim of gross negligence arising from the maintenance or condition of the track. More specifically, when the ICC in 1990 adopted the current version of § 7.1, the defendants' predecessor did not object and thereafter never appealed the ICC's decision incorporating § 7.1 into the final *Agreement*. *See Memorandum of Law in Support of the Plaintiff's Opposition to the Defendants' Motion for Partial Summary Judgment*, which is relied on and specifically incorporated herein by this reference, at p. 13 – 15. These facts and the clear and unambiguous language of § 7.1 plainly show that the parties intended to allow indemnification for gross negligence in the event a derailment is "caused by (the indemnitor's) engines, cars, trains, or other on-track equipment" because indemnity must be provided "whether or not the condition or arrangement of the

trackage contributes in any manner or to any extent to such loss, damage or injury."

The defendants have failed to provide any admissible, credible, competent factual support for their self-serving conclusion that their predecessor did not intend to be required to indemnify the NECR even when it was grossly negligent in regards to the condition of the trackage.[1] Neither did the defendants provide any factual basis when it moved for reconsideration before the STB in 2006. It is simply not enough for the defendants and/or their lawyers to now say they did not intend § 7.1 to allow for indemnity for gross negligence – they must present some tangible evidence other than their own self-serving, conclusory statements. The defendants have not pointed to any admissible evidence to counter the ICC's 1990 decision in which it was written that the defendants' predecessor did not object to the current version of § 7.1. Instead, the defendants have simply made the unsupported allegation that indemnity for gross negligence was not intended. For whatever reason, the STB agreed to go along with this charade. This Honorable Court should not be so easily persuaded.

The defendants have also failed to give any reason why such an indemnification provision offends public policy.

Additionally, the STB is in no better position to interpret the *Agreement* or the original ICC decision than this Honorable Court. The ICC was abolished by Congress in 1995, and

---

[1] The only factual support the defendants supplied is the information provided by a high ranking member of its own staff. Roger Bergeron, the defendants' Vice-President for Special Projects, provided Rule 30(b)(6) deposition testimony regarding only the defendant's "interpretation" of the current *Agreement*. The defendants objected to Mr. Bergeron's being allowed to testify about the " drafting and negotiation" of the *Agreement* back in 1990. In fact, he was not present for the negotiation or drafting of the original Agreement, he was not a percipient witness or involved in the original ICC proceeding and is therefore not competent to testify about what transpired before the ICC in 1990. See *Exhibit F of the Memorandum of Law in Support of the Plaintiff's Motion for Summary Judgment* at p. 16-17. In addition, Mr. Bergeron's declarations submitted to this Court are completely silent as to negotiation and drafting of the *Agreement* and whether or not he was involved in the proceeding. See *Declaration of Roger D. Bergeron in Support of Defendant/Counterclaimants' Motion for Partial Summary Judgment* and *Declaration of Roger D. Bergeron in Opposition to Plaintiff/Counterdefendant's Motion for Summary Judgment*.

replaced by the STB. *See* Pub. L. No. 104-88, Dec. 29, 1995, 109 Stat. 803; 49 U.S.C. § 701(a). The ICC implemented the *Agreement* between the parties in 1990. *See* Amtrak – Conveyance of B&M in Conn River Line in VT & NH, 6 I.C.C. 2d 539 (1990). Then, almost 16 years later, the STB second-guessed the ICC's decision and gave a new interpretation to the *Agreement*. *See* Boston & Maine Corp v. New England Central Railroad, STB Finance Docket No. 34612 (Jan. 10, 2006). Regardless of the STB's decision, in order to apply District of Columbia law to the interpretation of the *Agreement* this Honorable Court must still independently weigh the parties' intentions (as expressed in the current record before it) against whatever public policy concerns have been brought to its attention.

Moreover, the STB in January 2006 did not "conclusively determine" (as the defendants have argued) that they are not liable if the NECR was grossly negligent. Instead, the STB merely attempted to decide the ICC's intent in relation to § 7.1. Id. at *3. The STB concluded that, in its opinion, the ICC's intent was not to allow indemnification for gross negligence. Id. Yet it failed to address that portion of the ICC's decision where it is noted that the B&M failed to object to the current language of § 7.1. The STB also failed to consider the well-established principle of D.C. law that parties can provide for indemnity against their own negligence provided they use broad enough language. This is hardly a "conclusive" decision, but merely one agency trying to decide another's intent on a very limited issue and without the benefit of any evidence. As such, the STB's "decision" must be disregarded entirely – this Honorable Court is fully able to make its own decision in this regard, and is actually in a better position to do so.

II.     **THE DEFENDANTS' COMMON LAW CLAIMS ARE PREEMPTED:**

    A.     **The Defendants' Claims are not "Federal Causes of Action:"**

Even by the defendants' reasoning, the only way they survive in this case is if they prove that the NECR was guilty of gross negligence. Otherwise, § 7.1 applies as written. Gross negligence is a state-based common-law action. It is not a "federal cause of action" simply because it arises from the *Agreement* imposed by a the ICC (a federal agency). That the defendants claim the NECR was grossly negligent because it failed to comply with several provisions set forth in the *Agreement* does not magically transform their cause of action to a "federal cause of action." Therefore, it is the NECR's position that the defendants' gross negligence are preempted by federal law in accordance with the argument set forth in its *Memorandum*.

