UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

NEW ENGLAND CENTRAL
RAILROAD, INC.,

      Plaintiff/Counterdefendant,

      -v.-                                         Civil Action No. 04-30235-MAP

SPRINGFIELD TERMINAL
RAILWAY COMPANY, et al.,

      Defendants/Counterclaimants.

---

**MEMORANDUM OF REASONS IN OPPOSITION TO PLAINTIFF'S
MOTION TO STRIKE THE DECLARATION OF ROGER D. BERGERON**

For the reasons set out below, Springfield Terminal Railway Company and Boston and Maine Corporation (collectively, "ST/BM"), which are the defendants/counterclaimants herein, oppose the motion to strike the Declaration of Roger D. Bergeron that has been filed by the plaintiff/counterdefendant, New England Central Railroad, Inc. ("NECR") [Dkt. #77-#78].

NECR advances four arguments in support of its motion. None justifies any of the relief NECR seeks:

(1)    NECR claims that ST/BM failed to provide an expert report or otherwise to provide information regarding Mr. Bergeron's conclusions. In fact, (a) Mr. Bergeron is an employee of ST/BM whose duties do not regularly involve the giving of expert testimony, *see* Fed. R. Civ. P. 26(a)(2)(B), (b) the Court did not grant NECR's request for an order requiring an expert report, (c) in the ensuing two and one-half months, NECR has not moved for an order

requiring such a report, and (d) NECR has failed to take up ST/BM's longstanding offer to make Mr. Bergeron available for a second deposition—this time, in his capacity as an expert.

(2) NECR contends that the absence of certain of Mr. Bergeron's original rough notes—which contemporaneously were used to create a written record that long ago was produced to NECR—and several other items requires, in effect, a judgment on the merits in favor of NECR.

(3) NECR argues that Mr. Bergeron, who is an FRA-qualified track safety inspector and has investigated literally thousands of derailments in his thirty-six years as a railroad employee, is not qualified to render expert opinions on that subject.

(4) NECR claims that Mr. Bergeron's declaration misleads the Court about the testimony of other witnesses—despite the fact that all the testimony in question is annexed to his declaration and hence speaks for itself as to its contents.

As is explained below and in the accompanying documents, NECR's claims provide no basis for striking Mr. Bergeron's declaration. NECR's motion accordingly should be denied in all respects.

### Relevant Facts

The Court's pretrial scheduling order in this action [Dkt. #34] envisaged NECR's identifying its expert(s) first—not later than October 15, 2006. ST/BM was to follow a month later—not later than November 15, 2006. When NECR's deadline passed without the identification of an expert, ST/BM decided not to engage a testifying expert. ST/BM realized belatedly, however, that the anticipated testimony of Roger D. Bergeron, a longtime ST/BM employee who had investigated the July 3, 2004 derailment ("Derailment"), might be viewed as

constituting expert testimony under revised Rule 701 of the Federal Rules of Evidence. By this time, though, the deadline for identifying experts had passed.

ST/BM's motion for leave to designate its expert late was made February 16, 2007. [Dkt. #55-#57]. The motion included a representation that ST/BM would make Mr. Bergeron, who already had been deposed as a lay witness, available for an expert deposition. *Id.* The motion also included a statement by ST/BM that because Mr. Bergeron is an employee of ST/BM who does not regularly give expert testimony, ST/BM did not believe that he is required to provide an expert report. Dkt. #56, at 2.

NECR did not object to the late designation but insisted that ST/BM's motion advise the Court of NECR's view that an expert report from Mr. Bergeron is required: "It is NECR's position that if the late designation is allowed, a report and the disclosures required by Rule 26 should be produced prior to any such deposition." ST/BM accordingly included the NECR statement in the motion. Dkt. #56, at 3.

The Court granted ST/BM's motion on February 21, 2007. Despite NECR's de facto request for an order requiring an expert report, that order did not contain such a requirement. In the ensuing two and one-half months, NECR neither has taken a second deposition from Mr. Bergeron nor—until now, at the eleventh hour—has sought an order requiring him to provide an expert report.

Pursuant to the Court's pretrial scheduling order of February 6, 2007 [Dkt. #54], the parties filed their motions for partial summary judgment on March 23, 2007, their oppositions on April 20, 2007, and their replies on May 4, 2007. Not until April 26 did NECR file the motion to strike to which this memorandum replies.