      **B.**      **Even if the Defendants' Claims are Considered to be "Federal Causes of Action," They Are Nevertheless Preempted:**

Even if this Court to construes the NECR's alleged violation of the *Agreement* as constituting a "federal cause of action," it would in any event still be subject to preemption. Although the NECR acknowledges that, technically speaking, the Supremacy Clause does not form the basis of "preemption" of federal law, courts have nevertheless consistently determined that the FRSA has preclusive effect even on cases which have arisen from federal statutes. *See* Herndon v. National R.R. Passenger Corp., 814 A.2d 934 (D.C. 2003) ("It is true that the case before us differs from CSX Transp. Inc. v. Easterwood in that Herndon's suit is brought under the FELA rather than state common law, and thus pre-emption in its constitutional sense does not apply. However, we agree with the federal circuit court cases that have found this to be a distinction without a policy difference.").

For instance, courts have consistently precluded injured railroad workers' FELA claims against their railroad employers based on these same principles and theories. For instance, in

6

Thirkill vs. J. B. Hunt Transp., Inc., 950 F.Supp. 1105 (N.D. Ala. 1996), a FELA excessive train speed claim was precluded on the basis of FRSA preemption and national uniformity principles; Rice v. Cincinnati, New Orleans & Pac. Ry. Co., 955 F. Supp. 739 (E.D. Ky. 1997). In Waymire v. Norfolk and W. Ry. Co., 218 F.3d 773, 777 (7th Cir. 2000), the 7th Circuit Court of Appeals held that the FRSA precluded the plaintiff's FELA claim:

> To treat cases brought under federal law differently from cases brought under state law would defeat the FRSA's goal of uniformity. It would deny recovery to the motorist struck by the train, but not to the engineer operating the train. We do not believe that is the result envisioned by the statute or by the Supreme Court's decisions. To the extent that the FELA, then, is inconsistent with the FRSA on the issues of train speed and warning devices at grade crossings, we hold that the FRSA supersedes the FELA.

Several Federal Courts, including two circuit courts of appeal, have held that FELA claims alleging negligent design of locomotives are precluded by federal regulations. Oglesby v. Delaware & Hudson Ry. Co., 180 F.3d 458 (2nd Cir. 1999); McGinn v. Burlington N. R. Co., 102 F.3d 295 (7th Cir. 1996); Key v. Norfolk S. Ry. Co., 491 S.E.2d 511 (Ga. App. 1997); Sindoni v. Consol. Rail Corp., 4 F.Supp.2d 358 (M.D. Pa. 1996). The same principles apply with equal force to both FELA and state-based common law claims. In Norfolk S. v. Denson, 774 So.2d 549 (Ala. 2000), the Supreme Court of Alabama precluded the FELA claims of two locomotive crewmen who were burned in a grade crossing accident, citing the FRSA's principle of uniformity.

These cases clearly demonstrate that even "federal causes of action" are not immune from the FRSA's preemptive reach. The defendants' common-law claims should therefore be dismissed.

**III.   INACCURACIES/MISREPRESENTATIONS IN THE DEFENDANTS' PLEADINGS**:

In addition to a number of inaccurate and/or misleading representations that the NECR

has previously brought to the Court's attention in pleadings it has already filed, the NECR notes the following:

- The defendants' predecessor <u>did not object</u> to the ICC's inclusion and adoption of the current version of § 7.1 of the *Agreement*, as the defendants have now asserted.  See *Memorandum of Reasons in Opposition to Plaintiff's Motion for Summary Judgment* at p.10.   That this statement is false is evident from the face of the ICC's 1990 decision which unequivocally states that CV proposed a revised § 7.1 and "B&M states no objection." Exh. A at p. 555.[2]

- The defendants' assertion that defects occupy segments of track, not points of the track is simply false.  The track defect was pinpointed at MP 10.16, not at MP 10.18 (where the derailment occurred) or in a segment of track that included MP 10.18.  See *Memorandum of Reasons in Opposition to Plaintiff's Motion for Summary Judgment* at p. 9, Exh. C. at p. 12-13, Exh. D at p. 82-84, Exh. E.

- The warp defect had not worsened in the month after the Geometry Report as the deffendants have asserted.  See *Memorandum of Reasons in Opposition to Plaintiff's Motion for Summary Judgment* at p. 10.  This contention is simply not true. Neither Mr. Bergeron, nor any other representative of the defendants, ever inspected the track before the derailment and they had no first-hand knowledge at any point before three days after the derailment.  On the other hand, the NECR's employees inspected the area twice per week, including two days before the derailment, and have testified under oath that the condition remained the same from the time of the geometry testing until the time of the derailment.[3]  See Exh. H at p. 10-12, Exh. I.

g:\f & a\case files\railamerica\new england central\bm - strc-hartland\pleadings\hartland derailment index.doc


## V. <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(D), the plaintiff respectfully states that oral argument may assist the Court and requests a hearing on its *Motion For Summary Judgment*.

---

[2] Unless otherwise noted all references to exhibits refer to those exhibits which have previously been submitted with the summary judgment pleadings that the NECR has already filed.

[3] The NECR plans to supplement its summary judgment materials with affidavits of its track inspectors on these issues.

Respectfully submitted,
NEW ENGLAND CENTRAL RAILROAD, INC.
by its attorneys,

 /s/ Jennifer S. Bernstein            .
Michael B. Flynn            BBO#559203
Richard A. Davidson, Jr.,   BBO#552988
Jennifer S. Bernstein       BBO# 667433
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA  02169
(617) 773-5500

DATED:  May 4, 2007
G:\F & A\CASE FILES\RAILAMERICA\New England Central\BM - STRC-Hartland\pleadings\NECR reply brief.2.doc