3

The principal contentions of NECR's motion to strike are that Mr. Bergeron's testimony on ST/BM's motion for partial summary judgment has surprised NECR and that ST/BM's failure to produce several items in discovery constitutes spoliation and has prejudiced NECR's case. Plaintiff's Memorandum of Law in Support of Its Motion to Strike the Declaration of Roger D. Bergeron Filed in Support of the Defendants' Motion for Summary Judgment and/or for Other Appropriate Relief ("NECR Brief"), at 2-11. NECR also complains of ST/BM's failure to produce an expert report from Mr. Bergeron, *id.* at 11-12, his supposed lack of qualifications, *id.* at 12, and his alleged misleading of the Court about the facts, *id.* at 13-18.

Perhaps most interesting, given NECR's extraordinary effort to remove Mr. Bergeron and his findings from the case, is that throughout the lengthy course of this litigation, NECR never has directly questioned Mr. Bergeron's conclusion that the cause of the Derailment was the combination of NECR's uncorrected track defects and the improper slow order imposed by NECR on the segment that includes MP 10.18 and MP 10.16. ST/BM repeatedly has asked NECR for its view of the cause of the Derailment, but has yet to receive any responsive evidence on the point.

## Argument

I. **ST/BM has satisfied its discovery obligations.**

    A. **No expert report was required for Roger Bergeron.**

NECR contends that an expert report, as contemplated by Fed. R. Civ. P. 26(a)(2)(B), was required of Mr. Bergeron. NECR Brief, at 1, 4. But Mr. Bergeron is an employee of a party—ST/BM—and his duties do not "regularly involve giving expert testimony." Declaration of Roger Bergeron in Support of Defendants' Unopposed Motion for Permission to Designate Expert Witness Out of Time [Dkt. #57], ¶ 4; *see* Fed. R. Civ. P. 26(a)(2)(B); *see also Bowling v.*

*Hasbro, Inc.*, 2006 WL 2345941 (D.R.I. Aug. 10, 2006) (concluding Rule 26(a)(2)(B) must be construed according to plain text and requiring no report from employee-expert who is neither "retained or specially employed" to provide expert testimony nor "regularly" provides such testimony as part of job); *Bank of China v. NBM LLC,* 359 F.3d 171, 182 (2d Cir. 2004) (holding Rule 26(a)(2)(B) inapplicable where employee not specially retained to provide expert testimony and duties did not regularly include giving expert testimony); *Adams v. Gateway, Inc.*, 2006 WL 644848 at *2 (D. Utah Mar. 10, 2006) ("The plain language of the rule facilitates a party's use of an employee for expert testimony without the burden of a formal report"); *Navajo Nation v. Norris*, 189 F.R.D. 610, 613 (E.D. Wash. 1999) ("Those who drafted FRCP 26(a)(2)(B) could simply have required reports for all employee-experts if that is what they intended").

Moreover, NECR—by insisting upon the inclusion of its demand for such a report in ST/BM's motion to designate Mr. Bergeron as an expert [Dkt. #55]—effectively requested that the Court order such a report, but failed to convince the Court to do so. Further, if inclusion of NECR's position in ST/BM's motion to designate Mr. Bergeron did not constitute a request of the Court, NECR's failure to make such a request in the months since the motion was granted constitutes a waiver of any right to an expert report that NECR might have had.

    **B.**    **NECR already has deposed Mr. Bergeron once and—for nearly three months—has declined the opportunity to do so a second time.**

In any event, NECR already has taken Mr. Bergeron's deposition once—back on January 11, 2007. The testimony Mr. Bergeron gave then, plus testimony elicited from other witnesses during discovery, constitutes all or nearly all of what he has set out in his declaration. He was designated as an expert witness by ST/BM not because his "expert" testimony was expected to be different from his "lay" testimony but because under Fed. R. Evid. 701, as revised in 2000,

5

lay witnesses no longer may offer "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c).

To ensure that NECR would not be prejudiced, ST/BM advised NECR in early February 2007 that Mr. Bergeron would be made available for a second deposition, *qua* expert, upon request. This advice was provided to NECR orally and in the motion to designate [Dkt. #55]. Three months have passed and NECR has not requested the second deposition whose absence it now contends is prejudicial.

### C. The supposedly "spoiled" items have been produced, are not materially different from items that have been produced, or are not of sufficient importance to have prejudiced NECR.

NECR contends that the absence of four items from ST/BM's production in the course of discovery requires that the Court, in effect, award NECR judgment on the merits.

One such item is the supposed failure to preserve visual evidence regarding the track around Mile Post ("MP") 10.18. NECR Brief at 3. The evidence to which NECR refers is photographs taken by ST/BM employee Daniel Griffiths, who accompanied Mr. Bergeron while the latter conducted his investigation of the Derailment. In fact, all twenty-five of these photographs, bearing Bates numbers ST-A000420 through ST-A000444, were produced by ST/BM to NECR in the normal course of discovery.

A second item is the original handwritten notes that Mr. Bergeron took as he conducted his on-site investigation on July 6, 2004. NECR Brief at 2-3. Although Mr. Bergeron did not retain those very rough notes, he created a neater version directly from those notes within two hours after making them, and there is no material or substantive difference between the information on his original rough notes and the version that he created contemporaneously and that has been produced to NECR. Declaration of Roger D. Bergeron in Opposition to Plaintiff's

6

Motion to Strike ("Bergeron Opposition to Motion to Strike") ¶ 2. NECR has advanced no contrary evidence, nor even a theory as to what might have been omitted.

The third item is the reverse of a two-sided page of notes taken by Mr. Bergeron. NECR Brief at 3. This item was located by ST/BM on May 9, 2007. Bergeron Opposition to Motion to Strike ¶ 5. Although the front side was copied, produced to NECR, and used in Mr. Bergeron's deposition, the reverse inadvertently was not copied. *Id*. The reverse page was received by ST/BM's counsel on May 10 and promptly sent by electronic mail and overnight courier to counsel for NECR. *Id*. The reverse page contains no material information and thus its prior absence is not prejudicial to NECR.

Fourth, NECR complains of the conductor's initial incident report. NECR Brief at 3. Conductor Scappace testified that neither he nor anyone else had been able to locate his original report. There is no suggestion in the record, however, that the report that Mr. Scappace recreated several weeks later, which was produced to NECR, contains any material variations from the original. In any event, NECR had an executive present at the ST/BM investigative hearing into the Derailment on August 9, 2004, was provided subsequently with the transcript of that hearing, took Mr. Scappace's deposition on January 12, 2007, has offered no evidence suggesting that the loss of the original report was deliberate, and has demonstrated no prejudice or potential prejudice from the absence of the original document.

Finally, the drastic remedy of dismissing ST/BM's case and awarding NECR judgment on the merits—which NECR effectively requests this Court to do—is inappropriate. Dismissal of a party's case is "a harsh sanction that the courts are reluctant to impose. It is usually considered appropriate only when a party *maliciously destroys* relevant evidence for the sole purpose of preventing an adverse party from examining it." *Vazquez-Corales v. Sea-Land*

*Service*, Inc., 172 F.R.D. 10, 13 (D.P.R. 1997) (emphasis added). NECR has not alleged (and could not fairly allege) that such is the situation here.

Moreover, Federal Rule 37(c) does not proscribe the use of non-disclosed expert information if the failure to disclose such information was harmless. Fed. R. Civ. P. 37(c). As there is no reason to believe that NECR has been prejudiced, there is no basis for a sanction against ST/BM.[1]

### D. ST/BM was not obligated to answer, or supplement its answers to, NECR's interrogatories.

NECR claims that ST/BM had a duty to answer—and supplement its answers to—NECR's interrogatories regarding ST/BM's expert witnesses and their proposed testimony. NECR's interrogatories asked ST/BM to provide "the detailed subject matter upon which each expert was expected to testify; the substance of the facts and opinions of each expert; and required a summary of the grounds for each expert's opinion." NECR Brief at 3.

Mr. Bergeron, however, is an employee of a party—ST/BM—and his duties do not regularly involve giving expert testimony. Accordingly, as explained more fully above, no expert report was required of him. *See* Fed. R. Civ. P. 26(a)(2)(B). If NECR were permitted to obtain the information it sought through its interrogatories, *see* Exhibit C, Interrogatory No. 22, and Exhibit D, Interrogatory No. 24, the exception for employees who do not regularly provide expert testimony—such as Mr. Bergeron—would be read out of Rule 26(a)(2)(B).

---

[1] NECR repeatedly states that this Court *must* draw the inference that ST/BM's failure to disclose certain information is harmful or contrary to either Mr. Bergeron's opinion and/or ST/BM's claims. NECR Brief at 10, 11. But NECR never explains how such information is supposedly harmful or contrary. Moreover, NECR has not satisfied the foundational requirements for a permissive negative inference—namely, that ST/BM knew (1) of the potential for litigation and (2) the document's relevance to the litigation. *See Blinzler v. Marriott Int'l Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996). Moreover, even if NECR could make such a showing, such an inference is not *mandatory*. Rather, if the Court believes the documents were destroyed accidentally or for an innocent reason or merely lost, it is free to reject the inference. *Id.* Finally, the most that an adverse inference could do in the summary judgment context is create a disputed issue of material fact and accordingly send the issue to the jury.

II. **Mr. Bergeron is eminently qualified as an expert on the causes of derailments.**

Mr. Bergeron's qualifications as an expert on derailments are considerable. He has been a railroad employee for thirty-six years and is a qualified track inspector under the regulations of the Federal Railroad Administration. Declaration of Roger D. Bergeron in Support of Defendants/Counterclaimants' Motion for Partial Summary Judgment ("Bergeron Declaration") [Dkt. #61-1] ¶¶ 2-4; see 49 C.F.R. § 213.7 (2005). During that time, he has investigated more than three thousand derailments, hundreds of which (like the Derailment) occurred on main lines. Bergeron Declaration ¶ 4.

Federal Rule of Evidence 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise..." Fed. R. Evid. 702. Indeed, as NECR admits by its silence on the point, Rule 702 does not provide fixed criteria as to what qualifies one as expert. See also 32 C.J.S. Evidence § 525 (2007) ("There is no precise rule governing the manner in which an expert witness acquires the requisite skill or knowledge…One may also qualify as an expert by practical experience alone.") Accordingly, Mr. Bergeron's substantial practical experience over the past thirty-six years as a railroad employee and track inspector qualifies him as an expert on the subject of derailments.

III. **Mr. Bergeron's testimony is not misleading.**

Finally, NECR contends that Mr. Bergeron's declaration should be stricken because it is misleading regarding the testimony of other witnesses. First and foremost, the testimony and other evidence to which the Bergeron Declaration refers is annexed as exhibits to that document.

That evidence speaks for itself. Moreover, the declaration is not misleading in its reading or interpretation of the evidence.

The first supposed misstatement is the location of the crosslevel defect. NECR Brief at 13-14. ST/BM has made clear that such a defect does not exist at a single isolated point. For one thing, the FRA regulations *define* such a defect as occurring over at least a sixty-two foot segment. 49 C.F.R. § 213.63 & n. 1 (2005). The GPS location called out by the FRA automated inspection car is precise, but that does not mean that a defect that by definition involves a *segment* of track exists only at that point. Moreover, the system for relating defects identified by the inspection car to physical landmarks such as mileposts and bridges is not automated. Bergeron Declaration ¶ 15. Instead, the railroad's track inspector calls out defects as they are relayed to him by FRA personnel. An inspector or operator then punches a button to mark each such location. *Id.* The imprecision of the "call-out," as well as the reaction time for the individual who pushes the button, means that the results of such an inspection are not precise as to landmarks such as mileposts. *Id.*

The second supposedly misleading element of Mr. Bergeron's testimony is that the crosslevel defect that caused the Derailment did not drop that segment of track below Class 2 standards. NECR Brief at 14. The fact remains, no matter how hard NECR tries to ignore it, that under the FRA track safety regulations, a track segment containing a crosslevel defect exceeding the parameters of note 2 to § 213.63 does *not* qualify for any track class above Class 1. 49 C.F.R. § 213.63 n. 2 (2005). NECR seeks to imply that the defect could have arisen in the three days between the Derailment and Mr. Bergeron's inspection of the track. NECR Brief at 14. The cited portions of Mr. Bergeron's deposition do not support such a conclusion. At most, NECR's argument on this point might support a conclusion that there is a disputed issue of

genuine material fact that accordingly should be submitted to the jury. It hardly supports a conclusion that Mr. Bergeron's testimony should be stricken—an action that effectively would award judgment on the merits to NECR.

Third, NECR complains that Mr. Bergeron mischaracterized Richard Boucher's testimony regarding harmonic rock. NECR Brief at 15. Here, too, the most that might be said of Mr. Boucher's testimony is that it supports a conclusion that the factual issue is disputed and should be submitted to the jury, not a conclusion that Mr. Bergeron's testimony—and with it, ST/BM's case—should be stricken.

Fourth, NECR insists that it took proper remedial action regarding the crosslevel defect, and that Mr. Bergeron's testimony has been inconsistent because his declaration says that the proper remedy is tamping the ballast, while his deposition testimony refers to the imposition of a slow order. There is no inconsistency. The proper *long term* remedy is tamping. Bergeron Opposition to Motion to Strike ¶ 3. The FRA track safety regulations do permit, however, the *temporary* use of a slow order for a brief period (a maximum of thirty days) until the long term correction can be made. *Id.*; 49 C.F.R. § 213.9 (2005). But such a temporary slow order is *not* proper unless it is consistent with the class of the track. Bergeron Opposition to Motion to Strike ¶ 4. The track in question did not meet *all* the requirements for Class 2 and hence only a slow order to Class *1* speed—ten miles per hour for freight trains—would have been proper. Bergeron Declaration ¶ 4; *see* 49 C.F.R. §§ 213.9(b), 213.63 n. 2 (2005).

Fifth, NECR contends that Mr. Bergeron has misled the Court by testifying that uncorrected defects are supposed to be restated, and remeasured, at *each* inspection between their discovery and their correction. NECR Brief at 15. This, of course, is an effort to justify the failure of NECR's track inspectors even to note the relevant defect after it had been identified by

the FRA track geometry car, let alone to remeasure it on each such occasion. The fact is that the FRA expects that *each* inspection report record a defect from the time it is initially discovered until the time it has been corrected. Bergeron Declaration, Exh. 12, at 5.140, first full ¶.

Next, NECR would strike Mr. Bergeron's declaration because in the course of his deposition he did not include the Canadian Pacific derailment manual on the list of publications that ST/BM follows in dealing with derailments but then cited one provision of that publication in his declaration. NECR Brief at 16-17. Mr. Bergeron never said, however, that ST/BM follows the Canadian Pacific publication in its derailment cause-finding. All he said was that the Canadian Pacific manual "is widely used in the railroad industry," before going on to note its observation that crosslevel and alignment defects of the types found in the segment including MP 10.18 and MP 10.16 can, in combination, have "'a cumulative effect much greater than either defect alone.'" Bergeron Declaration ¶ 39. Nothing about that is misleading, and if NECR believed otherwise, it should have had no difficulty in producing a witness to say so.

NECR's seventh and final claim of misleading testimony is that during Mr. Bergeron's deposition, counsel for NECR asked about other supposedly possible causes of derailments and Mr. Bergeron was unable to rule them out as causes of the Derailment. NECR Brief at 17-18. Here, as with a number of NECR's other claims of "misleading" testimony, the most that one conceivably could make of this is that the cause of the Derailment is disputed, and hence a question for the jury. (NECR, for its part, never has suggested a cause other than that determined by Mr. Bergeron.) Nothing in this or the other six claims advanced by NECR affords a basis for striking Mr. Bergeron's declaration.

## Conclusions

For the reasons set forth above, NECR's motion to strike Mr. Bergeron's declaration should be denied in all respects.

Respectfully submitted,

*[signature]*

Eric L. Hirschhorn
Debra R. Coletti
Winston & Strawn LLP
1700 K Street, NW
Washington DC 20006
202-282-5700

Robert B. Culliford (BBO #638468)
Pan Am Systems, Inc.
Pease International Tradeport
14 Aviation Drive
Portsmouth NH 03801
603-766-2002

*Attorneys for Defendants/Counterclaimants
Springfield Terminal Railway Company
and Boston and Maine Corporation*

May 10, 2007